UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 OCT 19 P 3: 16

U.S. DISTRICT COURT
DISTRICT OF MASS.

Wolverine Proctor & Schwartz, Inc. :
                                    :
        and                         :
                                    :
Great American Alliance Insurance   :
    Co., Inc.,                      :
                                    :
        Plaintiffs,                 :
                                    :
                                    :
v.                                  :         CIVIL ACTION NO.
                                    :
XYZ Tape Corp.,                     :  04 - 12189 WGY
    formerly known as Patco Corp.,  :
                                    :
William B. Wilbur,                  :
                                    :
        and                         :         MAGISTRATE JUDGE _Bowler_
                                    :
Travelers Property Casualty         :
    Company of America,             :         RECEIPT # _59493_
                                    :         AMOUNT $ _150_
        Defendants.                 :         SUMMONS ISSUED __Y__
                                    :         LOCAL RULE 4.1_____
                                              WAIVER FORM _____
                                              MCF ISSUED_____
                                              BY DPTY. CLK._____
**COMPLAINT AND JURY DEMAND**                 DATE_ _10-19-04_

**INTRODUCTION**

    1.    This diversity jurisdiction action seeks a declaratory

judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and

damages and equitable relief for breach of contract.   The

plaintiffs Wolverine Proctor & Schwartz, Inc. ("Wolverine") and

Great American Alliance Insurance Co., Inc., ("Great American")

seek a declaration whether indemnity contracts between Wolverine

and defendant XYZ Tape Corp., formerly known as Patco Corp.,

("XYZ Tape" or "Patco") entitle Wolverine to defense and

indemnity of claims asserted against it for property damages arising out of the operation of thermal oxidizer and heat recovery system equipment sold by Wolverine to Patco. Wolverine and Great American also seek a declaration whether the indemnity contracts are insured contracts within the meaning of a comprehensive commercial general liability policy that Travelers Property Casualty Company of America ("Travelers") issued to Patco, thereby requiring Travelers to extend insurance coverage to the liability, attorneys' fees, expenses and costs incurred or that may be incurred on behalf of Wolverine as a result of claims arising out of the operation of the equipment. Wolverine and Great American also seek damages and equitable relief for breach of the indemnity contracts.

## PARTIES

2.    Wolverine Proctor & Schwartz, Inc., is a Delaware corporation with a principal place of business at 51 East Main Street, Merrimac, Essex County, Massachusetts. For all purposes material to this complaint, it is the successor in interest to Wolverine (Massachusetts) Corporation and before that Wolverine Corporation (collectively "Wolverine").

3.    Great American Alliance Insurance Co., Inc., ("Great American") is an Ohio corporation with a principal place of business at 45 East 4th Street, South Building, Cincinnati, Ohio 45202.

2

4.    XYZ Tape Corp., formerly known as Patco Corp. ("XYZ Tape" or "Patco") for all purposes material to this complaint is or was a Rhode Island business corporation with a principal place of business at 128 Dorrance Street, Providence, Rhode Island that now subsists and may be sued for purposes of this action pursuant to Rhode Island General Laws § 7-1.1-98.

5.    William B. Wilbur, a domiciliary of Rhode Island residing at 22 Stone Tower Lane, Barrington, Rhode Island, on information and belief for all purposes material to this complaint, is or was the president and sole shareholder of Patco and received or caused to be distributed assets of Patco such that he is or should be considered to be a trustee of such assets, a creditor of Patco, and/or otherwise as a holder of such assets that may be reached and applied to the satisfaction of a judgment in favor of Plaintiffs.

6.    Travelers Property Casualty Company of America ("Travelers") is a Connecticut business corporation with a principal place of business at One Tower Square, Hartford, Connecticut 06183.  On information and belief, The Travelers Indemnity Company of Illinois effective January 1, 2004, changed its name to or was merged into Travelers Property Casualty Company of America.

3

## JURISDICTION

7.    The Court has jurisdiction over the subject matter of
this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201
because the matter in controversy exceeds the sum or value of
$75,000, exclusive of interest and costs, and is between
citizens of different states.

