UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WOLVERINE PROCTOR & SCHWARTZ, INC. and GREAT AMERICAN ALLIANCE INSURANCE CO., INC. <br><br> Plaintiffs, <br><br> v. <br><br> XYZ TAPE CORP., FORMERLY KNOWN AS PATCO CORP., WILLIAM B. WILBUR AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendants. | DOCKET NO: 04-12189RWZ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
XYZ TAPE CORP.'S AND WILLIAM B. WILBUR'S
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION.

In this civil action, the plaintiffs seeks: (Count I) a declaratory judgment that XYZ

Tape Corp. ("XYZ Tape") owes plaintiffs, Wolverine Proctor & Swartz, Inc. ("Wolverine")

and Great American Alliance Insurance Co., Inc. ("Great American")  a contractual duty to

"indemnify and to hold harmless" plaintiffs against the "liability, loss, cost, damage or

expense" attributable to a subrogation action brought by The Travelers Indemnity Company

of Illinois against Wolverine; (Count II) a declaratory judgment that Travelers Property &

Casualty Company of America and The Travelers Indemnity Company of Illinois is, in effect,

the same entity, and that general liability insurance coverage previously provided by

Travelers  to XYZ Tape affords coverage to XYZ Tape for plaintiffs' claims in this action;

and (Count III) compensatory relief against XYZ Tape for an alleged breach of contract

953326v1

relating to a claimed indemnification agreement by failing to defend and indemnify Wolverine against Travelers subrogation action. Plaintiffs have not asserted any claims against Wilbur, but merely allege that "on information and belief" Wilbur "is or was the president and sole shareholder of [XYZ Tape] such that he is or should be considered to be a trustee of such assets, a creditor of [XYZ Tape], and/or otherwise a holder of such assets that may be reached and applied to the satisfaction of a judgment in favor of Plaintiffs."

XYZ Tape and Wilbur dispute the assertions of the plaintiffs and move for summary judgment on the plaintiffs' claims for the reasons set forth in this memorandum, including: (1) the plaintiffs' action against XYZ Tape is barred by RI ch. 7-1.1 § 7.-1.1-98 (repealed effective July 1, 2005) and RI ch. 7-1.2 § 7.-1.2-1324 (effective July 1, 2005), (2) plaintiffs failed to state a claim upon which relief may be granted; (3) plaintiffs' claims against Wilbur are moot; and (4) this Court lacks personal jurisdiction over Wilbur.

## II.    STATEMENT OF FACTS.

1.    In 1991 Wolverine, a corporation with a principal place of business in Massachusetts, sold to XYZ Tape (f/k/a Patco Corp.), a Rhode Island corporation, machinery commonly referred to as a "Thermal Oxidizer". In 1994, Wolverine sold to XYZ Tape machinery commonly referred to as a "Heat Exchange Unit". (Affidavit of William B. Wilbur ¶9).

2.    Plaintiffs, Wolverine and its insurer, plaintiff Great American allege that written proposals Wolverine submitted to XYZ Tape relating to above-referenced sales incorporated written "Terms and Conditions", which included indemnification language, became part of binding contracts between XYZ Tape and Wolverine. A true and accurate copy of the alleged Terms and Conditions is attached hereto as Exhibit A. (See Affidavit of William B. Wilbur ¶ 19).

2

3.      The relevant portions of the Terms and Conditions, as claimed by the plaintiffs, is as follows:  "Buyer agrees to indemnify and hold Seller harmless from and against all ***liability, loss, cost, damage or expense*** attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer or others, whatever the cause or alleged cause of the personal injury or property damage may be."  (*emphasis supplied).*  (Exhibit A, Terms and Conditions ¶ 6; See Complaint ¶¶ 21, 22, 26, 29 and 31).

4.      Both the Thermal Oxidizer and Heat Exchange Unit were installed at XYZ Tape's manufacturing plant located in Bristol, Rhode Island.  (Affidavit of William B. Wilbur ¶ 9).

5.      On January 29, 2000, an explosion occurred at XYZ Tape's Bristol, Rhode Island manufacturing plant.  Upon information and belief, XYZ Tape's insurer at the time of the explosion, The Travelers Indemnity Company of Illinois, later determined acts of Wolverine to be the cause of the explosion.  (Affidavit of William B. Wilbur ¶ 12).

