UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WOLVERINE PROCTOR & SCHWARTZ, INC. and GREAT AMERICAN ALLIANCE INSURANCE CO., INC. | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | DOCKET NO: 04-12189RWZ |
| XYZ TAPE CORP., FORMERLY KNOWN AS PATCO CORP., WILLIAM B. WILBUR AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

STATEMENT OF FACTS
OF DEFENDANT'S XYZ TAPE CORP. AND WILLIAM B. WILBUR
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

1.      All Exhibits referenced herein are attached as Exhibits to the Memorandum Of Points And Authorities In Support Of XYZ Tape Corporation's And William B. Wilbur's Motion For Summary Judgment.

2.      Defendant XYZ Tape Corp. (f/k/a Patco Corp.) was a corporation duly organized under the laws of Rhode Island whose only place of business was in Rhode Island.  (See generally Exhibit C, see generally Certificate of Dissolution of XYZ Tape Corp.; see generally Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution Affidavit of William B. Wilbur¶3).

953322v1

3.   In or around 1983, defendant William B. Wilbur ("Wilbur") became the president of XYZ Tape Corp. ("XYZ Tape") and remained in that position until October 22, 2002, when XYZ Tape was dissolved. (Affidavit of William B. Wilbur ¶ 4).

4.   At all relevant times, Wilbur was a resident of Rhode Island. Wilbur has been continuously domiciled in Rhode Island since his birth. (Affidavit of William B. Wilbur ¶ 2).

5.   Upon information and belief, the plaintiff, Wolverine Proctor & Schwartz, Inc. ("Wolverine"), is a corporation with a principal place of business in Massachusetts and plaintiff, Great American Alliance Insurance Co. ("Great American"), is Wolverine's general liability insurance carrier.

6.   In 1991 Wolverine, a corporation whose principal place of business is in Massachusetts, sold to XYZ Tape machinery commonly referred to as a "Thermal Oxidizer". In 1994, Wolverine sold to XYZ Tape machinery commonly referred to as a "Heat Exchange Unit". Both the Thermal Oxidizer and Heat Exchange Unit were installed at XYZ Tape's manufacturing plant located in Bristol, Rhode Island. (Affidavit of William B. Wilbur ¶ 9).

7.   Plaintiffs, Wolverine and Great American, allege that written proposals Wolverine submitted to XYZ Tape relating to above-referenced sales incorporated written "Terms and Conditions" which included indemnification language, which became part of binding contracts between XYZ Tape and Wolverine. (Exhibit A, Terms and Conditions ¶ 6; See Complaint ¶ 21, 22, 26, 29 and 31; Affidavit of William B. Wilbur ¶ 19).

8.   The relevant portions of the Terms and Conditions, as claimed by the plaintiffs, is as follows: "Buyer agrees to indemnify and hold Seller harmless from and

953322v1

against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer or others, whatever the cause or alleged cause of the personal injury or property damage may be." (Exhibit A, Terms and Conditions ¶ 6; See Complaint ¶ 21, 22, 26, 29 and 31).

9. On January 29, 2000, an explosion occurred at XYZ Tape's Bristol, Rhode Island manufacturing plant. (Affidavit of William B. Wilbur ¶ 12).

10. On October 22, 2002, in accordance with Title 7, Chapter 7-1.1 of the Rhode Island General Laws, XYZ Tape was formally dissolved. (Exhibit C, Certificate of Dissolution of XYZ Tape Corp.; Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution; Affidavit of William B. Wilbur ¶ 5).

11. On January 24, 2003, The Travelers Indemnity Company of Illinois filed with this Court a subrogation action against Wolverine entitled The Travelers Indemnity Company of Illinois a/s/o Patco Corporation v. Wolverine (Massachusetts) Corporation, Docket No. 03-10164RWZ (hereinafter the "Subrogation Action").

12 Plaintiffs allege that as a result of the Subrogation Action, they have incurred damages commencing on November 1, 2002, for which they seek indemnification from XYZ Tape. Plaintiffs allege that between the period of November 1, 2002 through December 31, 2004 they have incurred damages in the amount of $305,968.75. (Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure ¶ C and attachment thereto).

