UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WOLVERINE PROCTOR & SCHWARTZ, INC. and GREAT AMERICAN ALLIANCE INSURANCE CO., INC.,<br><br>  Plaintiffs,<br><br>v.<br><br>XYZ TAPE CORP., FORMERLY KNOWN AS PATCO CORP., WILLIAM B. WILBUR AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>  Defendants. | DOCKET NO: 04-12189RWZ |

## AFFIDAVIT OF WILLIAM B. WILBUR

1. The statements made in this Affidavit are based upon personal knowledge, unless otherwise stated, and are known by me to be true and I am competent to testify to same.

2. I am a resident of Rhode Island. I have continuously been domiciled in Rhode Island since my birth.

3. XYZ Tape Corp. (f/k/a Patco Corp.) was a corporation duly organized under the laws of Rhode Island in 1965 and whose only place of business was in Rhode Island.

4. I became the president of XYZ Tape Corp. in or around 1983, and remained in that position until October 22, 2002, when XYZ Tape Corp. was dissolved.

5. On October 22, 2002, XYZ Tape Corp. ("XYZ Tape") was formally dissolved in Rhode Island.

953332v1

6. XYZ did not have any assets at the time of its dissolution. No assets of XYZ Tape were distributed to any shareholder, individual or entity upon its dissolution.

7. I did not receive a distribution of any assets of XYZ Tape as a shareholder or otherwise upon XYZ Tape's dissolution.

8. I did not cause any assets of XYZ Tape to be distributed upon XYZ Tape's dissolution.

9. In 1991 Wolverine sold to XYZ Tape machinery commonly referred to as a "Thermal Oxidizer". In 1994, Wolverine sold to XYZ Tape machinery commonly referred to as a "Heat Exchange Unit". Both the Thermal Oxidizer and Heat Exchange Unit were installed at XYZ Tape's manufacturing plant located in Bristol, Rhode Island.

10. After XYZ Tape purchased the Thermal Oxidizer, as president of XYZ Tape and their representative, I inspected the Thermal Oxidizer at Wolverine's Massachusetts' facility prior to its shipment to Rhode Island. This was the only time I was in Massachusetts relating to any business transaction with Wolverine with respect to the Thermal Oxidizer or the Heat Exchange Unit.

11. On January 29, 2000, upon information and belief, an explosion occurred at XYZ Tape's Bristol, Rhode Island manufacturing plant. Upon information and belief, XYZ Tape's general liability insurer at the time of the explosion, The Travelers Indemnity Company of Illinois, later determined acts of Wolverine to be the cause of the explosion.

12. Upon information and belief, on January 24, 2003, The Travelers Indemnity Company of Illinois filed with this Court a subrogation action against Wolverine entitled The Travelers Indemnity Company of Illinois a/s/o Patco Corporation v. Wolverine

953332v1

(Massachusetts) Corporation, Docket No. 03-10164RWZ (hereinafter the "Subrogation Action").

13. At no time prior to the dissolution of XYZ Tape did I have any contact with Wolverine, other than in my capacity as an employee of XZY Tape. Subsequent to the dissolution of XYZ Tape, I did not have any contact with Wolverine until the fall of 2003, and this contact was related to Wolverine deposing me in the Subrogation Action.

14. XYZ Tape did not have any knowledge of The Travelers Indemnity Company of Illinois subrogation claim against Wolverine, or the Subrogation Action, prior to XYZ Tape's dissolution.

15. Neither Wolverine, Great American or The Travelers Indemnity Company of Illinois notified XYZ Tape or myself of a subrogation claim against Wolverine or the Subrogation Action prior to the dissolution of XYZ Tape.

16. I did not have any knowledge of the Subrogation Action until the fall of 2003, shortly before I was deposed by Wolverine in the Subrogation Action.

17. Neither XYZ Tape nor myself were ever notified of any claim for the indemnification of Wolverine relating to the Subrogation Action until in or around October, 2004.

18. I was not personally served in Massachusetts in this action.

19. I hereby certify that Exhibit A attached to the Memorandum Of Points And Authorities In Support Of XYZ Tape Corp.'s And William B. Wilbur's Motion For Summary Judgment is a true and accurate copy of a document produced by plaintiffs in this matter which plaintiffs allege contains "Terms and Conditions" and indemnification language relating to Wolverine's 1991 and 1994 sale of machinery to XYZ Tape.

20.	I hereby certify that Exhibits B, C, D and E attached to the Memorandum Of Points And Authorities In Support Of XYZ Tape Corp.'s And William B. Wilbur's Motion For Summary Judgment are true and accurate copies of the documents contained therein.

Signed under the penalties of perjury this 10th day of June, 2005

*/s/ William B. Wilbur*
William B. Wilbur