UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Wolverine Proctor & Schwartz, Inc., and | : | |
| Great American Alliance Insurance Co., Inc. | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 04-12189-RWZ |
| XYZ Tape Corp., formerly known as Patco Corp., | : | |
| William B. Wilbur, and | : | |
| Travelers Property Casualty Company of America | : | **Oral Argument Requested** |
|     Defendants. | : | |
| | : | |

**Memorandum of Wolverine Proctor & Schwartz, Inc. And Great American Alliance Ins.
In Opposition To XYZ Tape Corp.'s Motion for Summary Judgment**

## I.    Introduction

Plaintiffs Wolverine Proctor & Schwartz, Inc. and Great American Alliance Insurance

Co., Inc. (collectively "Wolverine") submit this memorandum in opposition to Defendant XYZ

Tape Corp.'s motion for summary judgment (Docket No. 21).  Wolverine commenced this action

against XYZ Tape Corp. ("XYZ Tape") within the two-year period permitted by Rhode Island

law as to rights existing, claims existing as well as liabilities incurred prior to the voluntary

dissolution of XYZ Tape.  XYZ Tape improperly focuses on one of three relevant parts of a

savings statute having a much broader scope.  It misconstrues the only case on which it relies,

which does not support the relief it seeks.  The events that triggered Wolverine's rights and

claims against XYZ Tape occurred prior to dissolution and Wolverine properly seeks to enforce

those rights and claims in this action within the two-year continuation period permitted by Rhode

Island General Laws § 7-1.1-98, repealed by 2004 R.I. Pub. Law 216, § 1, now § 7-1.2-1324

(effective July 1, 2005).  For these reasons, those set forth in Wolverine's Local Rule 56.1

Concise Statement of Material and Affidavit of Matthew J. Walko, and those set forth in this

memorandum, XYZ Tape's motion for summary judgment should be denied.

II.   **Background**

Wolverine and its subrogated insurer Great American Alliance Insurance Co., Inc. (collectively "Wolverine") commenced this action on October 19, 2004 against XYZ Tape Corp. ("XYZ Tape"), William B. Wilbur, and Travelers Property Casualty Company of America seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as well as seeking damages and equitable relief.  In Count I, Wolverine seeks a declaratory judgment as to whether XYZ Tape owes a duty to indemnify and to hold it harmless in accordance with indemnity agreements between Wolverine and XYZ Tape, formerly known as Patco Corporation.  Count III asserts breach of contract against XYZ Tape for not honoring those indemnity agreements.[1]  XYZ Tape in its motion for summary judgment admits that the terms of the indemnity agreements are as alleged by Wolverine, but contends that the indemnity claims are barred because XYZ Tape voluntarily dissolved as a Rhode Island business corporation effective October 22, 2002.  XYZ Tape does not, and cannot, however, dispute that Wolverine commenced this action on October 19, 2004, less than two years after the October 22, 2002 dissolution.  See Fed. R. Civ. P. 3 ("A civil action is commence by filing a complaint with the court."); Docket No. 1 and Docket Nos. 2 to 7 Rule 4(l) Affidavits of Service (in hand and certified mail service on registered agent as well as president and director of XYZ Tape).

III.   **Wolverine Timely Commenced Its Action Within The Two-Year, Post-Dissolution Corporate Survival Period Permitted By Rhode Island Law**

"'[A]t common law the legal dissolution of a corporation marked the death of its corporate existence and, in the absence of statutory provisions to the contrary, terminated that

---

[1] Count II seeks a declaratory judgment that Travelers Property Casualty Company of America / The Travelers Indemnity Company of Illinois ("Travelers") engaged in unfair and deceptive business practices prohibited by Massachusetts General Laws chapter 93A with respect to its handling of Wolverine's indemnity claim for which XYZ Tape has "insured contract" coverage

existence for all purposes whatsoever.'" Theta Properties v. Ronci Realty Co., 814 A.2d 907,

912 (R.I. 2003) (quoting Halliwell Assocs. v. C.E. Maguire Servs., 586 A.2d 530, 532 (R.I.

1991)).[2] "Statutes have modified this common-law rule by providing for a post-dissolution

period in which a corporation remains extant beyond its dissolution date for the limited purposes

of winding up the business and of defending lawsuits or filing any claims related to the

business." Id.  The ability of XYZ Tape, a Rhode Island business corporation, to be sued despite

dissolution is "determined by the law under which it was organized."  Fed. R. Civ. P. 17(b);

University of Alaska v. Thomas Architectural Prods., Inc., 907 P.2d 448, 449-50 (Alaska 1995)

(applying state law analogue of Rule 17(b)).  Significantly, the Rhode Island General Assembly

had in force a corporate survival statute for the "Survival of remedy after dissolution" at the time

Wolverine commenced this action:

> The dissolution of a corporation either:
>
> (1) by the issuance of a certificate of dissolution by the secretary of state; or
>
> (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this chapter; or
>
> (3) by expiration of its period of duration,

