UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Wolverine Proctor & Schwartz, Inc., and | : | |
| Great American Alliance Insurance Co., Inc. | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 04-12189-RWZ |
| XYZ Tape Corp., formerly known as Patco Corp., | : | |
| William B. Wilbur, and | : | |
| Travelers Property Casualty Company of America | : | |
| Defendants. | : | |
| | : | |

**Plaintiffs' Local Rule 56.1 Concise Statement of Material Facts In Opposition To
XYZ Tape Corp.'s Motion for Summary Judgment**

Plaintiffs Wolverine Proctor & Schwartz, Inc. and Great American Alliance Insurance

Co., Inc. (collectively "Wolverine") pursuant to Local Rule 56.1 submit their concise statement

of material facts and the attached Affidavit of Matthew J. Walko ("Walko Affidavit") in

opposition to Defendant XYZ Tape Corp.'s motion for summary judgment.  References herein to

exhibits of the Walko Affidavit are designated "Exhibit #."

**I.      Wolverine's Concise Statement of Material Facts of Record**

A.      In January 1991, Wolverine sold XYZ Tape Corp. (formerly known as Patco

Corporation) a thermal cxidizer and associated hardware equipment.  As part of the Thermal

Oxidizer sales agreement, XYZ Tape agreed to indemnify and hold Wolverine harmless from

and against all liability, loss, cost, damage and expense attributable to any claim against

Wolverine for personal injury and property damage arising out of the installation, maintenance,

and operation of the Thermal Oxidizer by XYZ Tape or others whatever the cause or alleged

cause of the personal injury and property damage may be. The same indemnity terms were part

of the heat recovery unit sale in 1993.  William B. Wilbur, President of XYZ Tape, did not object

to those terms.  See Exhibit 1, Deposition of Eric K. Long, Ex. 191, Ex. 192, and pages 18-26, 94; Exhibit 9, Deposition of William B. Wilbur, pages 146-149.

B.     On January 29, 2000, an incident occurred at XYZ Tape's plant causing property damage (the Incident"). Exhibit 2.

C.     William B. Wilbur, President of XYZ Tape then known as Patco Corporation executed Subrogation Receipts in 2000 and 2001 by which he was informed that Travelers "will use this receipt to help us recover the money we paid you, including your deductible, from the party responsible for your loss."  As president of XYZ Tape he assigned and transferred the rights, claims, demands, and interest XYZ Tape may have had against any party for damages suffered concerning the Incident and authorized Travelers, XYZ Tape's insurer, to sue, compromise and settle in XYZ Tape's name all claims arising from the Incident. Exhibit 3.

D.     On March 20, 2000, Travelers asserted a claim against Wolverine for property damage allegedly arising out of the operation of the Thermal Oxidizer by XYZ Tape that caused the Incident. Exhibit 4.

E.     On April 10, 2001, Travelers reasserted a claim against Wolverine for property damage arising out of the operation of the Thermal Oxidizer by XYZ Tape that caused the Incident. Exhibit 5.

F.     On January 7, 2002, Travelers asserted a claim against Wolverine to Great American, Wolverine's insurer, for property damage arising out of the installation, maintenance or operation of the Thermal Oxidizer by XYZ Tape concerning the Incident.  Travelers' claim was for $977,321.32. Exhibit 6.

G.      On or about January 24, 2002, CCA, LLC ("CCA") was hired on Wolverine's behalf to investigate Travelers' claim for property damage arising out of the installation, maintenance or

operation of the Thermal Oxidizer by XYZ Tape concerning the Incident. Exhibit 7; Walko Affidavit ¶ 10.

H.      Between February 1, 2002 and September 30, 2002, Wolverine incurred $3,407.30 in expenses attributable to a claim made against Wolverine for property damage arising out of the installation, maintenance or operation of the Thermal Oxidizer by XYZ Tape concerning the Incident. Exhibit 7.

I.      Mr. Fred Kern a consulting engineering expert for CCA inspected the Patco facility on September 27, 2002, accompanied by counsel for Travelers, to investigate the claim made against Wolverine for property damage arising out of the installation, maintenance or operation of the Thermal Oxidizer. Exhibit 7.

