# ROBINSON & COLE LLP

BOSTON • HARTFORD • STAMFORD • GREENWICH • NEW YORK

LAW OFFICES
www.rc.com

One Boston Place
Boston, MA 02108-4404
617-557-5900
Fax 617-557-5999

Danielle M. Andrews
617-557-5934
dandrews@bost.rc.com

January 7, 2002

*Via certified mail, return receipt requested*

William J. Curtin, Senior General Adjustor
Great American Insurance Companies
P.O. Box 411
Holbrook, MA 02343

Re:  **PATCO Corporation v. Wolverine Corporation**
     **Great American Claim No. 531-546316**
     **Date of Loss: January 29, 2000**

Dear Mr. Curtin:

   We have been retained by Travelers Property Casualty ("Travelers") in connection with the above-referenced loss occurring at 51 Ballou Boulevard, Bristol, Rhode Island on January 29, 2000. The results of an investigation performed by Travelers indicate that your insured, the Wolverine (MA) Corporation ("Wolverine"), is liable for the loss.

I.   Facts

   In 1991, Wolverine installed a thermal oxidizer at PATCO Corporation ("PATCO"). PATCO manufacturers shrink-wrap for the boating industry. On January 29, 2000 there was an explosion of the thermal oxidizer at PATCO's place of business.

   At approximately 2:50 a.m. on January 29, 2000, the heat generated by the thermal oxidizer at issue in the case began to rise towards the level of 1600°. When the heat reached 1600°, the thermal oxidizer automatically shut down. The PATCO operator of the machine went outside to reset and restart the thermal oxidizer. However, shortly after the machine was restarted, the heat level again reached 1600°. At this point, the machine again automatically shut down. At this time, the operator, in addition to shutting down the thermal oxidizer, also shut down the ventilation system but did not shut down the conveyer belt. This led to an accumulation of fumes that exploded at approximately 3:05 a.m. This explosion would have been prevented if Wolverine installed proper interlocks between the thermal oxidizer, ventilation system and conveyor as required by the 1985 edition of NFPA 86. Interlocks would have automatically shut down the conveyor belt when the ventilation system was shut down.

BOST1-749849-1

TRV 000001

**ROBINSON & COLE** LLP

William J. Curtin, Senior General Adjustor
January 7, 2002
Page 2

II. **Liability**

Section 1.0 of the Wolverine Project Instruction Manual provides a caution in the "Description" section. This caution states in Section 1.4 that "the supply fan should not be stopped if the burner trips out." A copy of the pertinent sections of the Project Instruction Manual are attached hereto as Exhibit No. 1. Although the Project Instruction Manual indicates that the supply fan should not be stopped when the burner trips out, Section 1-2 of the 1985 edition of NFPA 86 states that "adequate safeguards shall be provided as appropriate for the location, equipment, and operation of such furnaces." This section further warns of the explosion and fire hazard associated with this type of operation. Section 4-4.1.1 of NFPA 86 requires that electrical interlocks and flow switches be provided to shut down the heating system and the conveyor if the ventilation system is shut down. A copy of the relevant NFPA 86 standards are attached hereto as Exhibit No. 2. The thermal oxidizer at issue did not have electrical interlocks or flow switches. The necessary interlocking of the heating system and ventilation system with the conveyor is reiterated in the Factory Mutual Property Loss Prevention Data Sheet 6-9, May 1990 "Industrial Ovens and Dryers." This Data Sheet references interlocks on pages 11 and 35. A copy of the Data Sheet is attached hereto as Exhibit No. 3.

Although Section 2.3 of the Wolverine Project Instruction Manual attempts to place the responsibility of NFPA Code compliance with the user (see Exhibit No. 1), the purchaser of a product has the expectation that the product is safe and the most current standards have been used in its construction and design. The end user of a product is also placed at a serious disadvantage in understanding what the potential hazards are and how to safeguard against them. This is especially analogous in the current situation because PATCO was not involved in the design, testing, manufacturing or installation of the equipment provided by Wolverine. Furthermore, Wolverine never included emergency procedures in the Wolverine section of the owner's manual provided to PATCO. Section 1-6.5(d) of the 1985 edition of NFPA 86 provides that the equipment manufacturer shall provide emergency procedures (see Exhibit No. 2). PATCO and its employees were therefore unaware of the proper procedures to follow in an emergency situation such as the situation at issue.

Included in the Wolverine Project Instruction Manual is an instruction manual from Control Instruments Corporation, the supplier of the lower explosive limit (LEL) monitor. A copy of the relevant section of this instruction manual is attached hereto as Exhibit No. 4. The instruction manual references NFPA 86 as it pertains to the sensor. The instruction manual provides a clear indication that Wolverine should have been aware of the standards set forth in NFPA 86. In addition, the instruction manual provides definitions of what cautions, warnings and notes indicate. No such references are found in the owner's manual. The warnings and cautions set forth in the instruction manual are clearly more comprehensive and beneficial than

**ROBINSON & COLE** LLP

William J. Curtin, Senior General Adjustor
January 7, 2002
Page 3

those included in the owner's manual, yet Wolverine chose not to relay these cautions and warnings to the owners of the product.

Wolverine had two additional opportunities to upgrade the safety systems of the thermal oxidizer in March and September of 1994 when it conducted the installation of a heat recovery system under project No. 9329 in two phases. No recommendations were made and interlocks were not installed.

In conclusion, Traveler's investigation has revealed that the explosion was caused by a build-up of flammable vapors caused by a lack of proper interlocks between the thermal oxidizer, ventilation system and conveyor as required by the 1985 edition of NFPA 86. The thermal oxidizer installed by Wolverine at PATCO was therefore of defective design and failed to provide adequate safeguards in violation of NFPA 86 and had inadequate warnings to prevent such an explosion. Wolverine also failed to provide PATCO with emergency procedures to follow in the event of such an incident, in further violation of NFPA 86.

### III. Damages

Travelers paid its insured, PATCO, the amount of $977,321.32 with respect to the above-referenced loss. Travelers is now seeking reimbursement of that amount. Documentation evidencing PATCO's damages paid by Travelers is attached hereto as <u>Exhibit No. 5</u>.

Please review the enclosed documentation and contact Steven Perlmutter or me to discuss settlement of this matter.

Thank you for your anticipated cooperation.

Sincerely,

*Danielle M. Andrews*

Danielle M. Andrews

Enclosures

cc: Steven P. Perlmutter, Esq.
    Theresa Gay