UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Wolverine Proctor & Schwartz, Inc., and<br>Great American Alliance Insurance Co., Inc.<br>    Plaintiffs,<br><br>v.<br><br>XYZ Tape Corp., formerly known as Patco Corp.,<br>William B. Wilbur, and<br>Travelers Property Casualty Company of America<br>    Defendants. | CIVIL ACTION NO.<br>04-12189-RWZ<br><br>**Oral Argument Requested** |

**Memorandum of Wolverine Proctor & Schwartz, Inc. And Great American Alliance Ins. In Opposition To Motion By Defendant Travelers Property Casualty Company For Partial Summary Judgment As To Count II Of The Complaint**

**I.  Introduction**

    Plaintiffs Wolverine Proctor & Schwartz, Inc. and Great American Alliance Insurance Co., Inc. submit this memorandum in opposition to the Motion By Defendant Travelers Property Casualty Company For Partial Summary Judgment As To Count II Of The Complaint (Docket No. 33).  Massachusetts General Laws chapter 93A, § 2 makes unlawful Travelers' unfair and deceptive business practices and § 11 of chapter 93A and 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 afford commercial parties who have been damaged by that conduct with standing to pursue a civil action seeking a judgment declaring when such unlawful conduct has occurred.  Consequently, Wolverine and its subrogee Great American (collectively "Wolverine") have standing to seek a declaratory judgment as to Travelers' unfair business practices prohibited by Massachusetts General Laws chapter 93A, § 2.

    In addition, Travelers, by its now inconsistent representations to this Court that successfully prevented the filing of a counterclaim against it in the related <u>Product Liability</u>

Action,[1] is estopped judicially to deny that the Complaint in the action at bar (for ease of reference "the XYZ Tape Action") fails to give fair notice of direct claims against Travelers for indemnity, unjust enrichment or estoppel damages as well as a contract claim against Travelers for Travelers' assumption of the indemnity contract pursuant to Mass. Gen. Laws ch. 106, § 2-210 or common law. See Product Liability Action (Docket No. 38, Ex. 1) (Amended Answer, Counterclaim And Jury Demand [Against Travelers] at pp. 12-26) (copy attached at Ex. 10).  Travelers' motion for partial summary judgment should be denied.

**II.     Wolverine Has Given Fair Notice Of Its Chapter 93A Claim**

It is an unfair and deceptive business practice for an insurance company to prosecute litigation in the name of its customer seeking damages from another for which it knows its customer is responsible by indemnity, especially when its customer has coverage from that very insurer for that indemnity liability.  In effect, Travelers, without scruple, continues to blame another for suing itself.  Travelers, despite appreciating its clear liability on Wolverine's indemnity claim and the oppressive nature of its conduct, has forced Wolverine to sue as well as to continue to defend litigation it controls for the ulterior purpose of leveraging and extorting money from Wolverine that it knows its insured had promised to pay and that it agreed to insure.  The Complaint gives fair notice of Wolverine's chapter 93A claim mentioning the statute by name in paragraph 52 of the Complaint and alleging liability is reasonably clear in paragraphs 44 and 46.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-513 (2002) (under notice pleading system of Fed. R. Civ. P. 8, it is not appropriate

---

[1] See The Travelers Indemnity Company of Illinois as subrogee of Patco Corporation v. Wolverine (Massachusetts) Corporation, Civil Action No. 03-10164-RWZ (D. Mass.) (Zobel, J.) (hereinafter the "Product Liability Action"), the complaint with respect to which was attached as Exhibit 1 to the Complaint in this XYZ Tape Action.

to require plaintiff to plead facts establishing prima facie case). Whether Travelers now contends that some allegations are unclear, inconsistent or not artfully pleaded does not extinguish Wolverine's chapter 93A allegations.[2] See Garita Hotel Ltd. P'ship v. Ponce Fed. Bnk., F.S.B., 958 F.2d 15, 17-18 (1st Cir. 1992) (complaint, "while inartfully drawn, passed muster") (explaining First Circuit precedent).

**III.    Travelers' Motion Which Relies Only On The Allegations Of The Complaint Fails to Satisfy A Moving Party's Summary Judgment Burden And Should Be Denied Or Evaluated By Rule 12(b)(6) Motion-To-Dismiss Standards**

Travelers brings its motion for partial summary judgment in name only and no where cites to any evidence, admissions or other Rule 56(c) materials that would entitle it to a judgment on the merits. Federal Rule of Civil Procedure 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment in its favor as a matter of law.

The Supreme Court has held that a party moving for summary judgment has a initial burden of production to show based upon Rule 56(c) materials that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986) (before burden shifts to non-moving party to respond to motion, movant must meet "initial responsibility" to show summary judgment is appropriate).

