UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

The Travelers Indemnity Company    )
 of Illinois as subrogee of        )
 Patco Corporation,                )
                                   )
      Plaintiff                    )
                                   )
      v.                           )     CIVIL ACTION
                                   )     NO. 03-10164-RWZ
Wolverine (Massachusetts)          )
  Corporation,                     )
                                   )
      Defendant                    )
_____    )

## AMENDED ANSWER, COUNTERCLAIM AND JURY DEMAND

Wolverine Proctor & Schwartz, Inc., incorrectly identified in the Complaint as Wolverine (Massachusetts) Corporation, responds to the allegations of the Complaint filed by the plaintiff The Travelers Indemnity Company of Illinois ("Travelers Indemnity") by corresponding numbered paragraphs as follows:

1.  Wolverine Proctor & Schwartz, Inc. denies that Patco Corp. ("Patco") is still located at 51 Ballou Boulevard, Bristol, Rhode Island, but admits Patco was located at 51 Ballou Boulevard, Bristol, Rhode Island on January 29, 2000. Wolverine Proctor & Schwartz, Inc. admits the remaining allegations of this paragraph.

2.  Wolverine Proctor & Schwartz, Inc. admits that it is a Delaware corporation with a principal place of business at 51 East Main Street, Merrimac, Essex County, Massachusetts.

Wolverine Proctor & Schwartz, Inc. admits that it was formerly known as Wolverine (Massachusetts) Corporation. Wolverine Proctor & Schwartz, Inc. denies that Wolverine (Massachusetts) Corporation is a properly named defendant.

3. Wolverine Proctor & Schwartz, Inc. admits Travelers Indemnity is a citizen of a different state and the amount in controversy, exclusive of interests and costs, exceeds $75,000. Further answering, Wolverine Proctor & Schwartz, Inc. states that the remaining allegations of this paragraph call for legal conclusions requiring no answer.

4. Wolverine Proctor & Schwartz, Inc. admits that venue is proper in the United States District Court for the District of Massachusetts, but states that the remaining allegations of this paragraph call for legal conclusions requiring no answer.

5. Admitted.

6. Wolverine Proctor & Schwartz, Inc. admits that at times Wolverine Corporation, a Massachusetts business corporation, and Wolverine (Massachusetts) Corporation, a Delaware business corporation, designed, manufactured and distributed thermal oxidizers and thermal oxidizer parts, but denies the remaining allegations of this paragraph.

7. Wolverine Proctor & Schwartz, Inc. admits that by Patco Purchase Order No. 1221 dated January 22, 1991, Patco accepted a revised proposal from Wolverine Corporation for one 5000 SCFM

Thermal Oxidizer as described in Proposal No. 4673-W-EKL, Rev. 1, that the component goods sold by Wolverine Corporation for this order were acquired by or manufactured by Wolverine Corporation pursuant to designs and specifications approved by Patco and were shipped by a common carrier in April 1991 to a Patco facility at 51 Ballou Boulevard, Bristol, Rhode Island. Wolverine Proctor & Schwartz, Inc. admits that the Wolverine Corporation project number was 9103, but denies the remaining allegations of this paragraph.

8.    Wolverine Proctor & Schwartz, Inc. admits that the hardware components purchased by Patco from Wolverine Corporation in 1991 included one 5000 SCFM thermal oxidizer with an integral heat exchanger of shell-and-tube type design.  Wolverine Proctor & Schwartz, Inc. admits that the purchase included an exhaust blower to convey exhaust from Patco's process to the oxidizer unit, a free-standing NEMA 12 control panel, and an exhaust stack, but denies the remaining allegations of this paragraph.

9.    Wolverine Proctor & Schwartz, Inc. admits that about November 1993, Patco accepted a revised proposal from Wolverine (Massachusetts) Corporation for a heat recovery system as described in Proposal No. 5026-W-EKL, Rev. 3, to be delivered in 1994 in two phases to Patco's facility at 51 Ballou Road, Bristol, Rhode Island.  Wolverine Proctor & Schwartz, Inc. denies that it installed the heat recovery system purchased by

3

Patco.  Wolverine Proctor & Schwartz, Inc. denies the remaining allegations of this paragraph.

