LEXSEE 2005 U.S.DIST. LEXIS 19713

FEDERAL INSURANCE COMPANY v. HPSC, INC.

CIVIL ACTION NO. 02-CV-11822-RGS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2005 U.S. Dist. LEXIS 19713

September 12, 2005, Decided

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Federal Insurance Co., Plaintiff: Bradford R. Carver, Hinshaw & Culbertson LLP, Boston, MA.

For HPSC, Inc., Defendant: William Shields, Day, Berry & Howard One International Place, Boston, MA.

For HPSC, Inc., Counter Claimant: Mark E. Swirbalus, William Shields, Day, Berry & Howard, Boston, MA.

For Federal Insurance Co., Counter Defendant: Bradford R. Carver, Hinshaw & Culbertson LLP, Boston, MA.

**JUDGES:** Richard G. Stearns, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Richard G. Stearns

**OPINION:**

    FINDINGS OF FACT AND RULINGS OF LAW AFTER A TRIAL WITH AND WITHOUT A JURY

STEARNS, D.J.

    Based on the evidence presented at the non-jury trial and at the jury trial, the jury's verdict, the stipulations of the parties, and the pleadings and exhibits presented to the court and the jury, I find the following facts to be true. n1

>     n1 The case was first tried to a verdict before a jury on the issue of materiality, the jury ruling in favor of defendant HPSC, Inc. In the migration to electronic filing, the case -- in which a c. 93A claim remained pending -- was mistakenly consolidated with other cases in which plaintiff Federal Insurance Company is a party. At the parties' request, the court now addresses HPSC's claim brought under the business-to-business provisions of the Massachusetts Consumer Protection Act, *G.L. c. 93A, ß 11*.

[*2]

    1. The case arises out of a $ 4.7 million crime claim and property loss reported on May 28, 2002, by HPSC, Inc. (HPSC) to its insurer, Federal Insurance Company (Federal), pursuant to the provisions of an executive protection policy. n2 Federal had insured HPSC against defalcations by employees continuously since 1988. In essence, the loss resulted from an embezzlement scheme orchestrated by Kevin Morrison, the Executive Vice President of ACFC, a subsidiary of HPSC. The scheme was uncovered as a result of an investigation undertaken at HPSC's request by PricewaterhouseCoopers (PWC). In analyzing the reasons why the scheme had gone undetected for five years, PWC's investigative report noted that Morrison had reconciled at least one ACFC account over which he had signatory authority. Question 12 of Federal's executive protection policy application asked whether employees who reconciled monthly

2005 U.S. Dist. LEXIS 19713, *

bank statements "also either sign checks, handle deposits or have access to check signing machines or signature plates." n3 HPSC had answered the question "No." Based on the contradiction between the PWC report and the answer to Question 12, Anna Mackay, a Federal claims examiner, tentatively [*3] concluded that Morrison had signed checks and reconciled the statements of all of ACFC's bank accounts. n4 The conclusion was based on a misreading of the PWC report. Mackay drafted a letter to HPSC questioning the discrepancy between the PWC report and its answer to question 12. For reasons that are not apparent in the record, the letter was never sent. No other official of Federal attempted to contact HPSC to obtain additional information.

> n2 HPSC submitted a formal Proof of Loss to Federal on July 9, 2002.

> n3 As the court pointed out in addressing Federal's motion for summary judgment, Federal's antiquated questionnaire failed to ask about wire transfer authority, the means used by Morrison to siphon funds from the ACFC accounts. Federal makes the argument that ordering the transfer of funds by wire is the functional equivalent of writing a check. While that is true to the extent that both actions are fairly characterized as an order to a bank to pay funds to a third party, they would not be understood as interchangeable or equivalent terms by anyone unschooled in the intricacies of banking law. An insurer is held to a reasonable standard of precision in its choice of words and bears the brunt of any doubts created by an ambiguity of its own making. *Camp Dresser & McKee, Inc. v. Home Insurance Co., 30 Mass. App. Ct. 318, 324, 568 N.E.2d 631 (1991).*

[*4]

> n4 This mistaken perception was shared by John Tomaine and Malcolm Burton, the senior officials at Federal who authorized the lawsuit. Their belief rested solely on Mackay's reading of the PWC report, as reported to Tomaine and relayed by Tomaine to Burton. Neither man personally read the PWC report or examined any other evidence. Consequently, the record does not support Federal's proposed further finding of fact that "Federal understood from the outset of this case that Ms. McGuire reconciled the bank accounts for ACFC, with the exception of the petty cash account. . . ."

2. Mackay discussed her suspicions with Kenneth West, a fellow claims examiner. He agreed that there appeared to be a misrepresentation on the application. Mackay then spoke to a Federal in-house attorney who referred her to Federal's outside counsel.

