# SMITH & DUGGAN LLP

ATTORNEYS AT LAW

TWO CENTER PLAZA
BOSTON, MA 02108-1906
TELEPHONE: (617) 248-1900
FACSIMILE: (617) 248-9320

Gerard A. Butler, Jr.                                                        Gerard.Butler@SmithDuggan.com

November 14, 2003

*via hand delivery*

Danielle Andrews Long, Esq.
Robinson & Cole LLP
One Boston Place
Boston, MA 02108-4404

> Re:   Travelers Indem. Co. of Ill. *ex rel* Patco Corp. v.
>       Wolverine (Massachusetts) Corp.
>       United States District Court,
>       D. Mass. C.A. No. 03-10164-RWZ

Dear Danielle:

Please find enclosed Defendant's Third Rule 26(a)(1) Disclosure.  The documents are identified as WPS000620 through WPS001373, DLT000001 through DLT000042, and DEM000205 through DEM000213.  Additionally, I have enclosed documents labelled WPS00006A, WPS00039A, and WPS00119A.  These three documents contain the terms and conditions that were part of the proposal nos. 4673 and 5026 sent to Patco by Wolverine (the "proposals").  They were included on the reverse side of the first proposal page and were referenced by the language "The conditions on the reverse side form a part of this quotation." The proposals were for the thermal oxidizer and the heat exchanger systems purchased by Patco. The terms and conditions contained in WPS00006A, WPS00039A, and WPS00119A are fair and accurate copies of the terms and conditions for the proposals.

Sincerely,

Gerard A. Butler, Jr.

Enclosures

Wolverine Corporation

**TERMS AND CONDITIONS**

WPS 00039A

1. ACCEPTANCE BY BUYER: Wolverine Corporation, [formerly American Tool and Machine Company] ("Seller") hereby offers to sell to the addressee named on the face hereof (the "Buyer") the equipment listed on the face hereof (the "Equipment") for the price(s) indicated, on the express condition that the Buyer agrees to accept and be bound by all the terms and conditions herein. Unless withdrawn or modified by Seller this offer may be accepted by Buyer by any of the following: (a) written, telephonic or telegraphic acceptance received by Seller within 30 days unless otherwise specified, or (b) shipment by Seller of and Buyer's acceptance of or payment for, all or any of the Equipment. A response by Buyer in any of the fore-going manners shall (subject to the provisions of Clause 3 hereof) constitute acceptance by Buyer of all terms and conditions hereof and (unless already confirmed in the manner hereafter indicated) further constitutes Buyer's agreement to confirm such acceptance by promptly sending this form, duly signed by Buyer, to Seller.

2. SALES AGREEMENT: The agreement between Seller and Buyer (the "Sales Agreement") with respect to the Equipment shall consist of the terms and conditions contained herein together with any modifications or additions thereto mutually agreed to in writing by Seller and Buyer. The Sales Agreement, as modified or supplemented as provided herein, shall constitute the entire agreement of Seller and Buyer with respect to the transaction contemplated hereby. No prior or contemporaneous courses of dealing or written or verbal agreements, to the extent that they differ in any way from the written terms and conditions of the Sales Agreement, shall be binding on the Seller or be construed to alter, repeal or invalidate the Sales Agreement.

3. PAYMENT AND CREDIT: Terms of payment (unless otherwise provided on the face hereof); a discount of one half of one percent (0.5%) for cash payment in full on or before 10 days after the date of shipment: net cash payment on or before 30 days after date of shipment. If, in the exclusive judge-ment of Seller, the financial condition of the Buyer at any time does not justify the commencement or conti-nuance of production or shipment on the terms specified herein, Seller may, in addition to all other remedies it may have at law or in equity, make a written demand for full or partial payment in advance; suspend its per-formance until such payment is made, and cancel the Buyer's order if such payment is not received by Seller within thirty (30) days after the mailing of demand by Seller.

If Buyer and Seller agree that the payment of any part of the price of the Equipment be reciev-ed by Seller before the commencement of production, the Seller shall be under no obligation to commence production unless and until such payment is recieved, and in any event may cancel this Sales Agreement if such payment is not recieved within 30 days of the date hereof.

Unless otherwith indicated on the face hereof, terms are F.O.B. point of origin.
Remittance should be forwarded to Wolverine Corporation, P.O. Box 5524, Boston, MA 02206

If shipments are delayed by or at the request of the Buyer, payment shall become due from the date when Seller is prepared to make shipment. Any equipment held for the Buyer because of such delay on delivery shall be at the sole risk and expense of the Buyer.

If more than one shipment is made, each may be invoiced seperately.

Invoiced payments past due are subject to late charges of two percent (2%) per month of any unpaid invoice balance. Buyer shall not set off against or deduct from any amounts due hereunder all or any part of any damages which it may have sustained or alleged to have sustained arising out of any breach of the Sales Agreement by Seller or any other claim Buyer may have against Seller.