8.    The Court has personal jurisdiction over the
defendants pursuant to Fed. R. Civ. P. 4(e), 4(h) and 4(k) and
Massachusetts General Laws ch. 223A, § 3, because for purposes
material to this complaint the claims against Patco and/or
Wilbur arise out of their transacting business in the
Commonwealth of Massachusetts, including the soliciation for
sale of goods and/or inspection and purchase of goods to which
title transferred in Massachusetts; and because Defendants have
or had substantial, continuous and systematic general business
contacts with the Commonwealth of Massachusetts; and/or because
the claims against Travelers arise out of its transacting
business in the Commonwealth of Massachusetts, regularly
engaging or soliciting business in the Commonwealth of
Massachusetts, regularly engaging in other persistent course of
conduct in the Commonwealth of Massachusetts, deriving
substantial revenue from services rendered in the Commonwealth
of Massachusetts, and/or involving the provision of insurance in

4

the Commonwealth of Massachusetts concerning risks at the time

of contracting within the Commonwealth of Massachusetts.

9.    The action against XYZ Tape is proper pursuant to

Rhode Island General Laws § 7-1.1-98 because it concerns a civil

action against XYZ Tape within two years of its October 22, 2002

dissolution for claims existing prior to XYZ Tape's dissolution

and/or because dissolution is ineffective for failure to comply

with the requirements of law.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §

1391(b) because a substantial part of the events giving rise to

this civil action occurred in this judicial district.

## FACTS

### Patco Needs To Control Pollution From Its Manufacture of Tape

11.    At times material to this complaint, Patco

manufactured pressure-sensitive adhesive tapes in a Rhode Island

factory through a process that emitted solvent fumes containing

flammable volatile organic compounds ("VOCs") and exhausted

those fumes into the air outside its factory.

12.    Patco's tape manufacturing process consisted of four

steps: (1) applying flammable adhesive to a tape backing or

"web" using a coating head machine; (2) drying the adhesive in

an industrial oven that emitted VOCs as the tape cured; (3)

winding up the film into rolls; and (4) cutting the rolls into

narrow rolls of tape (the "process line").

13. Patco knew that an excessive concentration of VOCs in a confined area could result in a fire or explosion.

14. At times material to this complaint, Wolverine designed and manufactured pollution control devices known as thermal oxidizers. The thermal oxidizer, also known as a fume incinerator, burns otherwise harmful pollutants exhausted from industrial ovens and renders them inert.

15. Patco through its president William Wilbur contacted Wolverine in Massachusetts with respect to the purchase of a fume incinerator when it learned that permits required under the Clean Air Act Amendments of 1990 required Patco to purchase equipment to control the VOC pollution created as part of its tape manufacturing process.

### Fume Incinerator Contract

16. By written proposal dated on or about January 22, 1991, Wolverine, then known as Wolverine Corporation, proposed to sell Patco a thermal oxidizer (the "fume incinerator"), an exhaust blower to convey exhaust from Patco's process line to the fume incinerator, an exhaust stack for the treated exhaust to vent to atmosphere, post fume incinerator ductwork including motorized dampers to regulate the processed hot gas feedback to Patco's process line, and a free-standing control panel (the "Fume Incinerator Equipment"). Patco accepted this proposal (the "Fume Incinerator Contract").

6

17.   The Fume Incinerator Contract provided that the control panel included "all required interlocks, relays and alarms."

18.   Interlocks or interlock contacts are the terminal blocks in an electrical control system designed to accept external electrical wiring to establish an electrical circuit with one or more control systems.

19.   Interlocking is a process that involves making electrical connections between two or more control systems to establish electrical dependency between or among different control systems.

20.   At the bottom of the first page of the Fume Incinerator Contract was the legend:  "All orders based on this quotation are subject to the acceptance by Wolverine Corporation.  The conditions on the reverse side form a part of this quotation."

21.   The conditions on the reverse side of the first page of the Fume Incinerator Contract were entitled "Wolverine Corporation TERMS AND CONDITIONS" ("Terms and Conditions").

22.   Section 6 of the Terms and Conditions stated in relevant part:  "Buyer agrees to indemnify and hold Seller harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation,

maintenance or operation of the Equipment by Buyer or others,
whatever the cause or alleged cause of the personal injury or
property damage may be."

23.    Section 18 of the Terms and Conditions stated: "The
Sales Agreement shall in all respects be governed by, and
construed in accordance with, the laws of the Commonwealth of
Massachusetts."

24.    Patco's president William Wilbur and another Patco
officer, agent or employee inspected the Thermal Oxidizer
Equipment at Wolverine's factory in Merrimac, Massachusetts
prior to shipment.

25.    On April 17, 1991, Wolverine delivered the fume
incinerator and related equipment covered by the Fume
Incinerator Contract to Patco, F.O.B., a common carrier, in
Merrimac, Massachusetts.