6.      On January 24, 2003, The Travelers Indemnity Company of Illinois filed with this Court a subrogation action against Wolverine entitled The Travelers Indemnity Company of Illinois a/s/o Patco Corporation v. Wolverine (Massachusetts) Corporation, Docket No. 03-10164RWZ (hereinafter the "Subrogation Action").

7.      Plaintiffs allege that as a result of the Subrogation Action, they have incurred damages commencing on November 1, 2002, for which they seek indemnification from XYZ Tape.  Plaintiffs allege that between the period of November 1, 2002 through December 31, 2004 they have incurred damages in the amount of $305,968.75.  (Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure ¶ C and attachment).

3

8.      On October 22, 2002, in accordance with Title 7, Chapter 7-1.1 of the Rhode Island General Laws, XYZ Tape was formally dissolved.  (Exhibit C, Certificate of Dissolution of XYZ Tape Corp.; Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution; Affidavit of William B. Wilbur ¶ 5).

9.      Wilbur did not receive any assets of XYZ Tape upon its dissolution.  (Exhibit F, XYZ Tape's Answers to Interrogatories, Answer Nos. 11 and 12; Exhibit G, Wilbur's Answers to Interrogatories, Answer No. 3; Affidavit of William B. Wilbur ¶ 7).

10.     There were no assets of XYZ Tape distributed upon its dissolution.  (Exhibit F, XYZ Tape's Answers to Interrogatories, Answer Nos. 11 and 12; Affidavit of William B. Wilbur ¶¶ 6, 7 and 8).

11.     XYZ Tape was formally dissolved under Rhode Island law prior to the time Plaintiffs' allege that they had any claim against XYZ Tape for liability, loss, costs, damages or expenses incurred relating to the Subrogation Action for which they seek to be indemnified by XYZ Tape.  (Exhibit C, Certificate of Dissolution of XYZ Tape Corp.; Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure ¶ C and attachment; Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution; Affidavit of William B. Wilbur ¶5).

12.     Plaintiffs did not incur any **liability, loss, cost, damage or expense** relating to the Subrogation Action prior to the dissolution of XYZ Tape.  (See Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure, ¶ C and attachment thereto).

13.     XYZ Tape did not have any knowledge of any claim by The Travelers Indemnity Company of Illinois against Wolverine prior to its dissolution and Wilbur, the former president of XYZ Tape, did not have any knowledge of the Subrogation Action prior

to the Fall of 2003.  (Exhibit F, XYZ Tape's Answers To Interrogatories, Answer Nos. 3 and 4, Affidavit of William B. Wilbur ¶¶ 14, 15 and 16).

14.    The only time the Wilbur, a Rhode Island resident, traveled to Massachusetts relating to XYZ's business dealings with Wolverine concerning the Thermal Oxidizer or Heat Exchange Unit was once in 1991 when Wilbur, in his capacity as president of XYZ Tape, and not in his individual capacity, visited Wolverine's Massachusetts' factory to inspect the Thermal Oxidizer prior to its shipment to XYZ Tape in Rhode Island.  (Affidavit of William B. Wilbur ¶¶ 10 and 11).

15.    At no time prior to the dissolution of XYZ Tape, until the fall of 2003, did Wilbur have any contact with Wolverine other than in his capacity as an employee of XZY Tape.  (Affidavit of William B. Wilbur ¶¶ 10 and 11).  Subsequent to the dissolution of XYZ Tape, Wilbur did not have any contact with Wolverine until the fall of 2003, which was related to his deposition in the Subrogation Action.  (Affidavit of William B. Wilbur ¶ 11). Wilbur was served with the Complaint in this action in Rhode Island.  (Affidavit of William B. Wilbur ¶18).

## III.    SUMMARY JUDGMENT STANDARD.

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, there is no genuine issue as to any material fact and where the moving party is entitled to a judgment as a matter of law.  (Fed.R.Civ.P. 56(c)).  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A non-moving party cannot rest on mere allegations; the non-moving party must adduce specific, provable facts that establish that there is a triable issue.  Rogers v. Fair, 902 F.2d 130, 143 (1st Cir. 1990).

There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(citations omitted).