13. Wilbur did not receive any assets of XYZ Tape upon its dissolution. (Exhibit F, XYZ Tape's Answers to Interrogatories, Answer Nos. 11 and 12; Exhibit G, Wilbur's Answers to Interrogatories, Answer No. 3; Affidavit of William B. Wilbur ¶ 7).

14. There were no assets of XYZ Tape distributed upon its dissolution. (Exhibit F, XYZ Tape's Answers to Interrogatories, Answer Nos. 11 and 12; Affidavit of William B. Wilbur ¶ 6, 7 and 8).

15. XYZ Tape was formally dissolved under Rhode Island law prior to the time Plaintiffs' allege that they had any claim against XYZ Tape for liability, loss, costs, damages or expenses incurred relating to the Subrogation Action for which they seek to be indemnified by XYZ Tape. (Exhibit C, Certificate of Dissolution of XYZ Tape Corp.; Exhibit D, Certified statement of Rhode Island Secretary of State of XYZ Tape Corp. Dissolution; Exhibit E, Certified copies of XYZ Tape Corp. Articles of Dissolution; Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure ¶ C and attachment; Affidavit of William B. Wilbur ¶ 5).

16. Commencing on November 1, 2002, or sometime thereafter, Wolverine and/or Great American, incurred legal costs and expenses in addressing and/or defending the claims of the Subrogation Action.

17. Plaintiffs did not incur any liability, loss, cost, damage or expense relating to the Subrogation Action prior to the dissolution of XYZ Tape. (See Exhibit B, Plaintiffs' Rule 26(a)(1) Initial Disclosure, ¶ C and attachment).

18. Neither Wolverine, Great American or The Travelers Indemnity Company of Illinois notified XYZ Tape or Wilbur of a subrogation claim against Wolverine or the Subrogation Action prior to the dissolution of XYZ Tape. (Exhibit F, XYZ Tape's

953322v1

Answers To Interrogatories, Answer Nos. 3 and 4; Affidavit of William B. Wilbur ¶14, 15 and 16).

19.  XYZ Tape did not have any knowledge of any claim by The Travelers Indemnity Company of Illinois against Wolverine prior to its dissolution. (Exhibit F, XYZ Tape's Answers To Interrogatories, Answer Nos. 3 and 4)

20.  Wilbur, the former president of XYZ Tape, did not have any knowledge of the Subrogation Action prior to the Fall of 2003, approximately two years after the commencement of the Subrogation Action. (Exhibit F, XYZ Tape's Answers To Interrogatories, Answer Nos. 3 and 4, Affidavit of William B. Wilbur ¶14, 15 and 16).

21.  The only time Wilbur traveled to Massachusetts relating to XYZ's business dealings with Wolverine with respect to the Thermal Oxidizer was once in 1991 when Wilbur, in his capacity as president of XYZ Tape, and not in his individual capacity, visited Wolverine's Massachusetts' factory to inspect the Thermal Oxidizer prior to its shipment to XYZ Tape in Rhode Island. (Affidavit of William B. Wilbur ¶10 and 11).

22.  At no time prior to the dissolution of XYZ Tape, until the fall of 2003, did Wilbur have any contact with Wolverine other than in his capacity as an employee of XZY Tape. (Affidavit of William B. Wilbur ¶10 and 11).

23.  Subsequent to the dissolution of XYZ Tape, Wilbur did not have any contact with Wolverine until the fall of 2003. (Affidavit of William B. Wilbur ¶11).

24.  Wilbur was not served personally, or otherwise, in Massachusetts in this action. (Affidavit of William B. Wilbur ¶18).

CONCLUSION

Based on the foregoing, there are no material facts in this case and, therefore, XYZ Tape Corp. and William B. Wilbur are entitled to judgment as a matter of law on all claims brought by the plaintiffs in this matter.

                XYZ TAPE CORP. and
                WILLIAM B. WILBUR,

                By their attorneys,

                */s/ Judith A. Leggett*
                Lee Stephen MacPhee, BBO #312400
                Judith A. Leggett, BBO#635346
                MORRISON MAHONEY LLP
                250 Summer Street
                Boston, MA 02210
                (617) 439-7500
                E-mail:jleggett@morrisonmahoney.com

Date:  June 28, 2005

CERTIFICATE OF SERVICE

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P.

                */s/ Judith A. Leggett*
                Judith A. Leggett

953322v1