---

and the litigation that it improperly forced with respect to it.  XYZ Tape's motion for summary judgment does not address Count II of the Complaint; thus Count II is not discussed here.
[2] The Supreme Court of Rhode Island in DiPretre v. Vallone, 48 A.2d 250, 252 (R.I. 1946) recognized that this English "common-law rule, however, from early times has never, to our knowledge, been accepted an applied by the courts of this country, especially in connection with private business corporations having a capital stock" (citation omitted).  Instead, courts of this country, apart from statute, developed a general equitable principle known as the "trust fund" doctrine in which the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of the creditors and stockholders.  Id.  See also Friendly Home, Inc. v. Shareholders and Creditors of Royal Homestead Land Co., 477 A.2d 934, 938 (R.I. 1984) (applying equitable trust fund doctrine as matter of Rhode Island common law); Philip Marcus, Note, Suability of Dissolved Corporations—A Study In Interstate and Federal-State Relationships, 58 Harv. L. Rev. 675, 678-679 (1945) (original common law rule applied when business corporations were unknown and given the prevalence of the trust fund doctrine it "is doubtful whether the early English practice as to distribution of assets of dissolved corporations was ever adopted in this United States").

shall not take away or impair any remedy available to or against the corporation,
its directors, officers, or shareholders, for any right or claim existing, or any
liability incurred, prior to the dissolution if action or other proceeding on the
right, claim, or liability is commenced within two (2) years after the date of the
dissolution.  Any action or proceeding by or against the corporation may be
prosecuted or defended by the corporation in its corporate name.  The
shareholders, directors, and officers have power to take any corporate or other
action that is appropriate to protect the remedy, right or claim.  If the corporation
was dissolved by the expiration of its period of duration, the corporation may
amend its articles of incorporation any time during the period of two (2) years so
as to extend its period of duration.

R.I. Gen. Laws § 7-1.1-98 (repealed and re-enacted).[3]

It has been held that statutes extending the vitality of a dissolved corporation for purposes

of suit are remedial in nature and should be given a liberal construction.  See Chadwick v. Air

Reduction Co., 239 F. Supp. 247, 251 (N.D. Ohio 1965) (citing in part 16A Fletcher Cyclopedia

Corporations § 8143); Philip Marcus, Note, Suability of Dissolved Corporations—A Study in

Interstate and Federal-State Relationships, 58 Harv. L. Rev. 675, 686 & n.49 (1945) (citing

cases from three Federal Circuits, the District of Columbia and Delaware, Maryland, New

Jersey, New York and Washington); see also 16A William Meade Fletcher et al., Fletcher

Cyclopedia of the Law of Private Corporations § 8158 at 319 (perm ed., rev. vol. 2003) ("It

has been said that statutes for winding up the affairs of corporations embody equitable

doctrine, and should be liberally construed." (footnotes omitted)).

---

[3] Although R.I. Gen. Laws § 7-1.1-98 has been repealed as of July 1, 2005, see 2004 R.I. Pub.
Laws 216, § 1 ("Chapter 7-1.1 of the General Laws entitled 'Business Corporations' is hereby
repealed in its entirety."), § 3 ("This act shall take effect on July 1, 2005."), "[t]he repeal . . .
does not impair, diminish or affect any right, privilege or immunity accrued or established, any
suit pending, any right of action conferred, or any duty, restriction, liability or penalty imposed
or required, under the provisions of the act, prior to the repeal."  R.I. Gen. Laws § 7.1.2-103,
inserted by 2004 R.I. Pub. Laws 216, § 2.  In addition, the new "Rhode Island Business
Corporation Act," R.I. Gen. Laws §1-1.2-101 et seq., reenacted former R.I. Gen. Laws § 7-1.1-
98 in R.I. Gen. Laws § 7-1.2-1324, which has the same text with slight clerical changes.

XYZ Tape invites the Court to ignore that Wolverine "commenced" this action within the two-year corporate survival period. Essentially, it seeks to treat the passing of that two-year anniversary as the date by which all claims have to be liquidated in order to be recoverable, thus rendering the fact that suit was commenced prior to the expiration of the two-year survival period irrelevant. Not only does such an interpretation contravene a liberal interpretation of corporate survival statutes to which Rhode Island Law is entitled, but it ignores prior established Rhode Island law that § 7-1.1-98 was intended to continue.

The language of Rhode Island's current corporate survival statute was enacted as part of 1969 R.I. Pub. Laws 141, § 1. See R.I. Gen. Laws Ann. § 7-1.1-98 (Lexis 1999). In 1969, Rhode Island adopted the American Bar Association-American Law Institute's Model Business Corporation Act. See 2 American Bar Foundation, Model Business Corporation Act Annotated § 105, ¶ 3.01 (2d ed. Supp. 1973). Section 105 of the 1969 Model Business Corporation Act had the same language as § 98 of the 1953 version of the Model Business Corporation Act, which explains the Rhode Island statute's section 98 numbering reference. Compare 2 American Bar Foundation, Model Business Corporation Act Annotated at p. v, preface, & § 98 (1960) (copy attached) with 2 American Bar Foundation, Model Business Corporation Act Annotated at p. xiii, preface, & § 105 (2d ed. 1971) (identical section language for "survival of remedy after dissolution") (copy attached).