J.      Wolverine incurred loss, cost, damage or expense attributable to a claim made against Wolverine for property damage arising out of the installation, maintenance or operation of the Thermal Oxidizer by XYZ Tape before the dissolution of XYZ Tape on October 22, 2002.

K.      Travelers informed XYZ Tape that it would pursue a subrogation action against Wolverine.  Ex. 8, Travelers Interrogatory Answer No. 3; Ex. 3.

L.      Travelers also knew as of the date its counsel received Wolverine's Motion for Summary Judgment and its Local Rule 56.1 Statement and Memorandum of Law In Support of its Motion for Summary Judgment dated January 22, 2004 that Wolverine was making a claim for indemnity and XYZ Tape is bound by that knowledge.  Ex. 8, Travelers Interrogatory Answer No. 13

M.      Wolverine filed this civil action against XYZ Tape on October 19, 2004 with respect to a right and claim existing and a liability incurred prior to XYZ Tape's dissolution. See Docket No. 1, Complaint and Jury Demand.

## II.    Wolverine's Response to XYZ Tape Corp.'s Local Rule 56.1 Statement

Wolverine pursuant to Local Rule 56.1 responds according to the numbered paragraphs of the "Statement of Facts of Defendants XYZ Tape Corp. and William B. Wilbur As To Which There Is No Genuine Issue To Be Tried" ("XYZ Tape's Local Rule 56.1 Statement")[1] as follows:

1.    Wolverine admits that the referenced exhibits have been attached to XYZ Tape's Memorandum as stated.

2.    Wolverine admits XYZ Tape Corp. (formerly known as Patco Corp.) was a business corporation organized under the laws of Rhode Island whose only place of business was in Rhode Island.

3.    Wolverine admits in or around 1983, William B. Wilbur ("Wilbur") became the president of Patco Corp. and remained president when Patco Corp. changed its name to XYZ Tape Corp. and remained in that position through October 2, 2002, when XYZ Tape was dissolved.

4.    Wolverine denies these alleged facts are material to XYZ Tape's motion for summary judgment and whether true or not they are irrelevant to William Wilbur's motion to dismiss in light of Wolverine's agreement to dismiss William Wilbur from this action.

5.    Wolverine admits that Wolverine Proctor & Schwartz, Inc. is a corporation with a principal place of business in Massachusetts and Great American Alliance Insurance Co. is Wolverine Proctor & Schwartz, Inc.'s general liability insurance carrier for the occurrence in issue.

---

[1] Numbered paragraphs reciting a "Statement of Facts" also are included in the Memorandum of Points and Authorities In Support Of XYZ Tape Corp.'s And William B. Wilbur's Motion For Summary Judgment ("XYZ Tape's Memorandum"), but the order and some statements or substance are different than those presented in its Local Rule 56.1 Statement so for purposes of clarity these responses correspond to the statements contained in XYZ Tape's Local Rule 56.1 Statement.

6.      Wolverine admits in 1991 it was a corporation with a principle place of business in Massachusetts and sold XYZ Tape (formerly known as Patco Corp.), a Rhode Island corporation, machinery commonly referred to as a "Thermal Oxidizer."  Wolverine also admits that in 1993 it sold to XYZ Tape machinery referred to a "Heat Exchange Unit." Wolverine admits both the Thermal Oxidizer and Heat Exchange Unit were installed at XYZ Tape's manufacturing plant located in Bristol, Rhode Island.  Ex. 1, Long Dep. page 94.

7.      Wolverine admits that written proposals Wolverine submitted to XYZ Tape relating to the above referenced sales incorporated written "Terms and Conditions," which included indemnification language, that became part of binding contracts between XYZ Tape and Wolverine.

8.      Wolverine admits the relevant portions of the Terms and Conditions are as follows:
          "Buyer agrees to indemnify and hold Seller harmless from and against all
          liability, loss, cost, damage or expense attributable to any claim against Seller for
          personal injury or property damage arising out of the installation, maintenance or
          operation of the Equipment by Buyer or others, whatever the cause or alleged
          cause of the personal injury or property damage may be."