A moving party who lacks the ultimate burden of persuasion at trial can satisfy its initial burden of production in two ways: (a) by affirmatively producing evidence that negates an essential element of the non-moving party's claim or (b) by pointing to the absence of any

---

[2] Travelers waived its opportunity to move for a more definite statement under Fed. R. Civ. P. 12(e) had it believed inconsistencies or ambiguities in the complaint prevented it from joining issue on this case. See Fed. R. Civ. P. 12(e) (motion for more definite statement must be made "before interposing a responsive pleading"); Fed. R. Civ. P. 8(e), 8(f) (complaints are construed as to do substantial justice and may include alternative and inconsistent claims).

factual support in the record for an essential element of the non-moving party's claim.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) and Celotex Corp. v. Catrett, 477 U.S. at 325).  But where the movant points to no Rule 56(c) materials at all other than the complaint itself, it has not satisfied its burden.  Compare Adickes, 398 U.S. at 158-161 (if summary judgment motion is not properly supported, it must be denied for "'[n]o defense to an insufficient showing is required'" (citation omitted)); Celotex Corp. v. Catrett, 477 U.S. at 328 (White, J., concurring) ("But the movant must discharge the burden the Rules place upon him:  It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.").[3]

Moving parties who do not satisfy their prima facie burden cannot receive a summary judgment in their favor.  Adickes, 398 U.S. at 160-61 & (citing in part Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56).[4]  Even where a summary judgment motion is wholly

---

[3] The reference in Rule 56(c) to "pleadings" appears in the text of the original 1937 rule.  Before the 1963 amendment that added "answers to interrogatories" to the list of Rule 56(c) materials some courts read "pleadings" to include interrogatory answers, see Munoz v. Mercahnts' Nat'l Bnk. of Allentown, 49 F. Supp. 588, 590-91 (E.D. Pa. 1943) ("Under all the pleadings, including the answers to interrogatories, there appear to be no genuine issues as to material facts."), while others read "pleadings" to mean only the complaint and answer considered together, see American Airlines, Inc. v. Ulen, 186 F.2d 529, 531 (D.C. Cir. 1949) (court agreed that "the pleadings (that is, the complaint alleging negligence and the answer as amended denying negligence) raised genuine issues as to material facts which could only have been properly determined by a trial on the merits," but sworn answers to interrogatories when also considered showed moving party entitled to summary judgment on liability).  Consequently, the reference to "pleadings" does not permit mere reliance on the complaint alone to obtain summary judgment.  Compare Fed. R. Civ. P. 12(c) (discussing motion for judgment on the "pleadings" available after "pleadings," that is, the complaint and answer, are closed) with Fed. R. Civ. P. 56(d) ("the court at the hearing of the motion, by examining the pleadings and the evidence before it . . .").

[4] See also Carmona v. Toledo, 215 F.3d at 131-32 (movant failed to satisfy initial summary judgment burden where documents referenced were unauthenticated and where responses to discovery requests were meager, untimely and incomplete); Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) (where evidentiary matter does not establish absence of genuine issue

unopposed, a court must determine whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment before the unopposed motion can be allowed. E.g., Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005) (quoting and citing cases). Likewise Local Rule 56.1 is written with this basic evidentiary requirement in mind. See Local Rule 56.1 (referring to required "page references to affidavits, depositions and other documentation. . . .")

Here, Travelers makes no reference to evidentiary materials at all. Its Local Rule 56.1 Statement mentions only the Complaint and its motion merely challenges its sufficiency. No mention is made of the answer, any admission, any discovery response, affidavit or deposition. Since Travelers' motion has not been "made and supported as provided in this rule," Fed. R. Civ. P. 56(e), Travelers has not satisfied its initial burden and summary judgment should be denied.

Alternatively, if the court were to construe Travelers' motion using a functional approach,[5] it would treat its motion as one for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For such a motion, the Court must accept as true all averments of the complaint and draw all reasonable inferences in favor of the nonmovant pleader. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 511-512 (2002); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (on review of complaint "before the reception of any

---

of material fact, summary judgment must be denied); Mack v. Cape Elizabeth Sch. Bd., 553 F.2d 720, 722 (1st Cir. 1977) (improper to grant summary judgment where affidavits did not address real issue raised by pleadings as to why plaintiff was selected to be fired). See also Heath v. John Morrell & Co., 768 F.2d 245, 249 (8th Cir. 1985) (allegations in complaint will defeat motion for summary judgment if movant does not sustain his initial burden).

[5] Cf. Maldonado v. Dominguez, 137 F.3d 1, 5 (1st Cir. 1998) (despite use in district court's order of summary judgment language, under functional analysis disposition was made under Rule 12(b)(6) because focus was only on insufficiency of pleadings); Garita Hotel Ltd. P'ship v. Ponce Fed. Bnk., F.S.B., 958 F.2d 15, 18-19 (1st Cir. 1992) (court should undertake functional analysis when reviewing dispositive motion for test is whether court took cognizance of evidentiary materials).

evidence either by affidavit or admissions, . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). The standard for judging a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991). Wolverine has stated a chapter 93A claim against Travelers upon which relief can be granted. (See discussion at Section IV infra.)