10.  Wolverine Proctor & Schwartz, Inc. admits a fire occurred at 51 Ballou Road, Bristol, Rhode Island on January 29, 2000, but lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph.

11.  Wolverine Proctor & Schwartz, Inc. denies that it was responsible for installing the electrical connections to interlock the thermal oxidizer, ventilation system and the conveyor.  Wolverine Proctor & Schwartz, Inc. also denies violating the 1985 edition of the National Fire Protection Association 86 standards.  Wolverine Proctor & Schwartz, Inc. lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph.

12.  Denied.

13.  Denied.

14.  Denied.

<u>Count I</u>

15.  Wolverine Proctor & Schwartz, Inc. restates and realleges its responses to the allegations set forth in paragraphs 1 through 14 of the Complaint.

16.  Denied.

17. The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

18. The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

19. The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

20. The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

21. The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

22. Denied.

<u>Count II</u>

23. The Court has granted Wolverine Proctor & Schwartz, Inc. summary judgment on Count II of the Complaint. To the extent that a response is required, Wolverine Proctor & Schwartz, Inc. restates and realleges its responses to the allegations set forth in paragraphs 1 through 22 of the Complaint.

24.   Wolverine Proctor & Schwartz, Inc. incorporates and restates its answer to paragraph 7 of the Complaint, but otherwise denies the allegations of this paragraph.

25.   Wolverine Proctor & Schwartz, Inc. lacks knowledge or information sufficient to admit or deny the condition in which goods sold to Patco in 1991 reached Patco, incorporates and restates its answer to paragraph 7 of the Complaint, and denies the remaining allegations of this paragraph.

26.   Wolverine Proctor & Schwartz, Inc. lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

27.   Denied.

28.   Denied.

29.   Denied.

30.   Denied.

Count III

31.   The Court has granted Wolverine Proctor & Schwartz, Inc. summary judgment on Count III of the Complaint.  To the extent that a response is required, Wolverine Proctor & Schwartz, Inc. restates and realleges its responses to the allegations set forth in paragraphs 1 through 30 of the Complaint.

32.   Wolverine Proctor & Schwartz, Inc. incorporates and restates its answer to paragraph 7 of the Complaint, but otherwise denies the allegations of this paragraph.

33.  The allegations of this paragraph state legal conclusions to which no response is required, but to the extent that a response is required they are denied.

34.  Denied.

35.  Denied.

36.  Denied.

Further answering, Wolverine Proctor & Schwartz, Inc. denies that Travelers Indemnity is entitled to the relief requested in clauses (a) through (d) of the unnumbered paragraph of Complaint that demands relief.

<u>DEFENSES</u>

<u>FIRST DEFENSE</u>

Plaintiff's Complaint is untimely and is barred by the applicable statute of limitations or statute of repose.

<u>SECOND DEFENSE</u>

Plaintiff's alleged injuries were caused, in whole or in part, by the negligence, contributory negligence, comparative negligence or fault of Plaintiff or its alleged subrogor Patco, such that Plaintiff's recovery is barred or is subject to reduction.

<u>THIRD DEFENSE</u>

Plaintiff has failed to make timely and adequate notice of any breach of warranty and/or failed to comply with the conditions precedent for the maintenance of this action such

that Defendant has been prejudiced by these failures and Plaintiff's claims are barred.

FOURTH DEFENSE

Plaintiff's alleged subrogor Patco knowingly assumed the risk of a perceived danger and/or unreasonably misused a product known to be in a defective and dangerous condition such that Plaintiff's recovery is barred.

FIFTH DEFENSE

Plaintiff is barred from recovery because it or its subrogor Patco has spoiled or permitted the spoliation of material evidence.