3. On September 17, 2002, Federal brought this declaratory judgment action seeking rescission of HPSC's policy based on intentional misrepresentation (Count I) and a disavowal of coverage in the absence of evidence that the loss was caused by "theft" (Count II). n5 Other than [*5] consulting a Federal underwriter as to the hypothetical increase in risk entailed by the failure of an insured to segregate employee check writing and reconciliation duties, no additional investigation was undertaken by Federal or its outside counsel before bringing the Complaint. The decision to file suit was influenced in part by statements made by HPSC's counsel suggesting that HPSC was on the verge of filing a suit of its own.

> n5 After Morrison and his accomplice, Mildred Miller, pled guilty in federal court to wire fraud In November of 2002 and May of 2003, respectively, Federal sought to dismiss Count II of the Complaint (disavowing coverage because of a supposed absence of any showing of theft on Morrison's part) without prejudice. The court allowed the motion, instructing however that it be entered with prejudice.

4. Four months after filing suit, Federal was alerted by HPSC to the fact that Morrison had written checks and reconciled the statements of only one of ACFC's sixteen bank accounts, an imprest [*6] petty cash fund with a balance ceiling of $ 10,000. n6 Federal was also told that Sylvia McGuire, another ACFC employee (who was not accused of any wrongdoing), reconciled the remaining fifteen accounts. n7

Case 1:04-cv-12189-RWZ   Document 38-3   Filed 10/25/2005   Page 3 of 6

Page 3
2005 U.S. Dist. LEXIS 19713, *

> n6 HPSC's counsel, William Shields, relayed this information to Federal's outside counsel, CharCretia Di-Bartolo and Bradford Carver, by telephone on January 30, 2003, and by a letter of February 6, 2003. See June 16, 2004 Affidavit of William Shields, Esq.

> n7 It is undisputed that McGuire did not "sign checks, handle deposits or have access to check signing machines or signature plates."

5. Despite knowledge that the fundamental assumption of its lawsuit was flawed, Federal shifted to the position that Morrison's ultimate supervisory authority over ACFC's bank accounts and its accounting staff (including McGuire) amounted to the functional equivalent of writing checks and reconciling statements. When at summary judgment, the court pointed out to Federal that its questionnaire had asked about employees [*7] who actually signed checks and reconciled bank statements, and had not asked about employees who had the authority to do so (even if not exercised), Federal migrated to the contention that Morrison's activities with respect to the petty cash account were sufficient to sustain its misrepresentation claim. n8

> n8 Although not entirely clear from the record, Morrison appears to have taken care to keep the petty cash account in a positive balance in order to avoid bouncing a check or triggering an overdraft notice that might have led to the unveiling of his scheme. Evidence was presented at trial that Richard Mount, the President of ACFC, personably reviewed disbursements from the petty cash account and personally authorized its periodic replenishment.

6. The case was tried to a jury on the discrete issue of the materiality of any increase in risk to Federal created by HPSC's failure to disclose that Morrison had exercised check signing and reconciliation authority over ACFC's petty cash account. n9 The jury found [*8] in HPSC's favor.

> n9 The jury was instructed as to the following three legal principles governing misrepresentations by an insured. (1) "Statements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued." *Ayers v. Massachusetts Blue Cross, Inc., 4 Mass. App. Ct. 530, 536, 352 N.E.2d 218 (1976)*. (2) A misrepresentation permits an insurer to void the policy if a material misstatement is made with actual intent to deceive, or if the matter represented increased the risk of loss. *G.L. c. 175, ß 186*. (3) A misstatement is material if it influences the amount of the premium. *Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128, 680 N.E.2d 42 (1997)*.

RULINGS OF LAW

An insurer's failure to conduct a reasonable investigation of the facts underlying an insured's claim or to make a reasonable offer of settlement where issues of liability are clear may constitute an unfair and deceptive [*9] business practice within the meaning of *G. L. c. 93A, ß 2. Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564, 750 N.E.2d 943 (2001)*. "To be held unfair and deceptive under c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness." *VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 620, 642 N.E.2d 587 (1994)*. "An act or practice may be unfair' within the statutory meaning [of *c. 93A, ß ß 2* and *11*] without being deceptive or fraudulent." *Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729, 532 N.E.2d 660 (1989)*. See also *V.S.H. Realty, Inc., v. Texaco, Inc., 757 F.2d 411, 418 (1st Cir. 1985)* (the protections of c. 93A are not limited to "small, unsophisticated businesses.").