4. TAXES: All prices quoted herein do not include taxes or other governmental charges in respect of the production, sale, distribution or delivery of any Equipment or service related thereto. Buyer agrees to indemnify Seller against the imposition of, or increase in, any such taxes or charges after the date hereof, which Seller may be required to pay.

5. SHIPMENTS AND DELIVERY: Risk of loss or damage to goods shall pass from Seller to Buyer upon delivery of the Equipment to the carrier.

Shipping dates are approximate and based on prompt receipt of all necessary information by Seller.

Seller will not be liable for any delay in the performance of the Sales Agreement when such delay is, directly or indirectly, caused by or in any manner arises from fires, floods, accidents, riots, war, government interference, embargoes, strikes, shortage of labor, materials or supplies, inadequate transpor-tation facilities or any other cause or causes (whether or not similar in nature to any of those hereinbefore specified) beyond Seller's control.

In no event shall Seller be liable for incidental or consequential damages resulting from or aris-ing in connection with any failure to meet any delivery schedule.

6. SAFETY REQUIREMENTS: Buyer shall notify Seller in writing of any safety devices for the Equipment which are not specifically included in the description of the Equipment which may be required by federal, state or local law, rule or regulation. Notice by Buyer shall be in good time before the estimated date of delivery to permit installation by Seller of the required safety devices on the Equipment, if such safety devices are available and are approved by Seller as provided herein. Seller shall not be responsible for the in-clusion and/or installation of safety devices on the Equipment to prevent personal injury or property damage or for the adequacy of safety devices duly specified by the Buyer. Buyer agrees to indemnify and hold Seller harmless from and against all liability, loss, cost, damage or expense attributable to any claim against Seller for personal injury or property damage arising out of the installation, maintenance or operation of the Equip-ment by Buyer or others, whatever the cause or alleged cause of the personal injury or property damage may be.

7. WARRANTY: Seller warrants, to the original Buyer only, that every part of the Equipment covered by this proposal manufactured by it will be of proper materials and workmanship. In the Sellers discharge of this warranty, the Buyers sole and exclusive remedy against the Seller shall be for the repair or replacement, but not installation, of any such part which proves defective in material or workmanship within one (1) year from date of said shipment of said Equipment to Buyer provided Buyer immediately gives Seller written notice of such alleged defects and, if requested, returns the defective part to Seller's place of business at the address indicated on the face hereof, freight prepaid, for inspection. Seller shall not be responsible for repair or replacement of any such parts unless effected by it or in accordance with written authority from it. Component materials and parts not manufactured by Seller are not included in the forego-ing warranty but are subject only to the warranties of their respective manufacturers.

In no event shall Seller's one-year warranty with regard to freedom from defects extend to any equipment in any way caused or allowed to be, installed, operated or used in a negligent or improper man-er, or so as to be subject or exposed to conditions of abrasion, erosion, corrosion, excessive heat or other abuse or accident. Inasmuch as no alloys, materials, coatings or forms of construction are known to us which will successfully resist abrasion, erosion, corrosion, or deterioration from excessive heat, Seller does not make any guarantee as to the life of equipment purchased by Buyer when subjected to conditions which cause such damages.

Under no circumstances shall Seller be responsible or liable for any special, indirect, incidental or consequential damages arising in any way in connection with any Equipment or the Sales Agreement.

THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED. NO WARRANTY OF MERCHANTABILITY, NO IMPLIED WAR-RANTY OF FITNESS FOR ANY PURPOSE, AND NO IMPLIED WARRANTY ARISING BY USAGE, TRADE, COURSE OF DEALING, OR COURSE OF PERFORMANCE IS GIVEN BY SELLER OR SHALL ARISE BY OR IN CONNECTION WITH THE SALES AGREEMENT AND/OR THE SELLER'S AND/OR BUYER'S CONDUCT IN RELATION THERETO OR TO EACH OTHER, AND IN NO EVENT SHALL SELLER BE LIABLE ON ANY SUCH WARRANTY WITH RESPECT TO ANY EQUIPMENT. ANY MODEL, SAMPLE, DRAWING OR OTHER ARTIFACT OR REPRESENTATION OF ANY KIND OF ANY EQUIPMENT SHOWN OR FURNISHED TO BUYER BY SELLER, IF ANY, WAS FOR ILLUSTRATIVE PURPOSES EXCLUSIVELY AND NEITHER DID NOR DOES CONSTITUTE ANY REPRESENTATION OR WARRANTY OF SELLER THAT ANY EQUIPMENT WOULD OR WILL CONFORM THERETO.

8. INSTALLATION AND SERVICE: Seller shall not be required to install, service, or provide any on-site engineering and/or site preparation for, any of the Equipment except as may be agreed upon in writing by Seller and buyer.