26.    Patco, now XYZ Tape, and Wolverine entered into an
enforceable contract in which Patco agreed to indemnify and to
hold Wolverine harmless from and against all liability, loss,
cost, damage or expense attributable to any claim against
Wolverine for personal injury or property damage arising out of
the installation, maintenance or operation of the Fume
Incinerator Equipment by Patco or others, whatever the cause or
alleged cause of the personal injury or property damage may be.

**Heat Recovery Contract**

27.   By written proposal dated November 29, 1993,
Wolverine, then known as Wolverine (Massachusetts) Corporation,
proposed to sell to Patco a heat recovery system in two phases,
including a filter box; hot gas ductwork and a hot gas blower
including hot gas return dampers and pneumatic actuators; new
exhaust ductwork; a heat exchanger and exhaust stack; a fresh
air blower including inlet ductwork; a supply blower; ductwork
and dampers for warehouse comfort heat including pneumatic
actuators and temperature controller ("Heat Recovery
Equipment"), which Patco accepted ("Heat Recovery Contract").
The Heat Recovery Equipment was intended to take the hot gas
treated by the fume incinerator and, through the use of a heat
exchanger, indirectly heat air blown from an outside fan that,
among other things, would be used to heat Patco's industrial
oven.

28.   As did the Fume Incinerator Contract before it, the
Heat Recovery Contract had at the bottom of the main page the
following legend: "All orders based on this quotation are
subject to the acceptance by Wolverine (Massachusetts)
Corporation.  The conditions on the reverse side form a part of
this quotation."

29.   The relevant conditions on the reverse side of the
first page of the Heat Recovery Contract were the same

9

conditions as the Terms and Conditions included in the Fume
Incinerator Contract including:  "Buyer agrees to indemnify and
hold Seller harmless from and against all liability, loss, cost,
damage or expense attributable to any claim against Seller for
personal injury or property damage arising out of the
installation, maintenance or operation of the Equipment by Buyer
or others, whatever the cause or alleged cause of the personal
injury or property damage may be."

    30.   On or about March 1994 and December 1994, Wolverine
arranged for the delivery the Heat Recovery System Equipment to
Patco in two stages.

    31.   Patco, now XYZ Tape, and Wolverine entered into an
enforceable contract in which Patco agreed to indemnify and to
hold Wolverine harmless from and against all liability, loss,
cost, damage or expense attributable to any claim against
Wolverine for personal injury or property damage arising out of
the installation, maintenance or operation of the Heat Recovery
Equipment by Patco or others, whatever the cause or alleged
cause of the personal injury or property damage may be.

### **Travelers Provides Patco With CGL and Property Insurance**

    32.   Travelers Property Casualty Company of America
issued to Patco, on information and belief, a comprehensive
commercial general liability policy of insurance, Policy No.
YJ630-190C7522, effective from December 31, 1999 to December

31, 2000, which included insured contract coverage ("CGL Policy").

33.  Travelers Indemnity Company of Illinois ("Travelers Indemnity") issued to Patco, on information a belief, a property insurance policy that was effective, among other times, during January 2000.

### Travelers Indemnity Makes Claims Against Wolverine

34.  On January 29, 2000, while Patco was operating its process line as well as the Fume Incinerator Equipment and the Heat Recovery Equipment, a fire and/or explosion occurred inside Patco's Bristol, Rhode Island factory that caused Patco property damage (the "incident").

35.  Individuals at Patco informed Travelers Indemnity that a failure of the Fume Incinerator Equipment and/or the Heat Recovery Equipment to exhaust VOCs caused the incident.

36.  Beginning in March of 2000 and at various times thereafter, Travelers Indemnity, with the knowledge and consent of Patco, began making claims against Wolverine for property damage caused by the incident arising out of the alleged installation, maintenance or operation of the Fume Incinerator Equipment and/or Heat Recovery Equipment by Wolverine or others.

37.  Travelers Indemnity commenced a civil action against Wolverine in the United States District Court for the District of Massachusetts captioned The Travelers Indemnity Company of

Illinois a/s/o Patco Corporation v. Wolverine (Massachusetts)
Corporation, Civil Action No. 03-10164-RWZ (the "Travelers
Indemnity Action"), alleging damages in the amount of
$977,321.32, plus interest, expenses, costs and attorney fees.

38.   The Travelers Indemnity Action asserted three counts
against Wolverine: negligence, strict liability, and breach of
implied warranty as fully reflected in a true copy of the
complaint attached hereto as Exhibit 1.

39.   Travelers Indemnity, with the knowledge and consent of
Patco, claims or has claimed that the damages attributable to
the incident arose out of Wolverine's alleged installation of
the Fume Incinerator Equipment in 1991 and/or Wolverine's
alleged installation of the Heat Recovery Equipment on or about
March 1993 and/or January 1995.