## IV.  ARGUMENT

A.  Plaintiffs' Claims Against XYZ Tape Corp. Are Barred Under RI ch. 7-1.1 § 7.-1.1-98 and RI ch. 7-1.2 § 7.-1.2-1324, Thereby Rendering All Other Claims in This Action Moot.

XYZ Tape, a corporation that was duly organized under the laws of Rhode Island, is subject to Rhode Island Laws relating to its corporate existence, standing and corporate liabilities. XYZ Tape was dissolved on October 22, 2002. The attached Certificate of Dissolution is prima facia evidence of the dissolution. (Exhibit C, Certificate of Dissolution of XYZ Tape Corp.; Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution; see RI ch. 7-1.1 § 7-1.1-134 (repealed effective July 1, 2005) RI ch. 7-1.2 § 7-1.2-1605 (effective July 1, 2005)).

Plaintiffs allege that indemnification agreements exist between Wolverine and XYZ Tape relating to their sale of equipment to XYZ Tape in 1991 and 1994. Plaintiffs filed this action seeking indemnification for damages they incurred commencing November 1, 2002, approximately one week after XYZ Tape was dissolved. Plaintiffs base their claim on the purported indemnification agreements, which limits claims for indemnification to actual "liability, loss, cost, damages or expense". (Exhibit A, "Terms and Conditions", ¶ 6). By their own admission, as evidenced by their Initial Disclosure in this matter, plaintiffs did not incur any liability, loss, costs damages or expenses prior to the dissolution of XYZ Tape. (Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure ¶ C and attachment).

6

Assuming the indemnification agreements are valid, as plaintiffs did not have a claim for indemnification against XYZ Tape until plaintiffs incurred any liability, loss, cost, damages or expense *after the dissolution* of XYZ Tape, plaintiffs' claims are barred by RI ch. 7-1.1 § 7.-1.1-98 (repealed effective July 1, 2005) and RI ch. 7-1.2 § 7.-1.2-1324 (effective July 1, 2005), which specifically limits claims against a dissolved corporation to claims and liability which were incurred "***prior to dissolution***".  (*emphasis supplied)*.   This Court in Carreiro v. Rhodes Bill and Co., Ltd, 68 F.3d 1443, 1450 (D.Mass. 1995) unequivocally stated that any "actions on liabilities incurred after dissolution do not survive at all, not even for the two-year wind-up period." Carreiro v. Rhodes Bill and Co., Ltd, 68 F.3d 1443, 1450 (D.Mass. 1995).   Simply put, the plaintiffs cannot assert a claim for indemnification for damages against a dissolved Rhode Island corporation which did not exist prior to the corporation's dissolution.  For these reasons this Court must allow this Motion for Summary Judgment in favor of all defendants.  The failure of the indemnification claims against XYZ Tape renders all remaining claims against the remaining defendants moot.

B.      Summary Judgment Must Be Granted In Favor Of Defendant William B. Wilbur On The Grounds That This Court Lacks Personal Jurisdiction Over Mr. Wilbur And The Plaintiffs Have Completely Failed To Set Forth Any Claim Against Mr. Wilbur For Which Relief May Be Granted.

        1.      William B. Wilbur did not receive any assets of XYZ Tape Corp. upon its dissolution, nor were any assets distributed, and as such, the plaintiffs' claim to reach and apply distributed assets is moot.

The plaintiffs have alleged three Counts in their Complaint, none of which set forth any claims against Wilbur.  Plaintiffs merely allege that "upon information and belief", Wilbur, as president and sole shareholder of XYZ Tape, received or caused to be distributed assets of XYZ Tape such that he is or should be considered to be a trustee of such assets, a creditor of XYZ Tape, and/or otherwise a holder of such assets that may be reached and

applied to the satisfaction of a judgment in favor of plaintiffs. The only relief plaintiffs request of the Court regarding Wilbur and the alleged distributed assets is a request that this Court "order that all assets of XYZ Tape *distributed as the result of or in the course of its dissolution* to the shareholders of XYZ Tape be held in trust, be reached and applied, and/or be submitted into Court for the satisfaction of a judgment in favor of the [plaintiffs]." (*emphasis supplied*). As plaintiffs are aware, there were no assets distributed to Wilbur or anyone else upon the dissolution of XYZ Tape. (Exhibit F, XYZ Tape's Answers to Interrogatories, Answer Nos. 11 and 12; Exhibit G, Wilbur's Answers to Interrogatories, Answer No. 3; Affidavit of William B. Wilbur ¶ 6, 7 and 8). As such, even if plaintiffs had a valid claim against Wilbur, there is no question of fact that he is not a trustee of any assets of XYZ Tape and Summary Judgment must be entered in favor of Wilbur on this basis alone.