The choice of the Model Business Corporation Act to focus on when an action or other proceeding is "commenced" was intentionally made to distinguish its approach from the approach reflected in certain Nineteenth Century statutes, such as that which at one time existed in Massachusetts, that abated actions by or against a corporation at the moment that the survival period expired. See Note, Suits By And Against Dissolved Corporations, 48 Iowa L. Rev. 1006, 1010-1011 & n.35 (1963) (citing in part Thornton v. Marginal Freight Ry. Co., 123 Mass. 32

(1877)).[4]  Unlike this antiquated approach, "[t]he Model Business Corporation Act requires only

that the action be *commenced* during the time limit.  It would appear that if the action is started

within the period, it would continue until it was concluded, regardless of the expiration of the

time limit.  See ABA-ALI Model Bus. Corp. Act § 98 (1953)."  Note, Suits By And Against

Dissolved Corporations, supra, at 1011 n. 36 (emphasis in original).  Cf. American Standard

Watch Co. v. Commissioner, 229 F.2d 672, 674-75 (2d Cir. 1956) (although Tax Court suit not

begun until after Rhode Island's survival period, written demand for refund filed with

Commissioner prior to end of survival period was part of same "proceeding," which has a

meaning broader than "action," and thus was timely).

Rhode Island's current emphasis upon timely commencement of the action is entirely

consistent with Rhode Island's corporate survival statute in effect prior to its adoption of the

Model Business Corporation Act in 1969.  Rhode Island law had provided:

> Every corporation whose corporate existence expires by any limitation or is
> terminated by dissolution or otherwise shall nevertheless be continued as a body
> corporate for three (3) years after the date of such expiration or termination for the
> purpose of prosecuting and defending actions, suits or proceedings by or against
> it, and of enabling it to settle and close its affairs, to dispose of its property and to
> distribute its assets, but not for the purpose of continuing the business for which it
> was established; provided, however, that no action, suit or proceeding begun by or
> against any such corporation before the expiration of said three (3) years shall
> abate because of the termination of said period.

---

[4] In Thornton v. Marginal Freight Ry. Co., 123 Mass. at 32, 34, 35, since the term of the
defendant corporation's survival expired on May 6, 1875, three years after the May 6, 1872
revocation of defendant's corporate charter, a judgment recovered on the corporation's debt in an
action at law in Superior Court in July 1875, two months after the three-year period expired, was
void "as if it had been rendered against a dead person" even though evidently the action at law
was commenced within three-year period because no bill in equity had been commenced within
those three years seeking equitable appointment of receivers.  See also Bower v. Dorchester Ice
Co., 255 Mass. 159, 159-60 (1926) (though action commenced in 1917, three-year post-
dissolution survival period ended in 1919 so auditor's report rendered after that date was
ineffectual as 1920 statute permitting continuation of dissolved corporation to 60 days after final
judgment was prospective only in operation).

R.I. Gen. Laws Ann. § 7-5-26 (Bobbs-Merrill Co., Inc. 1956) (listing origin of statute beginning in 1920 with 1920 R.I. Pub. Laws 1925, § 63 (copy attached); R.I. Gen. Laws ch. 248, § 63 (1923); R.I. Gen. Laws ch. 116, § 63 (1938)), repealed by 1969 R.I. Pub. Law 141, § 2.  This predecessor statute departed from the Nineteenth Century approach as it made explicit that so long as the action, suit or proceeding was begun during the corporate survival period it would not abate on the three-year anniversary date of dissolution.  Had Rhode Island sought to overturn this aspect of its established law which had ameliorated the harshness of the guillotine-like Nineteenth Century approach, it could have repudiated or amended the language of the Model Act that focused on the time an action is "commenced."

Although the Model Business Corporation Act did not provide for a general post-dissolution wind up period similar to that which had traditionally been allowed under Rhode Island law, see R.I. Gen. Laws Ann. § 7-5-26 (Bobbs-Merrill Co., Inc. 1956) (repealed),[5] the Legislature quickly recognized its oversight and through 1970 R.I. Pub. Law 136, § 13, added R.I. Gen. Laws § 7-1.1-98.1, allowing for the continuation of the dissolved corporation's existence for "two years after the date of such dissolution or termination for the purpose of enabling it to settle and close its affairs, to dispose of and convey its property, to discharge its liabilities and to distribute its assets, but not for the purpose of continuing the business for which it was organized" (emphasis added to language also found in R.I. Gen. Laws Ann. § 7-5-26 (Bobbs-Merrill Co., Inc. 1956)).   This post -dissolution wind-up period was extended to five years from the prior two years by an amendment to R.I. Gen. Laws § 7-1.1-98.1 that was effective upon passage, that is, July 22, 2000; see 2000 R.I. Pub. Law 503, § 1, § 2; Theta

---

[5] Cf. 2 American Bar Foundation, Model Business Corporation Act Annotated § 93 & ¶ 2 cmt. at 525 (2d ed. 1971) (explaining how the Model Act's "section 93 requires the articles to be filed with the secretary of state and the issuance by him of a certificate of dissolution . . . [such that] the corporate existence ceases except as provided in section 105").