9.      Wolverine admits that on January 29, 2002, an explosion occurred at XYZ Tape's Bristol, Rhode Island manufacturing plant. Although not alleged in this statement but set forth in the Statement of Facts in XYZ Tape's Memorandum, Wolverine states that XYZ Tape's insurer at the time of the explosion, The Travelers Indemnity Company of Illinois and/or Travelers Property Casualty Company (hereinafter "Travelers"), later claimed to have determined acts of Wolverine to be the cause of the explosion.  See Exs. 4, 5, & 6.

10.     Wolverine admits that on October 22, 2002, XYZ Tape was formally dissolved, but denies that the dissolution was made in accordance with Title 7, Chapter 7-1.1 of the Rhode Island General Laws as XYZ Tape is charged with knowledge of Wolverine's claim.  Ex. 3, Ex. 7.

11.     Wolverine admits that on January 24, 2003, The Travelers Indemnity Company of Illinois filed with this Court a subrogation action against Wolverine entitled The Travelers Indemnity Company of Illinois a/s/o Patco Corporation v. Wolverine (Massachusetts) Corporation, Docket No. 03-10164RWZ (hereinafter the "Subrogation Action").

12.     Controverted.  See Ex. 7.  Wolverine admits that between the period of Feburary 1, 2002, through December 31, 2004, it incurred attorney fee expense, consultant expense and other expense damages in the amount of $305,968.75 (without interest) as a result of the claim made by Travelers on March 20, 2000, April 10, 2001, and January 7, 2002.  Exs. 4, 5, 6 & 7.

13.     Wolverine admits that William B. Wilbur states in his interrogatory answers that he did not receive XYZ Tape assets on October 22, 2002.

14.     Wolverine admits in light of Mr. Wilbur's interrogatory answers that it has not discovered evidence that XYZ Tape distributed assets on October 22, 2002.

15.     Controverted.  Exs. 2, 3, 4, 5, 6, 7.

16.     Controverted.  Wolverine admits that it incurred legal costs and legal expenses on November 1, 2002, and through the present time in addressing and/or defending the claims made by Travelers on March 20, 2000, April 10, 2001, and January 7, 2002, and addressing and/or defending those claims as pursued in the Subrogation Action, but states that its expenses in addressing and/or defending the claims made by Travelers commenced on February 1, 2002. Ex. 7.

17.    Controverted.  Exs. 4, 5, 6, & 7.

18.    Controverted.  Exs. 2, 3, 4, 5, 6, 7, & 8.

19.    Controverted. Exs. 2, 3, 4, 5, 6, 7, & 8.

20.    Controverted. Exs. 2, 3, 4, 5, 6, 7, & 8.

21.    Wolverine denies these alleged facts are material to XYZ Tape's motion for summary judgment and whether true or not they are irrelevant to William Wilbur's motion to dismiss in light of Wolverine's agreement to dismiss William Wilbur from this action.

22.    Wolverine denies these alleged facts are material to XYZ Tape's motion for summary judgment and whether true or not they are irrelevant to William Wilbur's motion to dismiss in light of Wolverine's agreement to dismiss William Wilbur from this action.

23.    Wolverine denies these alleged facts are material to XYZ Tape's motion for summary judgment and whether true or not they are irrelevant to William Wilbur's motion to dismiss in light of Wolverine's agreement to dismiss William Wilbur from this action.

24.    Wolverine denies these alleged facts are material to XYZ Tape's motion for summary judgment and whether true or not they are irrelevant to William Wilbur's motion to dismiss in light of Wolverine's agreement to dismiss William Wilbur from this action.

Respectfully submitted,
Wolverine Proctor & Schwartz, Inc.
Great American Alliance Insurance Co., Inc.
by its attorneys,

*/s/ Matthew J. Walko*

_____
Matthew J. Walko (BBO No. 562172)
SMITH & DUGGAN LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 228-4400

Dated: August 11, 2005