**IV.     Wolverine Has Standing To Sue Travelers For Its Unfair Business Practices**

Travelers seeks summary judgment based upon its mischaracterization of the substantive law of chapter 93A and its misunderstanding of the relief sought in Count II of the Complaint. As will be shown, neither argument has merit.

**A.     Unfair Insurance Practice That Causes Business Claimant To Incur Litigation Expenses Is Actionable Under Chapter 93A, § 11**

Massachusetts law affords standing to sue to businesses that have incurred attorney fees and costs as a result of the unfair business and claims handling practices of an insurance company. See Mass. Gen. Laws ch. 93A, § 2 and § 11; Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63-64 (1999) (unfair insurance claim practice by business that causes another business to incur litigation expenses actionable under chapter 93A); R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 78 (2001) (court may rely upon unfair claim settlement practice violations of Mass. Gen. Laws ch. 176D, § 3(9), as "persuasive evidence" of unfair business practice proscribed by chapter 93A), citing with approval Kiewit Const. Co. v. Westchester Fire Ins. Co., 878 F. Supp. 298, 301-02 (D. Mass. 1995) (Keeton, J. adopting report and rec. of Karol, Mag. J.) (although not every violation of Mass. Gen. Laws ch. 176D is a per se violation of chapter 93A that may be sued upon by a commercial plaintiff, unfair and deceptive insurance practices, even those that violate chapter

176D, are not immune from attack by commercial plaintiffs). A commercial plaintiff may bring an action under ch. 93A, § 11, against an insurer for business practices the unfairness of which are evidenced by violations of ch. 176D. See Adams v. Liberty Mut. Ins. Co., 60 Mass. App. Ct. 55, 63 n.14 (2003). See also Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 9 (1st Cir. 2000) ("conduct that violates ch. 176D may independently be an unfair trade practice under ch. 93A, § 11" (citing Kiewit, supra, at 301-02)); cf. Whitehall Co. Ltd. v. Merrimack Valley Distrib. Co., 56 Mass. App. Ct. 853, 858 (2002) (statutory violation that does not itself provide private right of action can give rise to ch. 93A, § 2, action "if recovery under c. 93A is compatible with the objectives and enforcement mechanisms the underlying statute contains").

Significantly, Travelers in its brief admits Wolverine has standing to bring this claim stating, "A third party would have standing to pursue a direct statutory action under Mass. G.L. c. 93A . . . to the extent that an insurer denies that its insured was liable to the third party and the plaintiff believes that the insured's liability was 'reasonably clear.'" See Memorandum Of Law In Support Of Motion For Summary Judgment By Defendant Travelers Property Casualty Company of America [hereinafter "Travelers S.J. Memo"] at 3 n.2 (emphasis in original). In the seminal case of Clegg v. Butler, 424 Mass. 413 (1997) the Supreme Judicial Court removed any doubt whether an injured third party had standing to sue an insurance company for its unfair business practices: "we reject [the] conclusion that . . . the insurer owes no duty to the third-party claimant . . . 'until both liability and damages have been determined in an appropriate, legal forum or agreed upon.'" 424 Mass. at 418. Under Massachusetts law, liability may be "reasonably clear" well before, or indeed in the absence of, a judicial order resolving every contested issue. See R.W. Granger & Sons, Inc.,

7

435 Mass. at 75-76 (discussing role in context of damages issue because appellant did not contest liability).

Travelers claims, however, that because a commercial claimant does not have a private right of action to enforce a violation of Mass. Gen. Laws ch. 176D, § 3(9), an insurer may act with impunity when it deals with claims made by commercial claimants. Not so. "The legislative failure to enact a private remedy for c. 176D violations does not show an intent to bar all private remedies for unfair and deceptive insurance practices." See Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 77, 83 (1977), overruling by statute on other grounds recognized in Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983) (explaining how 1979 amendment to chapter 93A, St. 1979, c. 406, § 1, eliminated privity requirement that chapter 93A plaintiff be a purchaser).[6] The Massachusetts legislature broadly has proscribed conduct by any person, including insurance companies, that constitutes an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Mass. Gen. Laws ch. 176D, § 2. Whether specifically enumerated or not, the Commissioner of Insurance, after notice and hearing, may punish unfair insurance practices by fine, restitution, punitive damages, and license revocation. Mass. Gen. Laws ch. 176D, §§ 2, 6, 7. Section 3(9) of chapter 176D enumerates various specific conduct that constitutes "unfair claim settlement practices" in the business of insurance as a subset of those insurance practices that are declared unlawful under § 2 of chapter 176D. Section 8 of