SIXTH DEFENSE

Plaintiff's claims are barred or its damages subject to reduction because the Plaintiff's damages, if any, concern risks for which it through its alleged subrogor Patco agreed, assumed, licensed or contracted to bear, including, but not limited to Patco's agreement to indemnify and hold Wolverine Proctor & Schwartz, Inc. ("Wolverine") harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Wolverine for personal injury or property damage arising out of the installation, maintenance or operation of the thermal oxidizer involved in this matter by Patco or others, whatever the cause or alleged cause of the personal injury or property damage may be.

## SEVENTH DEFENSE

The actions of which Plaintiff complains were known to and approved by its alleged subrogor Patco or Patco's agents or employees, singly or in combination, such that Plaintiff has waived its claims or ratified or authorized Defendant's conduct.

## EIGHTH DEFENSE

Plaintiff is barred from recovery on its claims because the doctrine of estoppel prohibits Plaintiff from insisting upon compliance with any duty that Plaintiff alleges Defendant failed to perform because Defendant acted based upon representations of Plaintiff's alleged subrogor Patco intended to induce reliance by Defendant upon which Defendant did in fact reasonably rely to its detriment.

## NINTH DEFENSE

Plaintiff has failed to reasonably mitigate its damages, if any, such that any recovery must be reduced.

## TENTH DEFENSE

Plaintiff's injuries, if any, were caused by the intervening, superseding or reasonably unforeseeable acts or omissions of others for whose conduct Defendant is not legally responsible.

ELEVENTH DEFENSE

Plaintiff's alleged subrogor Patco was not using the product in a reasonably foreseeable manner at the time of the alleged injury.

TWELFTH DEFENSE

Any danger presented by the product was known by or open and obvious to Plaintiff's alleged subrogor Patco and/or common knowledge in the relevant community such that Plaintiff's allegations of failure to warn or product defect are barred.

THIRTEENTH DEFENSE

Plaintiff's alleged damages, if any, are barred or subject to reduction because of the economic loss doctrine.

FOURTEENTH DEFENSE

Plaintiff's claims are barred because of a substantial and material modification or alteration of the product at the time of the alleged loss.

FIFTEENTH DEFENSE

Plaintiff's claims are barred because of the failure of Plaintiff's alleged subrogor Patco to install, assemble, wire, construct, operate or maintain the product as designed or instructed and/or in a reasonably foreseeable way.

SIXTEENTH DEFENSE

Any judgment entered for the Plaintiff must be setoff or recouped entirely because of Plaintiff's and/or Patco's

contractual obligation to indemnify Wolverine for all liability, loss, cost, damage or expense attributable to this action.

SEVENTEENTH DEFENSE

Plaintiff's claims are barred or recovery on its claims must be reduced because the doctrines of estoppel and/or unjust enrichment impose or require Plaintiff to assume the duties of its subrogor Patco with respect to Patco's contractual obligation to indemnify Wolverine for all liability, loss, cost, damage or expense attributable to this action because, among other reasons, Patco would not have incurred any such obligation were it not for the actions of its subrogee, delegate, fiduciary and/or authorized agent Plaintiff in prosecuting this action.

WHEREFORE, Wolverine Proctor & Schwartz, Inc. requests that this Court:

a.   Order judgment for Wolverine Proctor & Schwartz, Inc. with respect to all claims set forth in Plaintiff's complaint;

b.   Award Wolverine Proctor & Schwartz, Inc. its costs and reasonable attorney's fees; and

c.   Grant such other further relief that the Court deems just and proper.

**JURY DEMAND**

Wolverine Proctor & Schwartz, Inc. demands a jury trial of Plaintiff's complaint of all claims that may be so tried.