Inherent in an insurance contract is the insurer's duty of good faith in its dealings with its insured. *Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 303-304, 636 N.E.2d 247 (1994)*. *G.L. c. 176D, ß 3(9)* [*10] , defines certain "claim settlement practices" as unfair and deceptive. These include the refusal to pay claims "without conducting a reasonable investigation based upon all available information," id. at *(d)*, and "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Id. at *(f)*. A single act (as opposed to a pattern of wrongful conduct) can constitute a violation of *G.L. c. 176D ß 3(9)*. *Hopkins, 434 Mass. at 561-562*. While *G. L. c.*

Case 1:04-cv-12189-RWZ   Document 38-3   Filed 10/25/2005   Page 4 of 6

Page 4
2005 U.S. Dist. LEXIS 19713, *

*93A, ß 11*, does not in so many words incorporate *c. 176D ß 3(9)*, it is established law that a violation of the latter statute may constitute actionable conduct under the former. n10 *R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 78, 754 N.E.2d 668 (2001)*. Finally, in a *G. L. c. 93A, ß 11* context, a showing that an unfair or deceptive act was a proximate cause of a loss of money or property is an essential element of the action. *Massachusetts Farm Bureau Federation, 403 Mass. at 730*; *Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 290 n.7, 607 N.E.2d 737 (1993)*. [*11] Damages may include attorneys' fees and costs incurred in defending a meritless suit. *Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63, 712 N.E.2d 93 (1999)*.

> n10 *Section 11* (unlike *section 9*) does not create an independent right to recover damages for violations of *G.L. c. 176D ß 3(9)*, that are not also shown to have been in violation of *G.L. c. 93A, ß 2*. *Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 754, 610 N.E.2d 912 (1993)*.

The obligation of an insurer concerning settlement is to act in good faith. *DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 97, 449 N.E.2d 1189 (1983)*. A negligent failure to settle where a prudent insurer would have settled is sufficient to establish liability. *Hartford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 120, 628 N.E.2d 14 (1994)*. An insurer is not required to put a fair and reasonable offer on the table until liability and damages are apparent. *Bobick v. U.S. Fid. & Guar. Trust, 439 Mass. 652, 659, 790 N.E.2d 653 (2003)*. [*12] If an insurer has a reasonable good faith belief that it is not obligated to make a payment to a claimant asserting an unfair settlement practice and takes active steps to resolve the dispute, it is not liable even if its action is "ultimately held to be based on a misinterpretation of the law." *Premier Ins. Co. v. Furtado, 428 Mass. 507, 510, 703 N.E.2d 208 (1998)*. "A plausible, reasoned legal position that may ultimately turn out to be mistaken -- or simply, as here, unsuccessful -- is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." *Guity v. Commerce Insurance Co., 36 Mass. App. Ct. 339, 343, 631 N.E.2d 75 (1994)*.

If a violation of *G.L. c. 93A, ß 2* is established, a plaintiff must be awarded its reasonable attorney's fees and costs, including any fees incurred on appeal. *Yorke Mgmt. v. Castro, 406 Mass. 17, 19, 546 N.E.2d 342 (1989)*. Multiple damages may also be awarded if a c. 93A violation was willful or knowing. *G.L. c. 93A, ß 11(5)*.

> Precisely what constitutes a "willful" or "knowing" violation has been discussed in cases of alleged affirmative misrepresentations. [*13] "To prove that the defendant committed a knowing violation by fraud, the plaintiff may show that agents of the defendant knew that the fact they represented to be true was not true. Similarly, to prove that the defendant committed a willful violation by fraud, the plaintiff may prove that agents of the defendant knew they did not know whether the fact represented was true or false -- that they made the representation without knowing whether it was true or false and with reckless disregard for whether it was true or false. Though not the equivalent of proving the state of mind of knowing the falsity of the fact represented, this is nevertheless proof of a culpable state of mind -- the state of mind of willful disregard for truth or falsity of the fact represented." *Shaw v. Rodman Ford Truck Center, Inc., 19 Mass. App. Ct. 709, 711-712, 477 N.E.2d 413 (1985)*, quoting from and adopting the reasoning of Computer *Sys. Engr., Inc. v. Qantel Corp., 571 F. Supp. 1365, 1375 (D. Mass. 1983)*, affd., *740 F.2d 59 (1st Cir.1984)*.

*Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 375-376, 568 N.E.2d 1163 (1991)*, reversed in [*14] part on other grounds, *411 Mass. 807, 586 N.E.2d 962, 586 N.E.2d 975 (1992)*. Chapter 93A does not mandate the automatic imposition of multiple damages for any misrepresentation; "rather, it is only when the acts of misrepresentation amount to intentional fraud' that the severe sanction is appropriate." *VMark Software, 37 Mass. App. Ct. at 623*. "It is only in the rare and exceptionally egregious case that such a finding [of bad faith] should be made. . . . bad faith is not simply bad judgment.'" *Parker v. D'Avolio, 40 Mass. App. Ct. 394, 402, 664 N.E.2d 858 (1996)*. "[Bad faith] is not merely negligence. It implies a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will." *Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416, 8 N.E.2d 895 (1937)*. Where multiplication of an award is appropriate, "the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence. . . ." *G. L. c. 93A, ß 11*. n11

Case 1:04-cv-12189-RWZ   Document 38-3   Filed 10/25/2005   Page 5 of 6

Page 5
2005 U.S. Dist. LEXIS 19713, *

n11 The rule is different when a dispute is resolved outside the courtroom and "there is no judgment' on which to base the multiple damage calculus." *Clegg v. Butler, 424 Mass. 413, 424, 676 N.E.2d 1134 (1997)*. In that instance, the correct measure of damages is the interest lost on the settlement amount because of unfair delay on the part of the insurer. See *Hopkins, 434 Mass. at 560-561*.

[*15]

ULTIMATE CONCLUSIONS OF FACT AND LAW

1. Federal's initial determination that HPSC's misrepresentation (innocent or not) regarding Morrison's check writing and reconciliation authority on the policy application relieved it of liability for HPSC's claim was based on a good faith, albeit mistaken, reading of the PWC report.

2. Federal's decision to file a lawsuit seeking rescission of the policy without asking HPSC to respond to its concerns with respect to any potential misrepresentation and without making any inquiry into the underlying facts breached its statutory duty under *G.L. c. 176D, ß 3(9)(d)*, to conduct "a reasonable investigation based upon all available information" before rejecting a claim. The decision to file suit without notice to HPSC was motivated, in part, by Federal's desire to gain tactical advantage by winning the race to the courthouse.

3. Federal's failure to make a reasonable offer of settlement upon learning in February of 2003 that the fundamental premise of its lawsuit was erroneous -- that Morrison had exercised check writing and reconciliation authority over all of ACFC's accounts rather than simply the petty cash fund -- [*16] breached its statutory duty under *G.L. c. 176D, ß 3(9)(f)*, "to effectuate prompt, fair and equitable settlements of claims."

4. Federal's breach of its statutory duties under *G.L. c. 176D, ß 3(9)(d)&(f)*, constituted an unfair business practice within the meaning of *G.L. c. 93A, ß 2*, and therefore gives rise to a cause of action under *G.L. c. 93A, ß 11*.

5. As a result of Federal's breach of its statutory duties, HPSC was denied the $ 1,000,000 that it was due under the policy. n12

n12 I agree with HPSC that under the terms of section 18 of the policy the $ 25,000 deductible is to be subtracted from the amount of the loss and not from the policy limits.

6. Federal's conduct in this regard, while not motivated by a dishonest purpose, spite, or ill will, was after February 6, 2003, a knowing or willful breach of its duty of good faith. n13 These are sufficient grounds to merit a doubling of the damages incurred [*17] by HPSC.

n13 I recognize that Federal did not stand in the shoes of a fiduciary with respect to HPSC. See *Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 381, 778 N.E.2d 16 (2002)*. But HPSC was no stranger to Federal, having purchased insurance from Federal continuously for some fourteen years. Given this longstanding relationship, one would expect at least some consideration by Federal of the interests of a loyal customer. Federal's lack of good faith is illustrated not only by the race to litigate and the stubborn refusal to admit error, but also by Count II of the original Complaint, which implausibly questioned whether Morrison's peculations amounted to a "theft" within the meaning of the policy. Although Federal eventually moved to dismiss the Count without prejudice (corrected by the court to a dismissal with prejudice), HPSC is correct in its assertion that the Count should never have been brought.

7. HPSC's damages are to be calculated as follows. The jury has determined by its verdict [*18] that HPSC is entitled to recover the $ 1,000,000 in policy proceeds that are at issue. n14 HPSC by reason of its having prevailed on its G.L. c. 93A claim is also entitled to recover its reasonable attorneys' fees and costs. Attorneys' fees and costs incurred subsequent to February 6, 2003, the date on which Federal learned that its lawsuit was fundamentally flawed, are to be treated as actual damages. The total of actual damages will be doubled in calculating a final award.

n14 Federal does not dispute the fact that HPSC's total loss is far in excess of the $ 1,000,000 policy limit.

ORDER

For the foregoing reasons, judgment will enter for HPSC. As the prevailing party, HPSC will within thirty (30) days of the date of this Order submit a proposed form of final judgment together with a petition for payment of its reasonable attorneys' fees and costs. Federal will have fifteen (15) days to file any objection to the fee petition and/or the proposed form of final judgment.

SO ORDERED.

Richard G. Stearns [*19]

UNITED STATES DISTRICT JUDGE