9. PATENTS: Buyer shall indemnify and hold harmless Seller against all liabilities or expense arising from claims of infringement of patent, trademark or other registered mark or design with respect to Equipment manufactured to Buyer's specifications.

Seller is not responsible for any uses to which any of the Equipment may be put as a part of a mechanism or any process subject to any patent or other registered mark held by others.

10. TRADEMARKS: Unless otherwise agreed, Seller reserves the right to have its name trademark appear on each product sold hereunder, and to use such products or illustrations of the same display or advertising purposes.

11. DRAWINGS AND SPECIFICATIONS: Any drawings, prints or other information furnish by Seller in connection with the order are strictly confidential and shall not be used for any purpose other than in connection with Seller's products and equipment; all rights of Seller thereto are reserved and no drawing, print or other information shall be copied or distributed in whole or in part without prior permission from Seller. No equipment may be manufactured by Buyer or for Buyer by third parties from Seller's prints or design (whether or not furnished to Buyer by Seller) without the prior consent of Seller.

12. INSPECTION BY BUYER; CLAIMS FOR DAMAGES IN TRANSIT. Buyer shall carefully examine and check all deliveries of Equipment made hereunder as they are received and to report within seven days to Seller any alleged error, shortage or defect or non-conformity of any such Equipment; a failure by Buyer so to examine and report shall constitute a waiver by Buyer of any claim or right of Buyer against Seller arising hereunder or by law with respect to any such error, shortage, defect or non-conformity reasonably discoverable by such an examination and check.

All claims by Buyer for damage or loss in transit shall be made by Buyer against the carrier.

13. PERFORMANCE TESTING: Any tests conducted to prove the performance of the Equip-ment shall comply with a test procedure agreed between Buyer and Seller. Unless otherwise stated, the price(s) set forth on the face hereof do not include the cost of any tests. The results of any tests so conducted shall be accepted by buyer as final and binding as to the performance or other specifications of Equipment tested.

14. BUYER PROCESS: Unless otherwise agreed, Seller does not guarantee Buyer process per-formance with respect to raw materials, final product, production speeds, and energy consumption. Seller shall not be obligated to make any modifications to the Equipment if requested after the date hereof by Buyer for process or experimental reasons discovered by Buyer, or due to the discovery of new technology by Buyer after the date hereof, or to meet specifications of Buyer not described to Seller on the date hereof.

15. MODIFICATIONS AND CANCELLATIONS: Except as expressly provided herein, the terms and conditions (whether as to the performance or safety of the Equipment, or otherwise) of the Sales Agreement may not be modified, terminated, or repudiated, in whole or in part, except by a writing signed by Seller and Buyer. Seller may, at its sole option, treat any attempted modification, termination or repudiation to which it does not agree in writing as a breach of the entire Sales Agreement and recover from Buyer's Seller's damages, including without limitation special, indirect, consequential and incidental damages resulting therefrom or arising in connection therewith. Seller may specify an increase in the price(s) set forth on the face hereof as a condition of its agreement to any modification of the Sales Agreement requested by Buyer. Upon any breach by Buyer or failure by Buyer to comply with any of the terms and conditions hereof or if Buyer becomes unable to conduct its normal business operations (including inability to meet its obliga-tions as they mature) or becomes the subject of any proceedings under state or federal law for the benefit of creditors or relief of debtor or makes any assignment for the benefit of creditors, Seller shall have the right im-mediately to cancel or terminate the Sales Agreement, in whole or in such part as Seller in its sole judgement shall deem expedient, and recover from Buyer all damages, including without limitation special, indirect, consequential and incidental damages, suffered by the Seller as a result of, or arising in connection with, such termination. If the Sales Agreement, or any part thereof, is modified or terminated by written agreement of the parties or otherwise as provided herein, unless otherwise agreed, buyer shall pay and be liable for modification or termination charges including (if applicable), without limitation, the following: (a) the price of any and all Equipment the manufacture of which by Seller is or was either completed or in process at the time of such written agreement or termination, plus (b) any and all expenditures made or incurred by Seller (in-cluding, without limitation, any such expenditures or liabilities for raw materials, components, labor, engineering and start-up expenses) in connection with the entire Sales Agreement (including, without limita-tion, the uncompleted or modified portion of Buyer's order in connection therewith), plus (c) a reasonable estimated profit.

16. REMEDIES NOT EXCLUSIVE: No remedy of Seller provided herein shall be exclusive of any other remedy of Seller provided herein or allowed by law.

17. ASSIGNMENT: No rights, benefits or duties under the Sales Agreement, including the benefits of the warranty contained in Section 7 hereof, shall be assignable by Buyer without the prior written consent of Seller.

18. GOVERNING LAW: The Sales Agreement shall in all respects be governed by, and con-strued in accordance with, the laws of the Commonwealth of Massachusetts.