40.   Travelers Indemnity, with the knowledge and consent of
Patco, also claims or has claimed that the damages attributable
to the incident arose out of the operation of the Fume
Incinerator Equipment and/or Heat Recovery Equipment by Luis
Toro and/or others on January 29, 2000.  Travelers Indemnity
claims that this incident occurred when Luis Toro shut off the
power to the control panel of the fume incinerator, which panel
was part of the Fume Incinerator Equipment.  This, it asserts,
caused the exhaust fan supplied with the Wolverine Fume

Incinerator Equipment to shut off, improperly causing the
accumulation of combustible fumes that caused the incident.

41.  For all purposes material to this complaint, Great
American provided a defense to Wolverine of the Travelers
Indemnity claims, including the Travelers Indemnity Action, in
accordance with a contract of insurance between Great American
and Wolverine, and is subrogated to the rights of Wolverine
accordingly.

42.  Significant expenses of over approximately $263,377.13
have been incurred by Wolverine and/or on its behalf by its
subrogee Great American in defending against Travelers
Indemnity's claims, including the Travelers Indemnity Action,
including, through September 30, 2004, attorney fee expenses of
approximately $235,930.00, consultant expenses of approximately
$6,290.32, and expert witness and other expenses of
approximately $21,156.81.

43.  For all purposes material to this complaint, Wolverine
and/or Great American as its subrogee has incurred and will
continue to incur attorney fee expenses, consultant expert
expenses, expert witness expenses and other expenses in defense
of Travelers Indemnity's claims, including the Travelers
Indemnity Action, and may incur further liability, loss or
damage for a judgment of liability, if any, imposed against
Wolverine in the Travelers Indemnity Action, that arises out of

13

the installation, maintenance or operation of the Fume
Incinerator Equipment and/or Heat Recovery Equipment.

44.  Liability of Travelers under the CGL Policy on account
of the damage to property sustained by Wolverine and/or Great
American for which XYZ Tape, formerly Patco, is responsible is
reasonably clear under Massachusetts General Laws chapter 176D,
§ 3(9) and is fixed and absolute under Massachusetts General
Laws chapter 175, § 112 as such damage has been incurred.

45.  XYZ Tape, formerly Patco, despite notice and/or demand
has not indemnified Wolverine and Great American, or either of
them, and has not held harmless Wolverine and Great American, or
either of them, as required by the Fume Incinerator Contract and
the Heat Recovery Contract.

46.  Travelers despite notice and/or demand has not
properly acknowledged, acted reasonably promptly and/or accepted
liability with respect to the claim of Wolverine and Great
American, or either of them, as required by the CGL Policy and
applicable law, but instead has forced litigation with respect
to the claim though liability is reasonably clear.

## COUNT I

### Declaratory Judgment

47.  Wolverine and Great American repeat their allegations and incorporate herein by reference paragraphs 1-46.

48.  An actual and justiciable controversy exists between Plaintiffs and XYZ Tape as to whether XYZ Tape owes Wolverine and/or Great American a duty to indemnify and to hold harmless Wolverine and/or Great American from and against the liability, loss, cost, damage or expense attributable to Travelers Indemnity's claims against Wolverine for property damage arising out of the installation, maintenance or operation of the Fume Incinerator Equipment and/or the Heat Recovery Equipment.

49.  Wolverine and Great American have standing to bring this declaratory judgment action and all necessary parties have been joined in this action.

50.  The controversy that exists between Plaintiffs and XYZ Tape limits the rights of Wolverine such that Wolverine will suffer irreparable harm if the controversy concerning the indemnity obligation is not determined prior to the trial of the Travelers Indemnity Action.

## COUNT II

## Declaratory Judgment

51.  Wolverine and Great American repeat their allegations
and incorporate herein by reference paragraphs 1-50.

52.  Travelers Property Casualty Company of America owes
Wolverine and/or its subrogee Great American a duty not to
engage in unfair or deceptive business practices with respect to
their claim prohibited by Massachusetts General Laws chapter
93A, including but not limited to those unfair claims handling
or claims settlement practices prohibited by Massachusetts
General Laws chapter 176D, § 3(9), and may not engage in such
practices by claiming an artifice of alleged corporate
distinctiveness with respect to The Travelers Indemnity Company
of Illinois when, on information and belief, such entities have
merged; have engaged in joint enterprises, ventures or
combinations with respect to relevant multi-line insurance
products, coverages or claims, including the marketing of same;
and/or have made representations sufficient to create a
partnership by estoppel between them.