    2.    <u>The Claims Against William B. Wilbur Must Be Dismissed Due To Lack Of Personal Jurisdiction.</u>

The claims against Wilbur must be dismissed due to this Court's lack of personal jurisdiction over Wilbur. When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiffs bear the burden of persuading the court that jurisdiction exists. <u>Interface Group-Massachusetts, LLC v. Rosen</u>, 256 F.Supp.2d 103, 105 (D.Mass. 2003). In order for this Court to exercise personal jurisdiction over Wilbur, the plaintiffs must establish that there are sufficient contacts between Massachusetts and Wilbur, a resident of Rhode Island, to satisfy both (1) the Massachusetts long-arm statute (M.G.L. ch. 223A, § 3); and (2) the Fourteenth Amendment's Due Process clause of the Constitution. <u>See</u> <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 772, 625 N.E.2d 549 (1994). The jurisdiction to be established by the plaintiffs may be either specific, meaning there exists a "demonstrable nexus" between the plaintiffs' claim and Wilbur's contacts in Massachusetts, or "general", where no such nexus

exists but Wilbur's contacts with Massachusetts are 'continuous and systematic.   See Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC, 273 F.Supp. 2d 172, 175 (D.Mass. 2003) (*citing* Mass. School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 34-35 (1st Cir. 1998)).

     a.    Massachusetts Long-Arm Statute (M.G.L. ch. 223A § 3).

The Massachusetts Long-Arm Statute establishes jurisdiction over a non-resident individual defendant when the claim arises from the individual's "transacting any business in this commonwealth" and other specific factors set for in M.G.L. ch. 223A § 3.  See Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC, 273 F.Supp. 2d 172, 175 (D.Mass. 2003); M.G.L. ch. 223A § 3.  The plaintiffs must proffer evidence tending to show that Wilbur, in his individual capacity "transacted business" in Massachusetts, and the claims set forth in the complaint against Wilbur "arose from" such transaction of business.  See Tatro, 416 Mass. At 767.  Here, in reading the complaint in a light most favorable to the plaintiffs, the plaintiffs are only alleging that Wilbur, as a shareholder of XYZ Tape, should be considered a trustee of any assets he received upon the dissolution of XYZ Tape and that those assets should be reached and applied to any judgment in plaintiffs' favor in this matter.  The plaintiffs have not, and cannot, set forth a single allegation that Wilbur transacted any business within Massachusetts that relate to plaintiffs' claim that Wilbur, a Rhode Island resident, should be a reach and apply defendant as to assets distributed to shareholders in 2002 from XYZ Tape, a Rhode Island corporation.  In fact, the only allegations the plaintiffs make in their attempt to establish personal jurisdiction over Wilbur is a claim that Wilbur in 1991, as president of XYZ Tape, made one telephone call to Wolverine and made one trip to Massachusetts prior to the shipment of the Thermal Oxidizer on April 17, 1991, to inspect the Thermal Oxidizer at Wolverine's factory in Merrimac, Massachusetts.  (See Complaint, ¶¶ 15, 24 and 25).  There