Properties, 814 A.2d at 914, 917, and thus would apply to this case.  Taken together, § 7-1.1-98 and § 7-1.1-98.1 continued the established Rhode Island doctrine first reflected by 1920 R.I. Pub. Law 1925, § 36[6] that "a corporation remains extant beyond its dissolution date for the limited purposes of winding up the business and of defending lawsuits or filing any claims related to the business." Theta Properties, 814 A.2d at 912 (emphasis added).  See also Note, Suits By And Against Dissolved Corporations, supra, at 1017 ("The Model Act provides for a two-year period after dissolution in which to extend the corporate existence.") (citing ABA-ALI Model Bus. Corp. Act § 98 (1953)). Cf. Great Am. Ins. Co. v. Byrd & Watkins Constr., Inc., 630 F.2d 460, 462 (6th Cir. 1980) (evident Tennessee version of Model Business Corporation Act § 105 "merely extends temporarily the juristic life of a dissolved corporation[; i]t does not altogether bar enforcement of claims thereafter simply because two years have passed since dissolution").

That Rhode Island law allows an action or proceeding against a dissolved corporation to proceed to conclusion so long as it is commenced within two years of dissolution is supported by the interpretation of § 7-1.1-98 recognized in Theta Properties.  The Supreme Court of Rhode Island held that "any claim asserted against a dissolved corporation must be brought within the statutory post-dissolution period for doing so; namely, within two years of the dissolution." Theta Properties, 814 A.2d at 912 (interpreting R.I. Gen. Laws § 7-1.1-98 and citing cases).  Once brought, however, the statutory precondition to suit is satisfied, id. at 913 (characterizing the statute as a condition precedent to suit), and the passage of the two-year anniversary date abates nothing.  The Rhode Island Supreme Court specifically acknowledged that a suit once commenced during the post-dissolution survival period could

---

[6] Rhode Island statutes such as these on the same subject matter are in *pari materia*, and are construed "in a manner that attempts to harmonize them and that is consistent with their general objective scope." State v. Dearmas, 841 A.2d 659, 666-67 (R.I. 2004) (citing cases).

take much more than two years to be resolved: "Indeed, if a lawsuit is filed within the two-year period for doing so, it may take several additional years just for the dissolved corporation to 'wind up' the lawsuit." Id. at 914 (interpreting R.I. Gen. Laws § 7-1.1-98.1).[7] Wolverine has satisfied the statutory precondition of Rhode Island law as interpreted by Theta Properties by commencing its action within the two-year, post-dissolution period.

## IV.    Dissolution Does Not Impair A Remedy For Any Right Existing or Any Claim Existing or Any Liability Incurred Prior To Dissolution

Importantly, § 7-1.1-98 not only applies to "any . . . liability incurred prior to dissolution," but also to "any right . . . existing" as well as "any . . . claim existing" prior to dissolution.  The separate treatment of these three concepts, namely, "right, claim or liability," cannot be overlooked and cannot be collapsed into a single undifferentiated legal construct as suggested by XYZ Tape.  The existence of a right or claim can occur even if no liability has been incurred upon it.  XYZ Tape's argument that Wolverine tries "to assert a claim that did not exist prior to dissolution" cannot be answered by analyzing whether a liability was "incurred" prior to dissolution.  Thus, at bottom XYZ Tape asks the wrong question.  As explained in In re Knobel, 54 B.R. 458, 460 (Bankr. D. Colo. 1985) interpreting almost identical language under Nebraska law, XYZ Tape "confuses 'rights and claims' which,

---

[7] Rhode Island Gen. Laws § 7-1.1-98.1 (repealed July 1, 2005 and reenacted as R.I. Gen. Laws § 7-1.2-1325) provides in relevant part: "Any corporation dissolved in any manner under this chapter . . . nevertheless continues for five (5) years after the date of the dissolution, termination, or revocation for the purpose of enabling it to settle and close its affairs, to dispose of and convey its property, to discharge its liabilities, and to distribute its assets, but not for the purpose of continuing the business for which it was organized.  The shareholders, directors, and officers have power to take any corporate or other action that is appropriate to carry out the purposes of this section."  The claims involved here are well within this five year time period.  Compare also R.I. Gen. Laws § 7-1.1-87(b) with R.I. Gen. Laws § 7.1.2-1309(b) both stating that upon the issuance of the certificate of dissolution "the existence of the corporation ceases, except for the purpose of suits, other proceedings, and appropriate corporate action by shareholders, directors, and officers as provided in this chapter."

under the statute must come into existence prior to dissolution, with 'available remedies,' which bear no such similar restriction." "[T]he remedy need not pre-exist the dissolution as long as the 'right or claim' did." Id.  Moreover, not only does the evidence show that Wolverine had indemnity rights existing prior to dissolution, and indemnity claims existing prior to dissolution, but had incurred liabilities prior to dissolution for which XYZ Tape is liable.

### A.     Wolverine's Remedy for Rights Existing Prior To Dissolution

The existence of Wolverine's "right" to indemnity from XYZ Tape is measured by the date that XYZ Tape became bound on its indemnity promise, that is, 1991, and again in 1993.

The indemnity agreement provided:

> Buyer agrees to indemnify and hold Seller harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer or others, whatever the cause or alleged cause of the personal injury or property damage may be.