---

[6] Unlike consumer plaintiffs, business plaintiffs were never limited in their ability to sue for loss of money or property "as a result of" "an unfair or deceptive act or practice declared unlawful by section two," St. 1972, c. 614, § 2 (establishing § 11 action under chapter 93A). Originally, chapter 93A provided only for a cause of action by the Attorney General and did not contain a § 9 cause of action for consumers or a § 11 cause of action for businesses. Compare St. 1967, c. 813, §§ 1, 2 with St. 1969, c. 690 (adding § 9 consumer action initially limited to purchasers or lessors of goods or services) and St. 1972, c. 614, § 2 (adding § 11 business action).

chapter 176D "clearly contemplates concurrent application of 'other laws of this commonwealth.'" Dodd, 373 Mass. at 76 (explaining how § 8 savings clause supports how ch. 176D does not bar application of ch, 93A to insurance practices). Unfair insurance practices are unlawful under Massachusetts law regardless of whether a private right of action exists with respect to them. Cf. Adams, 60 Mass. App. Ct. at 63 n.14.

Significantly, even before chapter 93A was amended in 1979, "[c]hapter 176D [did] not preclude application of c. 93A to unfair and deceptive insurance practices." Dodd, 373 Mass. at 83. Thus, Massachusetts law affords no immunity to multi-million dollar corporations who conduct business unfairly no matter whether that business concerns the insurance industry or some other aspect of commerce. See Mass. Gen. Laws ch. 93A, § 2 (declaring "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful").

The Supreme Judicial Court has held that the crucial factors in making a chapter 93A fairness determination are "the nature of the challenged conduct and . . . the purpose and effect of that conduct . . . ." Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995) (citing PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)). An act or practice may be unfair within the meaning of the statute without being deceptive or fraudulent so long as the challenged conduct falls within any common law, statutory or other established concept of unfairness or is unethical, oppressive or unscrupulous. Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross. of Mass., Inc., 403 Mass. 722, 729 (1989); Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004). Relevant evidence of unfairness is permitted from every quarter to prove a chapter 93A violation, whether from violation of industry standards, or disregard of trade practices or the failure to abide

9

legislation or the common law.[7]  Insurers who violate standards of G.L. c. 176D, § 2 or § 3(9) act illegally.  Although evidence of such illegality may not *per se* establish an unfair or deceptive business practice where commercial parties are concerned, evidence of that illegality can be relevant to establish a commercial plaintiff's claim for unfair or deceptive business practices prohibited by chapter 93A, § 2.  See R. W. Granger & Sons, Inc., 435 Mass. at 78.  "While G.L. c. 93A, sec 11, does not in so many words incorporate c. 176D, sec 3(9), it is established law that a violation of the latter statute may constitute actionable conduct under the former."  Federal Ins. Co. v. HPSC, Inc., No. 02-CV-11822-RGS, 2005 U.S. Dist. LEXIS 19713, *10, *15-*17 (D. Mass. Sept. 12, 2005) (Stearns, J.) (copy attached at Ex. 11) (holding that insurer's continuation of litigation after learning that fundamental premise of its lawsuit was erroneous without making reasonable settlement offer constituted unfair business practice for which business claimant was entitled to multiple damages) (citing R. W. Granger & Sons, Inc.., 435 Mass. at 78).

Contrary to Travelers' assertions, the Massachusetts Supreme Judicial Court decisions cited in its brief support Wolverine's position.  In Jet Line Services, Inc. v. American Employers Ins. Co., 404 Mass. 706 (1989), the Supreme Judicial Court held that even though a loss was not covered by a policy of comprehensive commercial general liability insurance, the insurer's disclaimer of coverage that came "unacceptably late" as to the claim of a cleaning business "could be an unfair or deceptive act under G. L. c. 93A, § 2 (1986 ed.)."  404 Mass. at 709, 719 (remanding issue for reconsideration of facts in light of lack-of-coverage holding).  Moreover,

---

[7] Compare PMP Assocs., 366 Mass. at 596 (discussing usefulness of Federal Trade Commission precedent) with Grolier, Inc. v. FTC, 699 F.2d 983, 989 (9th Cir. 1983) (FTC injunction finding unlawful practice was consistent with industry standards) and Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1010 & n.7, 1016-17 (9th Cir. 2004) (sufficient evidence of insurer's bad faith investigation of claim under California unfair and deceptive practices law where insurer's correspondence fell below industry standards, customs and norms).

despite the lack of coverage, the Court held that the same late-disclaimer conduct that warranted an estoppel as to any attempt to deny coverage "also require[d] the conclusion that Amercian [the insurer] engaged in unfair and deceptive acts and practices as to the incident" for which the Court had "little difficulty" in holding that attorney fees from forced litigation are compensable § 11 damages.  See 404 Mass. at 717.  In a footnote the Jet Line Court indicated how "§ 11 does not incorporate violations of G. L. c. 176D, § 3, cl. 9 (1986 ed.), within its prohibitions as does G. L. c. 93A, § 9," 404 Mass. at 717 n.11, but that lack of explicit incorporation did not immunize the insurance company for chapter 93A, § 11, liability for its unfair claims handling practices that violated c. 93A, § 2.