11

## COUNTERCLAIM AND JURY DEMAND

### PARTIES

1.    Wolverine Proctor & Schwartz, Inc. is a Delaware corporation with a principal place of business at 51 East Main Street, Merrimac, Essex County, Commonwealth of Massachusetts. For all purposes material to this Counterclaim, it is the successor in interest to Wolverine (Massachusetts) Corporation and before that Wolverine Corporation (collectively "Wolverine")

2.    Travelers Indemnity Company of Illinois ("Travelers Indemnity") is or was an Illinois business corporation with a principal place of business in Naperville, Illinois.  On information and belief, Travelers Indemnity effective January 1, 2004, changed its name to or was merged into Travelers Property Casualty Company of America, a Connecticut business corporation with a principal place of business at One Tower Square, Hartford, Connecticut 01683.  Travelers Indemnity alleges in its complaint against Wolverine that it is subrogated to the rights of Patco Corp. ("Patco"), which was a Rhode Island corporation with a principal place of business at 51 Ballou Boulevard, Bristol, Rhode Island.

### JURISDICTION

3.    The Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different states, and pursuant to 28 U.S.C. § 1367 because the matter is so related to claims in Travelers Indemnity's action that it forms a part of the same case or controversy.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c).

**FACTS**

**Patco Needs To Control Pollution From Its Manufacture of Tape**

5.    At times material to this complaint, Patco manufactured pressure-sensitive adhesive tapes in a Rhode Island factory through a process that emitted solvent fumes containing flammable volatile organic compounds ("VOCs") and exhausted those fumes into the air outside its factory.

6.    Patco's tape manufacturing process consisted of four steps: (1) applying flammable adhesive to a tape backing or "web" using a coating head machine; (2) drying the adhesive in an industrial oven that emitted VOCs as the tape cured; (3) winding up the film into rolls; and (4) cutting the rolls into narrow rolls of tape (the "process line").

7.    Patco knew that an excessive concentration of VOCs in a confined area could result in a fire or explosion.

8.    At times material to this complaint, Wolverine designed and manufactured pollution control devices known as thermal oxidizers.  The thermal oxidizer, also known as a fume

incinerator, burns otherwise harmful pollutants exhausted from industrial ovens and renders them inert.

9.   Patco through its president William Wilbur contacted Wolverine in Massachusetts with respect to the purchase of a fume incinerator when it learned that permits required under the Clean Air Act Amendments of 1990 required Patco to purchase equipment to control the VOC pollution created as part of its tape manufacturing process.

## Fume Incinerator Contract

10.   By written proposal dated on or about January 22, 1991, Wolverine, then known as Wolverine Corporation, proposed to sell Patco a thermal oxidizer (the "fume incinerator"), an exhaust blower to convey exhaust from Patco's process line to the fume incinerator, an exhaust stack for the treated exhaust to vent to atmosphere, post fume incinerator ductwork including motorized dampers to regulate the processed hot gas feedback to Patco's process line, and a free-standing control panel (the "Fume Incinerator Equipment").  Patco accepted this proposal (the "Fume Incinerator Contract").

11.   The Fume Incinerator Contract provided that the control panel included "all required interlocks, relays and alarms."

12.   Interlocks or interlock contacts are the terminal blocks in an electrical control system designed to accept

14

external electrical wiring to establish an electrical circuit with one or more control systems.

13.   Interlocking is a process that involves making electrical connections between two or more control systems to establish electrical dependency between or among different control systems.

14.   At the bottom of the first page of the Fume Incinerator Contract was the legend:  "All orders based on this quotation are subject to the acceptance by Wolverine Corporation.  The conditions on the reverse side form a part of this quotation."

15.   The conditions on the reverse side of the first page of the Fume Incinerator Contract were entitled "Wolverine Corporation TERMS AND CONDITIONS" ("Terms and Conditions").

16.   Section 6 of the Terms and Conditions stated in relevant part:  "Buyer agrees to indemnify and hold Seller harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer or others, whatever the cause or alleged cause of the personal injury or property damage may be."