53.  An actual and justiciable controversy exists between
Plaintiffs and XYZ Tape and Travelers Property Casualty Company
of America as to whether coverage is afforded by the CGL Policy
by virtue of the indemnity agreements in the Fume Incinerator
Contract and/or the Heat Recovery Contract and whether XYZ

16

Tape's liability to Wolverine under those indemnity agreements for attorney fee expenses, consultant expenses, expert witness expenses, and other expenses, including but not limited to those attributable to the defense of the strict liability and breach of warranty counts in the Travelers Indemnity Action, as well as the potential liability of Wolverine with respect to a judgment against it, if any, in the Travelers Indemnity Action is reasonably clear.

54.  Wolverine and Great American have standing to bring this declaratory judgment action and all necessary parties have been joined in this action.

55.  The controversy that exists between Plaintiffs and XYZ Tape and Travelers Property Casualty Company of America limits the rights of Wolverine such that Wolverine will suffer irreparable harm if the controversy concerning insurance coverage is not determined prior to the trial of the Travelers Indemnity Action.

**COUNT III**

**Breach of Contract**

56.  Wolverine and Great American repeat their allegations and incorporate herein by reference paragraphs 1-55.

57.  XYZ Tape has breached duties owed to Wolverine under the Fume Incinerator Contract and/or the Heat Recovery Contract.

58.  XYZ Tape's breach of its contracts has caused
Wolverine and its subrogee Great American substantial damage,
including but not limited to substantial expenses incurred and
that will continue to be incurred in defense of Travelers
Indemnity's claims and would damage Wolverine and/or its
subrogee Great American in an amount of a judgment, if any,
imposed against Wolverine in the Travelers Indemnity Action.

### REQUEST FOR RELIEF

59.  WHEREFORE, Wolverine and Great American respectfully
request that the Court:

a.  Adjudicate the controversies that have arisen
among the parties and make a binding declaration of
the rights, duties and obligations of the parties;

b.  Order and declare as follows:

1.  XYZ Tape owes Wolverine and Great American a
duty to defend and to indemnify Wolverine and Great
American for all attorney fee expenses, consultant
expenses, expert witness expenses, and other expenses
attributable to defending against (i) Travelers
Indemnity's claims, (ii) the strict liability and
breach of implied warranty counts of the Travelers
Indemnity Action, and (iii) the negligence count of
the Travelers Indemnity Action;

2.    The Fume Incinerator Contract and the Heat Recovery Contract are insured contracts under the terms of the Travelers Property Casualty Company of America Policy;

3.    The allegations and contentions of Travelers Indemnity with respect to its claim and in the Travelers Indemnity Action state or adumbrate a claim that arises out of the installation and/or operation of the Fume Incinerator Equipment or the Heat Recovery Equipment;

4.    Travelers Property Casualty Company of America must extend coverage provided by its policy for payment of all attorney fee expenses, consultant expenses, expert witness expenses, and other expenses attributable to defending against (i) Travelers Indemnity's claims, (ii) the strict liability and breach of implied warranty counts of the Travelers Indemnity Action, and (iii) the negligence count of the Travelers Indemnity Action;

5.    Travelers Property Casualty Company of America must extend coverage provided by its policy to a judgment of liability, if any, imposed against Wolverine in the Travelers Indemnity Action;

c.   Enter a judgment against XYZ Tape to compensate Wolverine and Great American for the damages, including all attorney fee expenses, consultant expenses, expert witness expenses, and other expenses attributable to and caused by XYZ Tape's breach of contract;

d.   Order that all assets of XYZ Tape distributed as the result of or in the course of its dissolution to the shareholders of XYZ Tape or others be held in trust, be reached and applied, and/or be submitted into Court for the satisfaction of a judgment in favor of Wolverine and/or Great American;

e.   Award Wolverine and Great American all appropriate costs, expenses, attorneys' fees and interest authorized by law; and

f.   Award Wolverine and Great American such other relief deemed just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Wolverine Proctor & Schwartz, Inc.
Great American Alliance Insurance Co., Inc.

By its attorneys,

Matthew J. Walko
BBO No. 562172
SMITH & DUGGAN LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 228-4400

Thomas G. Cooper
BBO No. 541829
Gerard A. Butler, Jr.
BBO No. 557176
SMITH & DUGGAN LLP
Lincoln North
55 Old Bedford Road
Lincoln, Massachusetts 01773-1125
(617) 228-4400

Date:  October 19, 2004