is no logical connection between a Rhode Island shareholder of a Rhode Island corporation receiving distributions of the corporation upon its dissolution in 2002, to contracts for the sales of goods in 1991 and 1994 between the Rhode Island corporation and a Massachusetts corporation.  Even if Wilbur could be considered to have been acting in his personal capacity in his few contacts with Wolverine, which is specifically denied, contacts that consist of nothing but purchasing and incidental contacts which are not directly related to the claims against the defendant, as in this case, are not sufficient to suggest general jurisdiction even if the purchasing is systematic and substantial.  See Helicopteros Nacionales De Columbia, S.A. v. Hall, 466, U.S. 408, 416, 417 (1984).  While it may be argued that Wilbur's acts as president of XYZ Tape in contacting Wolverine and inspecting the product in Massachusetts may be considered in establishing personal jurisdiction over XYZ Tape, it is well established that jurisdiction over a corporate officer may not be based on jurisdiction of the corporation itself.  See Interface Group-Massachusetts, LLC, 256 F.Supp. 2d at 105 (citing LaVallee v. Parrot-Ice Drink Prods. Of Am., 193 F.Supp.2d 296, 300 (D.Mass.)).  There must be an independent basis for requiring a corporate officer to defend an action in a foreign Court. Interface Group-Massachusetts, LLC, 256 F.Supp.2d at 105 (citing Yankee Group, Inc. v. Yamashita, 678 F.Supp. 20 (D.Mass. 1988)).  Plaintiff cannot satisfy any of the requirements to establish personal jurisdiction over Wilbur und the Massachusetts Long Arm Statute and the claims against Wilbur must be dismissed.

    2.    Fourteenth Amendment's Due Process Clause.

    Even if plaintiff could some how argue that a Rhode Island resident who is merely a reach and apply defendant is subject to the Long-Arm Statute, the plaintiffs cannot meet their burden of establishing that requiring Wilbur to litigate the case in Massachusetts comports with the strictures of the Fourteenth Amendment to the Constitution.  Under the required Due

Process analysis, plaintiffs must establish: (1) the claim underlying the litigation against Wilbur, as an individual, directly arises out of, or relates to, Wilbur's Massachusetts activities; (2) Wilbur's Massachusetts contacts must represent a purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of Massachusetts law and making Wilbur's involuntary presence before the state's courts foreseeable; and (3) the plaintiffs must satisfy the Court of the reasonableness of exercising jurisdiction over Wilbur in light of a number of factors (the Gestalt factors[1]) that touch upon the fundamental fairness of subjecting Wilbur to the jurisdiction of the Court. See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing United Electrical, Radio & Machine Workers of America v. 163 Pleasant Street, 906 F.2d 1080, 1089 (1st Cir. 1993)).

It cannot be established that a shareholder's receipt of a distribution of company assets as a shareholder upon the dissolution of the company *directly arises out of, or relates to* activity that the individual may have participated in as a company representative in the normal course of the company's business eleven years prior to the distribution of the assets. It is also unrealistic for the plaintiffs to argue that Wilbur was personally invoking the benefits and protections of Massachusetts law and that it was foreseeable that that he could be subject this Court's jurisdiction relating to distributions received as a shareholder in a Rhode Island corporation when, in the early 1990s, as a representative of the Rhode Island corporation he made one telephone call and one trip to Massachusetts relating to the purchase and/or delivery of a piece of equipment.

---

[1] The Gestalt factors include: the defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

It is fundamentally unfair and it does not further any social policy to hold that Wilbur is subject to the personal jurisdiction of this Court as a reach and apply defendant. To hold otherwise may be the equivalent of stating that an individual, by the mere fact that he is a shareholder in a corporation, is subject to personal jurisdiction of every forum where the stock issuing company is subject to jurisdiction or that every individual who contacts foreign jurisdictions in the course of his employment is individually subject to the personal jurisdiction of these foreign jurisdictions.

Summary Judgment must be entered in defendants' favor as a matter of law.

## III.  **CONCLUSION**

WHEREFORE the above-stated reasons, defendants XYZ Tape Corp. and Wilbur B. Wilbur respectfully request this Court allow the Motion For Summary Judgment and enter judgment in their favor on all claims in the Complaint, together with such other relief as the Court deems just and proper.

> XYZ TAPE CORP., FORMERLY
> KNOWN AS PATCO CORP., and
> WILLIAM B. WILBUR,
>
> By their attorneys,
>
> */s/ Judith A. Leggett*
> Lee Stephen MacPhee, BBO #312400
> Judith A. Leggett, BBO#635346
> MORRISON MAHONEY LLP
> 250 Summer Street
> Boston, MA 02210
> (617) 439-7500
> E-mail:  jleggett@morrisonmahoney.com

Date:   June 28, 2005

953326v1

## CERTIFICATE OF SERVICE

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P.

/s/ Judith A. Leggett
Judith A. Leggett

953326v1