Ex. 1, Terms and Conditions ¶ 6.  This agreement established a contract right that was enforceable against XYZ Tape more than ten years prior to XYZ Tape's dissolution.  XYZ Tape's obligation on this contract right not only was insurable, see Ex. 8, Defendant Travelers Property Casualty Company of Americas Response to Plaintiff's First Set of Interrogatories, Response No. 8 (admitting "[a]t this time, Travelers has no information that the agreements are not 'insured contracts'"), but extended to "alleged cause[s]" of covered property damage just as much as actual causes.  See Ex. 1, Terms and Conditions ¶ 6.

In Oliver v. American Motors Corp., 616 F. Supp. 714 (E.D. Va. 1985) the plaintiff complained of an injury that occurred after dissolution but was related to a defective vehicle purchased from the corporate defendant prior to dissolution, id. at 716.  The court addressed a Virginia post-dissolution corporate survival statute having "any right or claims existing or liability incurred, prior to dissolution" language similar to that contained in R.I. Gen. Laws § 7-

1.1-98 and allowed suit to proceed. See Oliver, 616 F. Supp. at 716-17 (quoting in part Va. Code §13.1-101 (1978), which unlike Rhode Island law had no outer limit on when post-dissolution suites could be brought).  The Oliver court rejected the defendants' argument that the complaint asserted no right or claim existing or any liability incurred prior to dissolution because such an interpretation would allow corporations to abuse and manipulate voluntary dissolution and reinstatement procedures to cut off potential liability for their pre-dissolution tortious conduct; yet after the danger of suit had passed, invoke reinstatement provisions that would resurrect corporate existence from the date of dissolution.  616 F. Supp. at 716-17 (explaining five year reinstatement window of Va. Code § 13.1-92); compare R.I. Gen. Laws § 7-1.1-88.1 (addressing five year reinstatement window), repealed by 2004 R.I. Pub. Law 216, § 1 with R.I. Gen. Laws § 7-1.2-1312 (effective July 1, 2005) (extending reinstatement window to ten years).  Although the Oliver court did not parse the right existing, claim existing, and liability incurred language of the statute, its recognition that dissolution status can be manipulated warrants interpretation of corporate survival statutes that would not reward such conduct.

As the Sixth Circuit explained when interpreting Tennessee's evident version of Model Business Corporation Act § 105 with respect to a contractual guarantee, "[o]bligations retain their validity despite the dissolution of a corporation"—citing M. Lattin, The Law of Corporations 566 for the proposition that the "'better rule holds that executory contracts are not extinguished by dissolution.'" Great Am. Ins. Co. v. Byrd & Watkins Constr., Inc., 630 F.2d 460, 462 (6th Cir. 1980); id. at 461 (two year period survival statute "relates not to the ultimate recoverability of liability but only to the person or persons who may be held liable").

The independent significance of the "any right existing" language of § 7-1.1-98 as included by the drafters of the Model Business Corporation Act also is illustrated by the approach to corporate dissolution issues taken by Stentor Electric Manufacturing Co, Inc. v.

Klaxon Co., 115 F.2d 268, 270-71 (3d Cir. 1940), reversed on other grounds sub nom. Klaxon

Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487 (1941) (certiorari accepted only on

whether New York or Delaware prejudgment interest should apply to diversity case, 312 U.S.

674).  In that case the defendant sought to defeat plaintiff's breach of contract claim on the

ground that plaintiff had voluntarily dissolved after the contract was bound.  115 F.2d at 270.

The New York post-dissolution corporate survival statute allowed for "paying, satisfying and

discharging any existing debts or obligations . . . ."  Id. (emphasis added).  The Third Circuit in

rejecting the defendant's contention "that this provision limits the right to sue to claims which

have ripened into causes of action at the time of the dissolution" held that words of the statute

seemed clear.  Id.  The court explained:

> Existence is continued for "suing and being sued for the purpose of enforcement
> of such debts or obligations."  That an existing contract is an obligation seems too
> certain a proposition to require extensive argument or marshaling of authorities to
> prove it.  A contract is a promise or set of promises for the breach of which the
> law gives a remedy or the performance of which the law in some way recognizes
> as a duty.  Restatement, Contracts § 1.  That the defendant, by its contract, came
> under obligation to the plaintiff is plain.

115 F.2d at 270-71.[8]  As in the Stentor Electric case dealing with any existing obligations, here

the Rhode Island statute's allowance of remedies for any existing rights likewise covers the

contract rights of Wolverine sought to be enforced here.

**B.    Wolverine's Remedy for Claims Existing Prior To Dissolution**

The evidence also shows that Wolverine had a claim existing prior to dissolution.  The

property damage to the XYZ Tape factory occurred on January 29, 2000, Travelers paid claims

---

[8] See also 2 American Bar Foundation, Model Business Corporation Act Annotated § 105, ¶ 4.01
(2d ed. 1971) (citing, in apparent support of approach reflected by § 105, Stentor Electric, supra,
as well as Wewoka Petroleum Corp. v. Gilmore, 319 P.2d 285. 288-89, 291-92 (OK 1957)
(contract claim could be maintained against dissolved corporation, though the claim was
unliquidated at time of suit) and United Automatic Rifles Corp. v. Johnson, 41 F. Supp. 86 (D.

for that property damage by checks prior to dissolution, and by demand letters dated March 20, 2000, April 10, 2001, and January 7, 2002, notified Wolverine as XYZ Tape's authorized agent that claims were being made against Wolverine attributable to that property damage of $977,321.32. Exs. 2, 3, 6. Each of these events occurred well in advance of the dissolution. Considered separately or together, these undisputed facts show that a claim against the Seller/Wolverine was being made that entitled Wolverine both to be indemnified as well as to be "held harmless" even as to claims concerning an "alleged cause." Ex. 1.