Likewise, in Polaroid Corp .v Travelers Indemnity Co., 414 Mass. 747 (1993), the Supreme Judicial Court affirmed a denial of chapter 93A, § 11, liability with respect to an insurer's handling of a commercial claim because when the third-party's claims were first advanced against the insured "an insurer reasonably could have concluded that no aspect of the [third-party claimant's] claims was within the scope of its coverage . . . ," id. at 754.  The entire rationale of the opinion, however, including its explanation of the failure of the plaintiff to prove a chapter 93A, § 2, violation "insurer by insurer, that by one or more unfair acts or practices an insurer caused . . . a loss of money or property" other than a failed attempt to prove an unfair denial of coverage (prior to a crucial Court decision which indicated there was a duty to defend), see 414 Mass. at 754 n.8, 755, shows that had liability "been reasonably clear," a chapter 93A, § 11, violation could have been shown.

Significantly, the Supreme Judicial Court held: "Polaroid's claim that G. L. c. 93A, § 11, was violated by its primary insurers' violations of certain provisions of G. L. c. 176D, § 3(9), is of significance only to the extent that the alleged wrongful conduct was a violation of G. L. c. 93A, § 2 ('unfair or deceptive acts or practices')."  Polaroid, 414 Mass. at 754.

11

But to that extent, those violations are necessarily "significant." The Court's citation of Jet Line, supra, at 717 n.11, to explain how "§ 11 does not grant an independent right to recover for violations of G. L. c. 176D, § 3(9)" hardly lessens the Polaroid holding that c. 176D, § 3(9), violations can be significant to "unfair or deceptive" business practices violating c. 93A, § 2, that occur in the context of an illegal handling of a commercial insurance claim. See Polaroid, 414 Mass. at 754.

Massachusetts courts and this Court have recognized this interpretation of Polaroid. In St. Paul Village Condominium Assoc. v. St. Paul Fire & Marine Ins. Co, 5 Mass. L. Rptr. 376, 1996 Mass. Super. LEXIS 352 (Mass. Superior Ct., Norfolk, June 1996) (copy attached at Ex. 12), the court held that in light of Polaroid "there *can* be a cause of action against an insurer under 2 and 11 which is independent of any c. 176D violation. Even so, not every unlawful act is automatically unfair or deceptive under c. 93A, 2, and the court must focus on the nature of the challenged conduct and on the purpose and effect of that conduct." Id. at *20-*21 (citing Massachusetts Employers Ins. Exch., 420 Mass. at 42). "In short, even in a commercial dispute between business organizations, a violation of c.176D that rises to a level so as to constitute an unfair or deceptive act for purposes of c. 93A, 2, would seem to support an independent claim for violation of c. 93A, 11." Id. at *21.

Judge Tauro of this Court in Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst LLC, 344 F. Supp. 2d 283, 289 (D. Mass. 2004) rejected attempts to dismiss a chapter 93A claim leveled by a business plaintiff against insurers for unfair claims settlement practices because of an alleged lack of standing. Although reasoning that a business lacks standing to bring an action under Mass. Gen. Laws c. 176D, this Court held it was "irrelevant because [the plaintiff business] has alleged violations of M.G.L. chapter 93A, section 2.

12

Under M.G.L. chapter 93A, section 11, business organizations can sue for unfair or deceptive acts proscribed by section 2." Northern Kare, 344 F. Supp. 2d at 289 (following St. Paul Village Condo. Ass'n, supra, and M. DeMatteo Const. Co. v. Century Indem. Co., 182 F. Supp. 2d 146, 161 (D. Mass. 2001)).

Travelers cites Judge O'Toole's decision in F.C.I. Realty Trust v. Aetna Casualty & Surety Co., 906 F. Supp. 30, 32 n.1 (D. Mass. 1995), but that decision also does not support the categorical prohibition Travelers presses. Judge O'Toole read Kiewit, supra, Polaroid, supra, DiVenuti v. Reardon, 37 Mass. App. Ct. 73 (1994), and Transamerica Ins. Group v. Turner Constr. Co., 33 Mass. App. Ct. 446 (1992) as standing for the rule that "an insurer's violations of ch. 176D, § 3(9) do not themselves create a cause of action under § 11 [of ch. 93A]" and that the insurer's behavior there "might still conceivably fall within Mass. Gen. L. ch. 93A, § 2, [but that] a violation of chapter 176D does not automatically violate § 2 . . . ." F.C.I. Realty Trust, 906 F. Supp. at 32 n.1 (addressing question in dicta as part of jurisdictional challenge in light of amount in controversy).