17.   Section 18 of the Terms and Conditions stated: "The Sales Agreement shall in all respects be governed by, and

construed in accordance with, the laws of the Commonwealth of Massachusetts."

18.   Patco's president William Wilbur and another Patco officer, agent or employee inspected the Thermal Oxidizer Equipment at Wolverine's factory in Merrimac, Massachusetts prior to shipment.

19.   On April 17, 1991, Wolverine delivered the fume incinerator and related equipment covered by the Fume Incinerator Contract to Patco, F.O.B., a common carrier, in Merrimac, Massachusetts.

20.   Patco, now XYZ Tape, and Wolverine entered into an enforceable contract in which Patco agreed to indemnify and to hold Wolverine harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Wolverine for personal injury or property damage arising out of the installation, maintenance or operation of the Fume Incinerator Equipment by Patco or others, whatever the cause or alleged cause of the personal injury or property damage may be.

### Heat Recovery Contract

21.   By written proposal dated November 29, 1993, Wolverine, then known as Wolverine (Massachusetts) Corporation, proposed to sell to Patco a heat recovery system in two phases, including a filter box; hot gas ductwork and a hot gas blower including hot gas return dampers and pneumatic actuators; new

exhaust ductwork; a heat exchanger and exhaust stack; a fresh air blower including inlet ductwork; a supply blower; ductwork and dampers for warehouse comfort heat including pneumatic actuators and temperature controller ("Heat Recovery Equipment"), which Patco accepted ("Heat Recovery Contract"). The Heat Recovery Equipment was intended to take the hot gas treated by the fume incinerator and, through the use of a heat exchanger, indirectly heat air blown from an outside fan that, among other things, would be used to heat Patco's industrial oven.

22.  As did the Fume Incinerator Contract before it, the Heat Recovery Contract had at the bottom of the main page the following legend: "All orders based on this quotation are subject to the acceptance by Wolverine (Massachusetts) Corporation.  The conditions on the reverse side form a part of this quotation."

23.  The relevant conditions on the reverse side of the first page of the Heat Recovery Contract were the same conditions as the Terms and Conditions included in the Fume Incinerator Contract including:  "Buyer agrees to indemnify and hold Seller harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equipment by Buyer

17

or others, whatever the cause or alleged cause of the personal injury or property damage may be."

24.  On or about March 1994 and December 1994, Wolverine arranged for the delivery the Heat Recovery System Equipment to Patco in two stages.

25.  Patco, now XYZ Tape, and Wolverine entered into an enforceable contract in which Patco agreed to indemnify and to hold Wolverine harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Wolverine for personal injury or property damage arising out of the installation, maintenance or operation of the Heat Recovery Equipment by Patco or others, whatever the cause or alleged cause of the personal injury or property damage may be.

### Travelers Indemnity Makes Claims Against Wolverine

26.  Travelers Indemnity issued to Patco, on information a belief, a property insurance policy that was effective, among other times, during January 2000.

27.  On January 29, 2000, while Patco was operating its process line as well as the Fume Incinerator Equipment and the Heat Recovery Equipment, a fire and/or explosion occurred inside Patco's Bristol, Rhode Island factory that caused Patco property damage (the "incident" or the "loss").

28.   Individuals at Patco informed Travelers Indemnity that a failure of the Fume Incinerator Equipment and/or the Heat Recovery Equipment to exhaust VOCs caused the incident.

29.   Beginning in March of 2000 and at various times thereafter, Travelers Indemnity, with the knowledge and consent of Patco, began making claims against Wolverine for property damage caused by the incident arising out of the alleged installation, maintenance or operation of the Fume Incinerator Equipment and/or Heat Recovery Equipment by Wolverine or others.

30.   Travelers Indemnity commenced a civil action against Wolverine in this Court, Civil Action No. 03-10164-RWZ (the "Travelers Indemnity Action"), alleging damages in the amount of $977,321.32, plus interest, expenses, costs and attorney fees.