XYZ Tape also ignores that the broad scope of the agreement entitles Wolverine to be free from harm attributable to claims in the form of investigation and defense costs even if a formal lawsuit never materializes. The breadth of the agreement covers both a promise to indemnify and hold harmless "from . . . all liability, loss, cost, damage or expense attributable to any claim against Seller . . ." as well as "against all liability, loss, cost, damage or expense attributable to any claim against Seller . . ." (emphasis added). The breadth of the agreement does not permit the narrow and strained reading suggested by XYZ Tape that would limit its scope to indemnity from and against lawsuits but not claims. Courts have "defined claim as the aggregate of operative facts that give rise to it." United States v. Anaconda Am. Brass Co., 210 F. Supp. 873, 875 (D. Conn. 1962) (citations and internal quotation marks omitted).[9]

In Chadwick v. Air Reduction Co, 239 F. Supp. 247, 251 (N.D. Ohio 1965), the court interpreted Ohio's post-dissolution corporate survival statute that was a substantial departure

---

Mass. 1941) (plaintiff could seek remedy on contract made prior to dissolution during corporate survival post-dissolution period)).

[9] Cf. FCC v. NextWave Pers. Communs., Inc., 537 U.S. 293, 302-03 (2003) (term "claim" is entitled to broadest possible definition, interpreting 11 U.S.C. § 101(5)(A)); 11 U.S.C. § 101(5)(A) ("claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

from § 98 of the Model Business Corporation Act, but which, like the Model Business
Corporation Act, included the phrase "any claim existing." The <u>Chadwick</u> court held "the phrase
'<u>any claim existing</u> or action or proceeding pending by or against the corporation' is broad
enough to cover all pre-dissolution torts, including those upon which suit has not yet been
brought." <u>Id.</u> at 251 (emphasis added). It explained: "The words 'action or proceeding' connote
pending litigation, whereas the word 'claim' would signify a cause of action not yet sued upon."
<u>Id.</u> Moreover, the <u>Chadwick</u> court held that "[t]he inclusion of 'any claim' imposes a broader
liability than merely for liabilities incurred as part of the winding up process . . . ." <u>Id.</u> Although
<u>Chadwick</u> allowed suit on a post-dissolution claim due to unique language in the Ohio statute, its
approach to statutory interpretation giving separate meaning to each relevant phrase applies
equally to Rhode Island's statute. The phrase "any . . . claim existing" in R.I. Gen. Laws § 7-
1.1-98 is broad enough to cover all pre-dissolution torts and causes of action not yet sued upon
and is not limited to "liabilities incurred" which is treated in a separate clause in the statute.[10]

Nor would the phrasing of the agreement permit an interpretation that would limit its
scope to liability, loss, cost, damage or expense "incurred" as the result of a lawsuit, when the
agreement extends to "all liability, loss, cost, damage or expense <u>attributable to any claim</u> against
[Wolverine]. . . ." Contrary to XYZ Tape's intimation that the indemnity agreement is
unenforceable until all expenses are liquidated, expenses "attributable to any claim" is a

---

[10] Rhode Island Gen. Law § 7-1.1-69(b)(5) (repealed) preserves "any claim existing . . . against
any of the corporations" that are merged as part of a merger. In <u>Brannon's of Shawnee, Inc. v.
Commissioner</u>, 71 T.C. 108, 1978 U.S. Tax Ct. LEXIS 34 (1978), the U.S. Tax Court
interpreting the "claim existing" language of Oklahoma's similar law to conclude that a potential
tax deficiency constitutes a "claim existing" which is entitled to a broad interpretation including
"meaning 'a right to claim or deamand; the right itself . . .'" and does not require a specific
demand before a merger to fall within the statutory language. <u>Id.</u> at 115-16

reference to the measure of the damages to which Wolverine is entitled, not a precondition to the existence of any right to claim indemnity.

The right to claim indemnity is triggered by the promise to "hold Seller harmless from and against . . . any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer or others, whatever the cause or alleged cause . . . may be." XYZ Tape's actual or constructive knowledge of these terms is established through William Wilbur's deposition testimony. Ex. 9. Travelers' claim was made against Wolverine for property damage several times prior to dissolution and most explicitly in January 2002. Therefore, there is a "claim existing" prior to dissolution that allows suit here. XYZ Tape directly or vicariously is held to have knowledge of the existence of this claim because it authorized Travelers to sue in its name when Travelers made the claim as shown by the subrogation receipt documents. Ex. 3.

Whether viewed as of February 1991 when the agreement was bound, or as of January 2002 by which time a cause of action to enforce that indemnity had accrued by virtue of Travelers making a written and specific claim against Wolverine for property damage arising out of the installation, maintenance or operation of the Equipment, Wolverine's rights to enforce the indemnity promise or its claims against XYZ Tape based on that promise were in existence well before the October 22, 2002 dissolution.