Although language appearing in Transamerica Ins. Group v. Turner Constr. Co., 33 Mass. App. Ct. 446 (1992) cited by Travelers has been at times relied upon in an uncritical fashion to insulate insurance companies from liability for unfair business practices with respect to claims conduct,[8] the most recent precedent from the Massachusetts Appeal Court

---

[8] Even in the Transamerica case, the Appeals Court found that the insurer did not as a factual matter engage in any of the unfair settlement practices alleged, 33 Mass. App. Ct. at 453-54, which undermines a reading of that case as being disposed of on lack-of-standing grounds. The Transamerica Court also reasoned that had the accused insurer "not put its money up front [to fund settlement and defense costs for which it claimed another business, Liberty, was responsible], "one might have ascribed to it an extortionate purpose of using litigation to pry contributions from Liberty." 33 Mass. App. Ct. at 453 (citing Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 & n.5 (1992)) (explanatory text added). Had the accused insurer not fronted those settlement and defense costs, even the Transamerica decision implicitly recognizes that the

indicates that insurers can be held accountable under chapter 93A for unfair practices with respect to business claimants. See Adams v. Liberty Mut. Ins. Co., 60 Mass. App. Ct. 55, 63 n.14 (2003). The Adams case involved a third-party business, who was not in privity with an insurer, who had been damaged by the unfair and deceptive practices of the defendant insurer in handling that claim. The Appeals Court recognized that the plaintiff could maintain a chapter 93A, § 11, action "on the basis of [the insurer's] unfair and deceptive conduct in dealing with his claim for payment . . . within the confines of a business-to-business transaction . . . ." Adams, 60 Mass. App. Ct. at 63 n.14 (citing in part Polaroid, supra).[9]

In Continental Ins. Co. v. Bahnan, 216 F.3d 150, 156 (1st Cir. 2000) [hereinafter Bahan Two], the First Circuit affirmed a grant of summary judgment against a business asserting a claim against an insurer for a claim that was merely "a derivative chapter 176D claim." Id. at 156 (citing Transamerica, supra, and Polaroid, supra), aff'g Continental Ins. Co. v. Bahnan, No. 94-11304, 1997 U.S. Dist. LEXIS 23796 (D. Mass. Nov. 6, 1997) (Gorton, J.) (copy attached at Ex. 13) [hereinafter Bahan One]. A review of Judge Gorton's

---

accused insurer would not have been "insulated" against a § 11 claim. Cases that cite to Transamerica fail to deal with this distinction which is significant here. Compare DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 79-80 (1994) (dicta, issue not raised below or on appeal); Spencer Press, Inc. v. Utica Mut. Ins. Co., 42 Mass. App. Ct. 631, 636 (1997) (dicta for insurance company's claims handling practices were "on the whole conscientious and in good faith") and Employers Ins. of Wausau v. George, 41 Mass. App. Ct. 719, 729-30 (1996) (no causal connection proven for realty trust landfill's ch. 93A allegation of improper investigation of claim) with St. Paul Village Condo Ass'n v. St. Paul Fire & Marine Ins. Co., No. 93-2546, 5 Mass. L. Rptr. 376, 1996 Mass. Super LEXIS 352 at *21 n.8 (June 1996) (copy attached) (distinguishing Transamerica and DiVenuti, supra).

[9] Although the issue was not directly raised on appeal, the reasoning of M.J. Flaherty Co. v. United States Fid. & Guar. Co., 61 Mass. App. Ct. 337, 339, 340 (2004) (reversing dismissal order and remanding for further proceedings on the merits with respect to chapter 93A, § 11, third-party claim brought against insurer for violation of chapter 176D, § 3(9)(f)) is consistent with the interpretation of the law in Adams, supra.

14

decision that the First Circuit affirmed shows how the First Circuit's decision stands for no categorical rule prohibiting chapter 93A business claims against insurers.  In Bahan One, the business plaintiff in Count VIII of his counterclaim pleaded direct claims against an insurer for violation of chapter 176D pursuant to chapter 93A, § 11, on which summary judgment was allowed, as well as in count VII for unfair or deceptive acts under chapter 93A, § 2, on which summary judgment was denied and held for trial.  Bahan One, 1997 U.S. Dist LEXIS at * 14-*16.  Judge Gorton held that "[u]nlike § 9, § 11 does not grant the right of a business to recover directly for violations of Chapter 176D," id. (citing Kiewit, Jet Line, DiVenuti, and Transamerica, supra) (emphasis added); but "[w]hile businesses may not recover for violations of Chapter 176D pursuant to § 11 of Chapter 93A, businesses may recover pursuant to that section for unfair or deceptive insurance practices that violate Chapter 93A, § 2," id. (citing Kiewit, 878 F. Supp. at 300 and Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977)).  Judge Gorton thus held for trial this one counterclaim—which the business plaintiff lost on the merits with a "take nothing verdict," Bahan Two, 216 F.3d at 153—alleging that the insurer "intentionally denied coverage when it was clear that liability was certain and that [the business plaintiff] had complied with the terms of the contract." Bahan One, 1997 U.S. Dist. LEXIS at * 15.