31.   The Travelers Indemnity Action asserted three counts against Wolverine: negligence, strict liability, and breach of implied warranty.

32.   Travelers Indemnity, with the knowledge and consent of Patco, claims or has claimed that the damages attributable to the incident arose out of Wolverine's alleged installation of the Fume Incinerator Equipment in 1991 and/or Wolverine's alleged installation of the Heat Recovery Equipment on or about March 1993 and/or January 1995.

33.   Travelers Indemnity, with the knowledge and consent of Patco, also claims or has claimed that the damages attributable

to the incident arose out of the operation of the Fume
Incinerator Equipment and/or Heat Recovery Equipment by Luis
Toro and/or others on January 29, 2000.  Travelers Indemnity
claims that this incident occurred when Luis Toro shut off the
power to the control panel of the fume incinerator, which panel
was part of the Fume Incinerator Equipment.  This, it asserts,
caused the exhaust fan supplied with the Wolverine Fume
Incinerator Equipment to shut off, improperly causing the
accumulation of combustible fumes that caused the incident.

34.  Significant expenses of over approximately $263,377.13
have been incurred by Wolverine and/or on its behalf by its
subrogee Great American Indemnity Insurance Company in defending
against Travelers Indemnity's claims, including the Travelers
Indemnity Action, including, through September 30, 2004,
attorney fee expenses of approximately $235,930.00, consultant
expenses of approximately $6,290.32, and expert witness and
other expenses of approximately $21,156.81.

## COUNT I

35.  Wolverine repeats its allegations and incorporates
herein by reference paragraphs 1-34 of the Counterclaim.

36.  Travelers Indemnity, as subrogee of Patco, has
asserted claims against Wolverine based upon the business
relationship between Patco and Wolverine that has required

Wolverine to incur substantial costs and expenses defending against those claims.

37.    In the course of their business relationship, Patco and Wolverine entered into enforceable contracts in which Patco agreed to indemnify and to hold Wolverine harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Wolverine for personal injury or property damage arising out of the installation, maintenance or operation of the Fume Incinerator Equipment and the Heat Recovery Equipment by Patco or others, whatever the cause or alleged cause of the personal injury or property damage may be.

38.    Travelers Indemnity expressly promised Patco intending that Patco rely upon such promise, or impliedly promised Patco as part of the implied covenant of good faith and fair dealing, and/or negligently or knowingly misrepresented to Patco that it would pursue subrogation only to help Travelers Indemnity recover money it paid to Patco, including Patco's deductible, from other parties responsible for the loss but would not pursue subrogation if Patco could be held responsible for the loss.

39.    Patco reasonably relied upon Travelers Indemnity's express or implied promises or misrepresentations to execute subrogation receipts in favor of Travelers Indemnity that provided for the assignment and transfer of "all rights, claims,

demands and interest" which Patco may have against any party
through the occurrence of the incident.

40.   Travelers Indemnity accepted such assignment and
transfer under circumstances in which it had assumed a special
or fiduciary relationship or relationship of trust and
confidence or authorized agency to Patco and/or its officers and
stockholders such that pursuit of litigation in Patco's name
that would or might increase the liability of Patco or impose
upon Patco an obligation to pay money damages amounts to a
breach or violation of Travelers Indemnity's obligations to
Patco, and/or of Travelers Indmenity's obligation to Patco under
the implied covenant of good faith and fair dealing, and/or
would unjustly enrich Travelers Indemnity at the expense of
Patco.

41.   Travelers Indemnity has become, by law or equity,
obligated, or should be estopped from denying its obligation, to
perform the duties of Patco with respect to the indemnification
of Wolverine, even though such delegation or imposition of or
liability for performance does not relieve Patco of its
indemnification duties with respect to Wolverine, because
Travelers Indemnity knew of, or in the exercise of due care
should have known of, or recklessly proceeded to sue Wolverine
without knowing of the terms of the Fume Incinerator Contract

and Heat Recovery Contract with respect to the indemnity of
Wolverine.