### C.    Wolverine's Remedy For Liabilities Incurred Prior To Dissolution

The evidence shows that Wolverine incurred $3,407.30 in expenses prior to the October 22, 2002 dissolution, that is, between February 1, 2002 and September 30, 2002. XYZ Tape's assertion to the contrary is not supported by the evidence. Consulting expert Fred Kern of CCA LLC was engaged on January 24, 2002, in response to the Travelers

demand against Wolverine for $977,321.32 and visited the Patco plant on September 27, 2002, incurring expenses prior to October 22, 2002. Ex. 7. That Wolverine continued to incur liability on the same contract rights beyond dissolution date does not render such uncollectible. If it did (which it does not) the rule would bar pre and post-judgment interest which runs contrary to the purpose of Rhode Island law to abrogate the English common law rule which absolved a corporation of any liability at the moment of dissolution. XYZ Tape's argument that no attorney fees were incurred prior to dissolution tries to turn the Rhode Island statute into something that it is not. The effect of Rhode Island law is to continue the existence of the corporation post dissolution for up to five years, R.I. Gen. Laws § 7-1.1-98.1, so it is immaterial that defense costs have been incurred post-dissolution so long as suit was made within the two-year deadline, which it was.

**V.      The *Carreiro v. Rhodes Bill & Co.* Case Does Not Bar Wolverine's Claims**

The one case cited by XYZ Tape, Carreiro v. Rhodes Bill & Co., Ltd., 68 F.3d 1443, 1450 (1st Cir. 1995), did not rewrite the language of R.I. Gen. Laws § 7-1.1-98, did not address the meaning of "any right . . . existing" or "any . . . claim existing" prior to dissolution contained in the statutory text, and did not concern facts remotely analogous to the case at bar. That decision did not analyze § 7-1.1-98.1 or have the benefit of Theta Properties, supra.[11] XYZ Tape overstates the holding of Carreiro and by attempting to apply a quote from the case out of the

---

[11] The First Circuit in Carrerio limited its analysis of how Rhode Island's corporate survival statute abrogated the harsh common law rule that a corporation was completely destroyed upon dissolution by looking to Halliwell Assocs., Inc. v. C.E. Maguire Servs., Inc., 586 A.2d 530, 533 (R.I. 1991). The Halliwell decision actually interpreted the Massachusetts corporate dissolution law then in existence, Mass. Gen. Laws. Ann. c. 156B, § 102, as amended through St. 1987, c. 206 (West 1992), see 586 A.2d at 532, but that law does not have the same "right or claim existing" language of R.I. Gen. Laws § 7-1.1-98.

context in which it was made would return the interpretation of post-dissolution, corporate

survival jurisprudence to a state that has not existed since the Nineteenth Century.

In Carreiro, a husband sued in Feburary 1991, among other parties, a Rhode Island

business corporation that had dissolved in 1982 but had sold a machine press in 1980 whose

alleged defects caused his wife's death in March 1988.  68 F.3d at 1445.  The Carreiro court held

that the dissolved corporation was "not amenable to a suit brought almost ten years after its

dissolution and eight years after the expiration of the two-year survival period [of § 7-1.1-98]."

Id. at 1450.  Unlike Carreiro, here Wolverine commenced its action before the two-year survival

period of § 7.1.1-98 expired and thus the Carreiro holding is of no assistance to XYZ Tape.

That decision also did not address the "any right or claim existing" language of Rhode Island

law because any "right . . . existing," any "claim existing," and any "liability incurred" for

the machine press injury in Carreiro all post-dated the dissolution, plus no suit was made on

any such rights, claims or liabilities until well after the two-year post-dissolution period.  The

opposite is true here.

A comparison of significant distinctions between Carreiro and here is telling:

| Carreiro v. Rhodes Gill & Co., Ltd. | Wolverine v XYZ Tape Corp. |
|---|---|
| March 7, 1988 death occurred six years after 1982 dissolution | January 29, 2000 explosion occurred two years and eight months before October 22, 2002 dissolution |
| February 1991 action commenced eight years after expiration of two-year survival period of § 7-1.1-98 | October 19, 2004 action commenced before expiration of two-year survival period of § 7-1.1-98 on October 22, 2004 |
| No claim ever made against Plaintiff | January 7, 2002 claim made against Wolverine demanding payment of $977, 321.32 occurred eight months before October 22, 2002 dissolution |
| Plaintiff had no contract with dissolved corporation, preexisting or otherwise | Wolverine's demand for indemnity based on contracts entered into more than eight years prior to dissolution was made before expiration of two-year survival period of § 7-1.1-98 |

| No expenses incurred until after March 7, 1988 death which was six years after 1982 dissolution | Wolverine incurred $3,407.30 in expenses between February 1, 2002 and September 30, 2002—prior to October 22, 2002 dissolution |
|---|---|
| No expenses incurred until after March 7, 1988 death which was six years after 1982 dissolution | Wolverine incurred $257,262.46 in attorney fee expenses between November 1, 2002 and October 15, 2004, before expiration of two-year survival period of § 7-1.1-98 |
| Two-year corporate existence windup period of former version of § 7-1.1-98.1 ran out four years prior to March 7, 1988 death | Five-year corporate existence windup period of § 7-1.1-98.1 and § 7-1.2-1325 does not run out until October 22, 2007 |