  Travelers, to this day, has failed to explain to Wolverine why liability is not clear.  Its failure to properly explain its position on Wolverine's claim and its failure to offer a fair settlement of the claim while forcing Wolverine to litigate a matter on which liability is clear for the ulterior purpose of leveraging payments for which its insured is liable constitutes an unfair business practice in the circumstances of this case.  See Federal Ins. Co. v. HPSC, Inc., supra, at *15-*18.  A prime goal of c. 93A, §§ 9 & 11 is the promotion of reasonable

settlement offers. International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 857 (1983). Section 11, like § 9, is "designed to make it 'unprofitable' for a defendant to ignore meritorious claims." Id. (citation omitted) (multiple damages is appropriate punishment "for forcing plaintiffs to litigate clearly valid claims"). Any party whose legal interest might be adversely affected, including a third-party claimant, is owed a duty to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. Clegg v. Butler, 424 Mass. 413, 419 (1997) (noting that ch. 176D, § 3(9)(f) is not restricted to insureds); Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983). A commercial plaintiff can state a claim under chapter 93A by alluding to conduct that is impermissible under chapter 176D, including failure of insurer to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear. M. DeMatteo Constr. Co. v. Century Indem. Co., 182 F. Supp. 2d 146, 160-63 (D. Mass. 2001) (Young, C.J.) (explaining Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins.Co., 169 F.3d 43, 56 (1st Cir. 1999) and Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 15 (1997) (Bowler, Mag. J.)) . Wolverine has standing to pursue its chapter 93A, § 2, claims.

    **B.**    **Travelers' "Direct Action" Arguments Are A Red Herring That Do Not Pertain Here As Wolverine Does Not Seek Policy Benefits**

Wolverine does not seek a declaratory judgment as to whether it is entitled to receive the benefits covered by the insurance policy issued by Travelers to Patco. Wolverine does not claim that it is an additional insured on Travelers' insurance policy or that it is a party to that insurance contract. Despite Travelers' characterizations to the contrary, Wolverine does not sue Travelers by way of a "direct action" for policy benefits. Wolverine sues Travelers for its unfair and deceptive business practices. Significantly, the term "direct action" is a term of art in the insurance industry. A "direct action" can be a lawsuit by an insured against his own insurer

(such as if XYZ Tape sued Travelers on the insurance policy) or it can be when a third-party claimant sues a defendant's insurer directly for damages caused by the defendant instead of suing the defendant for those damages. See Black's Law Dictionary 472 (7th ed. 1999). In Massachusetts, a direct action seeking policy benefits based upon a third-party beneficiary theory prior to obtaining a judgment against an insured has been recognized in limited situations. See Flattery v. Gregory, 397 Mass. 143, 150 (1986) (holding that third-party claimants are intended third-party beneficiaries under optional automobile liability insurance policies). Here, however, the damages and attorney fees Wolverine is entitled to recover for Travelers' violation of chapter 93A are not measured by the limits of any policy as would the amount recoverable in a so-called direct action. The focus on "direct action" precedent in § IIA of Travelers S.J. Memo merely attempts to distract the Court and confuse the analysis of the chapter 93A claims presented.

In addition, Travelers' knowledge that its policy provides "insured contract" coverage for XYZ Tape's indemnity obligations is relevant with respect to whether its practices in the insurance industry were unfair and, if so, whether they were knowing or willful. In Travelers' interrogatory answers it admitted that it "has no information that the agreements are not 'insured contracts'." See XYZ Tape Action (Docket No. 32, Ex. 8) (Defendant Travelers Property Casualty Company of America's Response To Plaintiff's First Set of Interrogatories, No. 8, attached as Exhibit 8 to Affidavit of Matthew J. Walko). Travelers' knowledge does not convert Wolverine's claims into a direct action lawsuit. "The question of whether the duty of good faith was fulfilled must be judged at the time the duty was being exercised, on the basis of what the defendant knew at that time." Peckham v. Continental Cas. Ins. Co., 997 F. Supp. 73, 80 (D. Mass. 1989) (discussing standard under which an insurer's settlement practices are examined to show good faith for purposes of breach of contract claim),

aff'd in part, rev'd in part on other grounds as to fee award, 895 F.2d 830 (1st Cir. 1990); see also Federal Ins. Co. v. HPSC, Inc., supra, at *15-*16.[10]