42.  Patco would not have incurred or realized liability in
damages to Wolverine with respect to the indemnity of Wolverine
but for the improper, negligent, reckless or unjust conduct of
Travelers Indemnity in pursing the Travelers Indemnity Action.

43.  Travelers Indemnity, which has asserted alleged rights
of Patco arising from the business relationship with Wolverine,
is obligated or is estopped from denying its obligation to
indemnify and to hold Wolverine harmless from and against all
liability, loss, cost, damage or expense attributable to any
claim against Wolverine for personal injury or property damage
arising out of the installation, maintenance or operation of the
Fume Incinerator Equipment and the Heat Recovery Equipment by
Patco or others, whatever the cause or alleged cause of the
personal injury or property damage may be, such that Travelers
Indemnity is liable to Wolverine for the attorney fee expenses,
expert witness expenses, cost expenses and damage expenses
incurred by Wolverine or on Wolverine's behalf or imposed on
Wolverine in the Travelers Indemnity Action, this counterclaim
and/or related litigation pending before the United States
District Court for the District of Massachusetts, Civil Action
No. 01:04-CV-12189-RWZ.

## COUNT II

44.  Wolverine repeats its allegations and incorporates herein by reference paragraphs 1-43 of the Counterclaim.

45.  Travelers Indemnity's claims against Wolverine, including its implied warranty claims, arise in whole or in part from the sale of goods under the Fume Incinerator Contract and the Heat Recovery Contract such that, under the circumstances, the assignment by Patco and the acceptance by Travelers Indemnity of "all rights" under said contracts operates, by law or equity, including but not limited to Massachusetts General Laws ch. 106, § 2-210, not only as an assignment of rights but as a delegation of performance with respect to the obligation to indemnify Wolverine, even though such delegation or imposition of or liability for performance does not relieve Patco of its indemnification duties with respect to Wolverine.

46.  Travelers Indemnity has breached contract obligations to Wolverine assumed by it causing Wolverine substantial damage, including but not limited to attorney fee expenses, expert witness expenses, and cost expenses incurred in defense of the Travelers Indemnity Action and/or in obtaining partial summary judgment in Wolverine's favor in defense of the Travelers Indemnity Action, and/or in prosecuting this counterclaim and/or related litigation pending before the United States District

Court for the District of Massachusetts, Civil Action No. 01:04-CV-12189-RWZ.

47.  WHEREFORE, Wolverine Proctor & Schwartz, Inc. requests that this Court:

a.  Order judgment for Wolverine Proctor & Schwartz, Inc. with respect to all claims set forth in the complaint in the Travelers Indemnity Action;

b.  Order that Travelers Indemnity be enjoined or estopped and must indemnify and to hold Wolverine harmless from all liability, loss, cost, damage or expense attributable to the claims set forth in the Complaint of the Travelers Indemnity Action;

c.  Order judgment for Wolverine Proctor & Schwartz, Inc. in an amount that will fully and fairly compensate it for its losses and damage, including its reasonable attorney fee expenses, expert witness expenses, cost expenses, and interest;

d.  Award Wolverine Proctor & Schwartz, Inc. its costs, expenses, reasonable attorney fees, and interest by law incurred in prosecuting this counterclaim; and

e.  Grant such other further relief that the Court deems just and proper.

## JURY DEMAND

Wolverine Proctor & Schwartz, Inc. demands a trial by jury on all issues that may be so tried.

WOLVERINE PROCTOR & SCHWARTZ, INC.

by its attorneys,


 /s/ Thomas G. Cooper
Thomas G. Cooper
BBO No. 541829

SMITH & DUGGAN LLP
Lincoln North
55 Old Bedford Road
Lincoln, Massachusetts 01773-1125
(617) 228-4400


 /s/ Matthew J. Walko
Matthew J. Walko
BBO No. 562172

SMITH & DUGGAN LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 228-4400


Dated:  December 20, 2004