XYZ Tape, however, argues that Carreiro's statement that "actions on liabilities incurred after dissolution do not survive at all, not even for the two-year wind-up period," 68 F.3d at 1450, thereby dooms Wolverine's claims because Wolverine "cannot assert a claim for indemnification . . . which did not exist prior to that corporation's dissolution," XYZ Tape Mem. at 7. The categorical statement on which XYZ Tape relies is dicta because the plaintiff in Carreiro never claimed that liabilities had been incurred during the two-year survival period and the First Circuit's holding that suit was not brought until "eight years after the expiration of the two-year survival period," 68 F.3d at 1450, was fully sufficient to decide the case. The First Circuit based its statement on a misleading simplification of the statutory text as it wrote "the language at issue in section 7-1.1-98 . . . provid[es] a two-year survival period only for liabilities incurred 'prior to dissolution' . . . ," 68 F.3d at 1450 (emphasis added), when the actual statute provides a two-year survival period for "any right or claim existing" prior to dissolution as well. Without analyzing the meaning of this other statutory language one cannot "logically" conclude whether "liabilities incurred after dissolution" could survive if as those liabilities were based upon "any right or claim existing" prior to dissolution on which an action was commenced during the two-year survival period.

The Carreiro dicta applied out of context would mean that even for suits commenced prior to dissolution or during the two-year survival period a judgment (and thus a "liability incurred" after dissolution) "would not survive at all even for the two-year wind up period." Such an interpretation makes no sense and harkens back to those Nineteenth Century statutes that cut off an ability to recover on liability judgments incurred after the end of the survival period. Not only would such an approach ignore almost a century of established Rhode Island law, but it would have an equally harsh and irrational impact on any dissolved corporations that attempt to litigate contract or other rights against others after dissolution.

Rhode Island Gen. Laws § 7-1.1-98, like the New York statute in Stentor Electric, supra, applies equally to any remedy available "to or against" a dissolved corporation so precedent involving either scenario can be helpful in understanding its proper interpretation. Any fair construction of the statute thus must consider its impact on the rights of a dissolved corporation during the two-year corporate survival period just as it must consider the impact on rights against dissolved corporations during that time. When viewed in this manner, one appreciates that XYZ Tape's suggested interpretation or § 7-1.1-98 would lead to absurd results.

For example, should a dissolved corporation be sued during the two-year survival period for a liability incurred prior to dissolution, under XYZ Tape's view of Rhode Island law it could not then implead its surety or indemnitor who prior to dissolution had agreed to indemnify it because *a fortiori* liability on the indemnity promise would have been triggered after dissolution following litigation on the complaint. Likewise, a contribution action[12] sought to be enforced by

---

[12] See R.I. Gen. Laws § 10-6-3 ("right of contribution exists among joint tortfeasors . . ."); § 10-6-2 ("joint tortfeasors" are persons "jointly or severally liable in tort for the same injury . . ."); § 10-6-4 (joint tortfeasor not entitled to contribution "until he or she has by payment discharged the common liability or has paid more than his or her pro rata share of the final money judgment"; one year after first payment to sue for contribution).

a dissolved corporation that was sued within the two-year survival period would "not survive" under XYZ Tape's view because as a practical matter it would take too long to litigate the liability "incurred" by judgment.  This is not Rhode Island law.

Even if, for the sake of argument, Wolverine had no other hook on which to invoke the remedies allowed to be sought by § 7-1.1-98 other than the $3,407.30 in expenses incurred prior to dissolution as a result of CCA, LLC's investigation of the demand made against it for $977,321.32 that would be enough to preserve this suit.  In Hughes v. Andy Warhol Enterprises, Inc., No. 92 Civ. 1825 (KC), 1993 U.S. Dist LEXIS 17961 at *3-*4 (S.D.N.Y. Dec. 17, 1993), the District Court in interpreting New York Business Corporation Law having language similar to that in Rhode Island's statute recognized that regardless of any textual ambiguity concerning whether "'before such dissolution' modifies 'any remedy available to or against' or 'any right or claim existing or liability incurred, . . .'" courts have held that " '[c]laims which ripen after dissolution, based on contracts entered into prior to dissolution[,] are enforceable.'" Id. (quoting Bowditch v. 57 Laight St. Corp., 443 N.Y.S.2d 785, 787-88 (N.Y. Sup. Ct. 1981)).  Even viewing the $977,321.32 claim as "unripe" in that sense still would not warrant a dismissal of this action.

## VI.    Conclusion

For the reasons set forth above and in Plaintiffs' Local Rule 56.1 Concise Statement of Material Facts, the Affidavit of Matthew J. Walko, Wolverine requests that XYZ Tape's motion for summary judgment be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Wolverine believing that oral argument would assist the

Court in the resolution of XYZ Tape's motion, requests the opportunity to be heard.

Respectfully submitted,

Wolverine Proctor & Schwartz, Inc.
Great American Alliance Insurance Co., Inc.

by its attorneys,

*/s/ Matthew J. Walko*
_____
Matthew J. Walko (BBO No. 562172)

SMITH & DUGGAN LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 228-4400

Dated: August 11, 2005