In support of its belief that Wolverine merely seeks a declaration of insurance coverage  (Wolverine denied in its Reply paragraph 9 of Travelers' Counterclaim) rather than as to Travelers' liability under c. 93A, Travelers argues that Wolverine has not alleged specific damages, but overlooks damage allegations as to attorney fees and costs which may be recovered as chapter 93A damages.  Compl. ¶¶ 42-44, 51, 53, 59(e); Columbia Chiropractic Group v. Trust Ins. Co., 430 Mass. 60, 63 (1999). Wolverine's pursuit of a declaratory judgment as to Travelers does not mean that Wolverine has lost nothing as a result of Travelers' unfair business practices.  The declaratory judgment count merely allows Wolverine to address a practical problem caused by Travelers' intransigence with respect to the indemnity claim that otherwise might give Travelers' access to privileged communications of Wolverine's counsel prior to a trial of the Product Liability Action.  This declaratory form of action allows Wolverine to be able to seek a protective order preventing Travelers  for the time being from reviewing otherwise privileged information in Wolverine's legal invoice descriptions prior to the Product Liability Action trial because the amount of damages as to Travelers will not yet have been put at issue.  See Fed. R. Civ. P. 26(b)(1) ("subject matter" discovery no longer available as of right); Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 15(d).

---

[10] This rule has been recognized by other jurisdictions.  See Insurance Co. of N. Am. v. Citizensbank of Thomasville, 491 So. 2d 880, 883 (Ala. 1986) (decision of insurance company to deny claim is judged by what information was before it at time decision was made); Viles v. Security Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990) ( "reasonable basis for denial [of a claim] must be judged by the facts before the insurer at the time the claim was denied").

V.    **Judicial Estoppel Prevents Travelers From Denying That Claims Have Been Made Against It Sounding In Equity And For Assumption Of The Indemnity Agreement**

In addition, Travelers is bound under judicial estoppel by its statements to this Court that the proposed counterclaims sought to be filed by Wolverine in the Product Liability Action (see discussion supra Section I note 1) were duplicative of the claim brought by Wolverine in this XYZ Tape Action. Travelers successfully argued that Wolverine's motion to amend and assert a counterclaim should be denied to avoid waste and duplication. See Product Liaiblity Action (Docket No. 44) (Memorandum in Opposition To Motion for Leave To Assert Counterclaim at 1, 5 ("claims in the related case seek identical relief under the same theories") (copy attached as Ex. 14). This Court accepted and relied upon Travelers' representation in denying Wolverine's motion in its Order of March 21, 2005, as follows: "Judge Rya W. Zobel: endorsed ORDER entered denying [38] Motion to Amend. As is appears that the issues defendant seeks to assert in this case are already included in the related case, CA 04-12189. (Urso, Lisa)" (emphasis added). Its current motion, however, seeks judgment without addressing any of those "counterclaims" and thus directly contradicts its prior representation that those proposed counterclaims are at issue and would be litigated in this action. It would be manifestly unfair to allow Travelers to benefit from its inconsistent positions because had it not assured the Court that those matters were already at issue here a Fed. R. Civ. P. 15 motion could have joined them.

Generally, judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir. 2004) (internal quotation marks and citation omitted). An equitable doctrine that protects the integrity of the judicial system from the appearance that courts have been mislead, see New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001), judicial estoppel is warranted where "the party to be estopped 'succeeded previously with a position directly inconsistent with the one

19

[it] currently espouses,'" <u>Fleet Nat'l Bnk. v. Gray (In re Bankvest Capital Corp.)</u>, 375 F.3d 51, 60 (1st Cir. 2004 (quoting <u>Lydon v. Boston Sand & Gravel Co.</u>, 175 F.3d 6, 13 (1st Cir. 1999)). <u>See also</u> <u>Fay v. Federal Nat'l Mortgage Ass'n</u>, 419 Mass. 782, 788-89 & n.10 (1995). Since Travelers represented to this Court that the issues Wolverine sought to include in that proposed counterclaim were already included in this <u>XYZ Tape Action</u> and the Court agreed, Travelers is now estopped to deny that those issues are not part of this case.[11] Those issues have not been addressed by Travelers in its motion. Travelers' motion should be denied on that basis as well.

**VI.   Conclusion**

For the reasons set forth above, Wolverine requests that Travelers' motion for partial summary judgment be denied.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(D), Wolverine, believing that oral argument would assist the Court in the resolution of Travelers' motion, requests the opportunity to be heard.

>Respectfully submitted,
>
>Wolverine Proctor & Schwartz, Inc.
>Great American Alliance Insurance Co., Inc.
>
>by their attorneys,
>
>*/s/ Matthew J. Walko*
>
>_____
>Matthew J. Walko (BBO No. 562172)
>SMITH & DUGGAN LLP
>Two Center Plaza, Suite 620
>Boston, Massachusetts 02108-1906
>(617) 228-4400

Dated: October 25, 2005

---

[11] Count I of the proposed counterclaim asserted a common law claim against Travelers seeking indemnity, unjust enrichment or estoppel damages. Count II of the proposed counterclaim claims that Travelers is liable in contract to Wolverine because Travelers assumed the indemnity contract under the Massachusetts Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 2-210, or common law. (See Ex. 10 attached.)